Anthony Molloy (#1972006)
Pacira Pharmaceuticals, Inc.
5 Sylvan Way
Parsippany, NJ 07054
(973) 254-4351 direct
(973) 267-0060 fax
anthony.molloy@pacira.com

Javier Garcia, Pro Hac Vice (Pending)
Perkins Coie LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
(310) 788-3293 direct
(310) 843-2803 fax
jgarcia@perkinscoie.com

Attorneys for Defendants Pacira
Pharmaceuticals, Inc., and Individual
Defendants Stack, Kahr, Murphy,
McLoughlin, Ciavolella, Reiser, Davis, and
Lehmann

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RESHMA ABELL,<br><br>     Plaintiff,<br><br> v.<br><br>PACIRA PHARMACEUTICALS, INC., DAVE STACK, individually and in his capacity as Chief Executive Officer of PACIRA PHARMACEUTICALS, INC., and RICH KAHR, PETER MURPHY, DENNIS McLOUGHLIN, PAUL CIAVOLELLA, GLENN REISER, JOYCE DAVIS and MATT | Case No. 2:18-cv-16509-MCA-LDW<br><br>Hon. Madeline Cox Arleo<br><br><br><br>Motion Day: January 22, 2019 |

LEHMANN, in their capacities as
employees of PACIRA
PHARMACEUTICALS, INC.,

Defendants.

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE
COMPLAINT**

142338719.4

# TABLE OF CONTENTS

**Page**

BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT ...................................................................................2

I. INTRODUCTION ...................................................................................1

II. SUMMARY OF ALLEGATIONS.........................................................4

    A. Ms. Abell's Employment with Pacira ...................................................4

    B. Ms. Abell is Discharged from Pacira for Viewing Sexually Explicit Material on Her Phone at a Work Conference .......................4

    C. The Allegations Against Individual Defendants Fail as a Matter of Law..................................................................................................8

III. ARGUMENT..........................................................................................11

    A. Legal Standard for a Motion to Dismiss ............................................11

    B. The Complaint Should be Dismissed Because Plaintiff was Discharged for Legitimate, Non-Discriminatory Reasons: Viewing Sexually Explicit Material at a Work Conference .............13

    C. Plaintiff's Claim for Whistleblower Retaliation under Dodd-Frank Fails as a Matter of Law........................................................14

    D. Plaintiff Fails to Plausibly Allege Individual Liability for her Sex Discrimination and Hostile Work Environment Claims under the NJLAD ..............................................................................17

        1. Plaintiff's Hostile Work Environment Claim Against the Individual Defendants Fails as a Matter of Law ...............................................................19

        2. Plaintiff's Sex Discrimination Claim Against the Individual Defendants Fails as a Matter of Law ..........20

    E. Plaintiff Fails to Plausibly Allege a Claim for Retaliation under the NJLAD Against the Eight Individual Defendants .......................22

    F. Plaintiff Fails to State a Claim for Retaliation and NJCEPA Against the Eight Individual Defendants ...........................................23

142338719.4

**TABLE OF CONTENTS**
**(continued)**

**Page**

G.    The Complaint Should be Dismissed Without Leave to Amend.......27

IV.    CONCLUSION.................................................................................28

## TABLE OF AUTHORITIES

**Page**

CASES

*Allia v. Target Corp.*,
   No. CIV.A. 07-4130 (NLH), 2008 WL 1732964 (D.N.J. Apr. 10,
   2008) ..................................................................................................25

*Alston v. Parker*,
   363 F.3d 229 (3d Cir. 2004) ...............................................................27

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................11, 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................11, 12

*Bobo v. Wildwood Pub. Sch. Bd. of Educ.*,
   No. CIV. 13-5007 RBK/KMW, 2014 WL 2215935 (D.N.J. May
   28, 2014) ............................................................................................21

*Bowen v. Parking Auth. of City of Camden*, No. CIV. 00-5765 (JBS),
   2003 WL 22145814, at *23 (D.N.J. Sept. 18, 2003)..........................24

*Bratek v. TD Bank, N.A.*,
   No. CIV. 11-3049 RBK/KMW, 2012 WL 603299 (D.N.J. Feb. 22,
   2012) ..................................................................................................13

*Brennan v. Palmieri*,
   No. 07-4364, 2008 WL 5233782 (D.N.J. Dec. 12, 2008) .............24, 25

*Brewer v. Quaker State Oil Ref. Corp.*,
   72 F.3d 326 (3d Cir. 1995) ................................................................14

*Brown v. Joel Tanis & Sons, Inc.*,
   No. 2:13-CV-02984 (WJM), 2016 WL 3951378 (D.N.J. July 21,
   2016) ..................................................................................................25

*Burtch v. Milberg Factors, Inc.*,
   662 F.3d 212 (3d Cir. 2011) ...............................................................12

*Calabria v. State Operated Sch. Dist. for City of Paterson*,
   No. 06–6256, 2008 WL 3925174 (D.N.J. Aug. 26, 2008) ..................26

- iii -

*Cicchetti v. Morris Cty. Sheriff's Office*,
    194 N.J. 563, 947 A.2d 626 (2008) ...................................................................17

*Cortes v. University of Medicine and Dentistry of New Jersey*,
    391 F. Supp. 2d 298 (D.N.J.2005) .....................................................................22

*Deville v. Givaudan Fragrances Corp.*,
    No. CIVA082034GEBMCA, 2010 WL 2232718 (D.N.J. June 1,
    2010), *aff'd*, 419 Fed. Appx. 201 (3d Cir. 2011) .................................................22

*Digital Realty Tr., Inc. v. Somers*,
    138 S. Ct. 767, 200 L. Ed. 2d 15 (2018) .....................................................15, 16

*Failla v. City of Passaic*,
    146 F.3d 149 (3d Cir. 1998) ...............................................................................18

*Feraro-Bengle v. Randstad N. Am., L.P.*,
    No. 03-1650, 2006 WL 2524170 (D.N.J. Aug. 30, 2006) ...................................18

*Glenz v. RCI, LLC*,
    No. 09-378, 2010 WL 323327 (D.N.J. Jan. 20, 2010) ........................................12

*Griffin v. Metromedia Energy, Inc.*,
    No. CV 10-3739, 2011 WL 12872504 (D.N.J. Feb. 7, 2011) .............................27

*Guarneri v. Buckeye Pipe Line Servs. Co.*,
    No. CIV.A. 14-1131 JBS, 2014 WL 1783072 (D.N.J. May 5, 2014) ...............18

*Hollis-Arrington v. PHH Mortgage Corp.*,
    No. CIV.A. 05-2556FLW, 2005 WL 3077853 (D.N.J. Nov. 15,
    2005), *aff'd*, 205 Fed. Appx. 48 (3d Cir. 2006) ..................................................27

*Hurley v. Atlantic City Police Dep't*,
    174 F.3d 95 (3rd Cir. 1999) ...............................................................................18

*In re Intelligroup Sec. Litig.*,
    527 F. Supp. 2d 262 (D.N.J. 2007) .....................................................................13

*Johnson v. AmeriGas Propane, L.P.*,
    No. 117CV252BKSDEP, 2018 WL 2304742 (N.D.N.Y. May 21,
    2018) ...................................................................................................................16

*McCoy v. WGN Continental Broadcasting Co.*,
957 F.2d 368 (7th Cir. 1992) ...............................................................................14

*Michel v. Mainland Regional School Dist.*,
2009 WL 2391293 (D.N.J. 2009) ...........................................................24, 25

*Ott v. Fred Alger Mgmt., Inc.*,
11 CIV. 4418 LAP, 2012 WL 4767200 (S.D.N.Y. Sept. 27, 2012)...................14

*Palladino v. VNA of Southern New Jersey, Inc.*,
68 F. Supp. 2d 455 (D.N.J. 1999).........................................................................24

*Price v. UBS Fin. Servs., Inc.*,
No. CV 2:17-01882, 2018 WL 1885669 (D.N.J. Apr. 19, 2018)................15, 16

*Schmidt v. Skolas*,
770 F.3d 241 (3d Cir. 2014) ...............................................................................13

*Tarr v. Ciasulli*,
181 N.J. 70, 853 A.2d 921 (2004) ...................................................18, 19, 20, 21

*Turner v. Associated Humane Societies, Inc.*,
396 N.J. Super. 582 (App. Div. 2007).................................................................24

*Varughese v. Robert Wood Johnson Med. Sch.*,
No. CV1602828FLWLHG, 2017 WL 4270523 (D.N.J. Sept. 26,
2017) .....................................................................................................................20

*Wutherich v. Rice Energy Inc.*,
No. CV 18-200, 2018 WL 5724128 (W.D. Pa. Oct. 2, 2018),
*report and recommendation adopted,* CV 18-200, 2018 WL
5722685 (W.D. Pa. Nov. 1, 2018) ......................................................................16

## STATUTES

Dodd-Frank Wall Street Reform and Protection Act ......................................passim

N.J.S.A. § 10:5-12(e) ...........................................................................................17

N.J.S.A. § 34:19-3(a) ...........................................................................................23

N.J. Stat. Ann. § 10:5-12(d)..................................................................................22

New Jersey Conscientious Employee Protection Act......................................passim

Section 21F of the Securities Exchange Act of 1934, Exchange Act
Release No. 34-64545 (May 25, 2011)................................................................15

**RULES**

Fed. R. Civ. P. 12(b)(6)................................................................................................11

## I.   INTRODUCTION

Defendants Pacira Pharmaceuticals, Inc. ("Pacira") and Dave Stack, Rich Kahr, Peter Murphy, Dennis McLoughlin, Paul Ciavolella, Glenn Rise, Joyce Davis, and Matt Lehman ("Individual Defendants") (collectively with Pacira, "Defendants") move under Federal Rule of Civil Procedure ("Rule") 12(b)(6), to dismiss all claims in Plaintiff Reshma Abell's ("Plaintiff" or "Ms. Abell") Complaint. The Court should dismiss this lawsuit in its entirety because Ms. Abell's Complaint supports Pacira's defense to her claims — that she was discharged for a legitimate, non-discriminatory reason.

Ms. Abell is a former Senior Surgical Account Specialist for Pacira who was discharged for admittedly viewing sexually explicit material on her phone during a work conference in the presence of coworkers. ECF No. 1, Compl., ¶ 58-59. In response to her discharge, Ms. Abell filed this lawsuit alleging three claims under the New Jersey Law Against Discrimination ("NJLAD") against Pacira and the Individual Defendants: sex discrimination, hostile work environment, and retaliation. She also asserts a claim for retaliation against Defendants under the New Jersey Conscientious Employee Protection Act ("NJCEPA"), and a whistleblower retaliation claim under the Dodd-Frank Wall Street Reform and Protection Act ("Dodd-Frank"). The allegations in the Complaint, however, establish that all of these claims fail as a matter of law and logic.

As Ms. Abell recognized and noted in her Complaint, she was discharged after coworkers complained that she was looking at sexually explicit material in front of them at a work conference. Because Ms. Abell admits to the conduct that led to her discharge, which was based on a legitimate, non-discriminatory and non-retaliatory reason, all claims relating to her discharge fail as a matter of law. Even if Ms. Abell's claims are not dismissed in their entirety for this reason, select claims nevertheless fail to state a claim upon which relief can be granted.

First, with respect to Plaintiff's Dodd-Frank whistleblower retaliation claim, the Supreme Court has stated in no uncertain terms that a plaintiff is only entitled to protection as a whistleblower if she reports her alleged concerns to the U.S. Securities and Exchange Commission ("SEC") *before* being discharged. A plaintiff does not engage in protected activity by reporting concerns internally as Ms. Abell did here. Indeed, Ms. Abell admits that she filed a report with the SEC six months *after* her discharge and right before filing this lawsuit. Thus, because she cannot plead a crucial element of her whistleblower retaliation claim, it must be dismissed with prejudice.

Second, on Plaintiff's claims under the NJLAD against the Individual Defendants for hostile work environment and sex discrimination, Ms. Abell cannot establish individual liability. Individuals are only liable for "aiding and abetting" discriminatory or harassing conduct under the NJLAD. Ms. Abell, however, has

142338719.4

made no attempt to connect five of the individuals to knowledge of alleged harassment or discrimination based on sex towards her, or to her discharge in any way, let alone allege that they substantially assisted in the discrimination or harassment. As to the remaining three defendants, one defendant (Reiser) immediately reported an incident potentially related to sex discrimination to Human Resources, and there is no evidence that the other two defendants, Kahr or Murphy, ever treated Ms. Abell differently based on her sex or made any kind of offensive comments related to her sex or otherwise. The sole allegations related to sex-based discrimination or harassment involve an individual who is not named as a defendant.

Third, Ms. Abell has not adequately plead a retaliation claim under the NJLAD against the Individual Defendants. This claim fails for the same reasons her other NJLAD claims fail — there is no connection between most of the Individual Defendants and her discharge and she has not alleged that they even knew of the Human Resources investigation. Of those defendants remaining, Ms. Abell has not plead facts sufficient to create a causal connection between her termination and the investigation.

Finally, Plaintiff's attempt to state a claim of retaliation under the NJCEPA fares no better. Her claim against six of the defendants is again deficient because they are not connected to her discharge in any way. As to the remaining two defendants, one had no knowledge of any whistleblower activity and the other

142338719.4

treated her favorably for over three years, *after* she allegedly reported "business irregularities" to him in 2014. Because she has failed to plead any causal connection between her alleged whistleblowing activity and an adverse action, her NJCEPA claim against all Individual Defendants also fails. For these reasons and those set forth below, Defendants respectfully request that the Court dismiss Ms. Abell's claims.

## II.     SUMMARY OF ALLEGATIONS[1]

### A.     Ms. Abell's Employment with Pacira

Pacira is a pharmaceutical company that conducts business in New Jersey. Complaint ¶¶ 2, 10. Plaintiff Reshma Abell was a Surgical Account Specialist for Pacira from May 2014 to January 17 and was a Senior Surgical Account Specialist for Pacira from January 2017 until her discharge on March 14, 2018. *Id.* ¶ 11. As a Surgical Account Specialist, Ms. Abell was responsible for promoting Pacira's products in the greater New York City area, among other responsibilities. *Id.* ¶ 12.

### B.     Ms. Abell is Discharged from Pacira for Viewing Sexually Explicit Material on Her Phone at a Work Conference

In February 2018, Ms. Abell attended Pacira's National Sales Meeting ("NSM") in Florida. Complaint ¶ 32. Pacira received complaints from Ms. Abell's coworkers that she had been looking at sexually explicit material on her phone

---

[1] For purposes of this motion, the Court must take as true Ms. Abell's factual allegations, though not her legal conclusions or characterizations.

during one of the NSM conference sessions. *Id.* ¶ 58. Ms. Abell admits that she was looking at sexually explicit material on her phone. *Id.* ¶ ¶ 59, 61.[2]

After receiving employee complaints, defendant Rich Kahr, Vice President of Human Resources, interviewed Ms. Abell and informed her that an employee complained about her viewing sexually explicit material for a half hour on her phone. *Id.* ¶¶ 57-58. After investigating the matter, Mr. Kahr and Ms. Abell's then-supervisor, Peter Murphy, informed her that her conduct violated "core values of the company" and that she was discharged. *Id.* ¶ 64.

### C.    Ms. Abell's Allegations of Retaliation

Now, Ms. Abell asserts that her discharge was "at least in part, in retaliation for" her "repeated reporting of business irregularities at Pacira." *Id.* ¶ 66. According to Ms. Abell, she began reporting "business irregularities" "shortly after she started," as early as 2014. *Id.* ¶¶ 67, 81. Without identifying any specific law or regulation that she believed was violated, Ms. Abell purports that certain business practices at Pacira were "ethical and compliance violations," *id.* ¶¶ 67, 79, 81, or "securities law" violations, *id.* ¶ 84. In her Complaint, she also lists a number of individuals to whom she reported these concerns, some of whom are named as defendants but many of

---

[2]Although Ms. Abell alleges she only looked at her "personal phone" for "seconds," Compl. ¶ 59, looking at sexually explicit websites in the workplace or at work events is workplace misconduct even if it is on a "personal phone" for "seconds."

whom are not. *Id.* ¶ 84. Omitted from her list of who she reported specific concerns to are defendants Kahr, Stack, and Lehmann.

Notably, Ms. Abell also admits in her Complaint that despite raising concerns about business irregularities soon after she started at Pacira, she was nevertheless promoted to a senior position, *id.* ¶ 11, referred to as "Jordan" by her supervisors, defendants Reiser and Murphy, for her success in sales, *id.* ¶ 15, won positions in Pacira's Circle of Excellence and President's Club for three years, *id.* ¶ 20, and received positive performance evaluations, *id.* ¶ 17, up until her employment ended in March 2018.

On September 14, 2018, six months after her discharge and two months before filing the present lawsuit, Ms. Abell filed a report with the Securities and Exchange Commission ("SEC") about purported business concerns. *Id.* ¶ 92.

### D. Ms. Abell's Allegation of Sex Discrimination and Harassment

Ms. Abell's claims of sex discrimination and hostile work environment under the NJLAD center primarily around an incident that occurred at Pacira's National Sales Meeting in February 2018, which took place from February 11 to February 15, 2018. Compl. ¶ 32. As part of the annual meeting, Pacira hosted a "Women's Leadership Meeting" on February 13 to promote valuable topics such as female empowerment in the workplace. *Id.* ¶ 39. Ms. Abell, however, decided not to attend the "Women's Leadership Meeting" and instead chose to go to a social gathering at

142338719.4

Top Golf. *Id.* ¶¶ 38-39.

As Ms. Abell was preparing to leave for Top Golf, a Regional Sales Director, Rob Rock, approached her in what she characterizes as "a hostile and threatening manner" and said, "you're not going." *Id.* ¶ 43. Mr. Rock allegedly told her that it was a "guy thing" and that she should have "asked permission" to attend and "other sexist comments" that Ms. Abell did not specify. *Id.* ¶ 43. The conversation ended in a "yelling match on both sides." *Id.* ¶ 45.

Ms. Abell believes that witnesses told her supervisor at the time, Glenn Reiser, what had happened, and that Mr. Raiser immediately reported the incident to Mr. Kahr in Human Resources. *Id.* ¶¶ 46, 49. After the event, four male coworkers, accompanied Ms. Abell back to the hotel where the conference was held, and another later escorted her back to her room. *Id.* ¶¶ 51-53. The next morning, Human Resources began investigating the events that transpired, including interviewing Ms. Abell and others about the incident. *Id.* ¶ 53.

Also with respect to her hostile work environment claim, Ms. Abell asserts that she would hear "in a typical workday" that her success was due to sleeping with clients or performing sexual favors. *Id.* ¶ 19. She does not attribute these comments to any specific employee or time. *Id.* She further claims that she did not report these comments to Human Resources because it would break "code" among her male coworkers. *Id.* ¶ 22. She makes this allegation even though it was her male

142338719.4

supervisor, Mr. Reiser, who reported the incident with Mr. Rock to Human Resources.

### C.   The Allegations Against Individual Defendants Fail as a Matter of Law

Plaintiff names eight individual Pacira employees as defendants, the majority of whom she has failed to connect with the sole adverse action in her Complaint: her discharge. Rather than specifying which claims she brings against each Individual Defendant, Ms. Abell instead lists each in the "Parties" section of her Complaint along with an identical conclusory statement: that each person "qualifies as an 'employer' for purposes of individual liability under the NJLAD and the NJCEPA because [he or she] participated directly in the discriminatory and/or retaliatory conduct at issue." *See* Compl. ¶¶ 3-9. The Complaint, however, is devoid of specific facts connecting each Individual Defendant to any alleged discriminatory or retaliatory conduct. With respect to the Individual Defendants, Ms. Abell pleads (or fails to plead) as follows:

  a.   As to Pacira's Chief Executive Officer ("CEO"), Dave Stack, Ms. Abell does not allege that Stack had knowledge of her complaints of sex discrimination, participated in any discriminatory or harassing conduct based on her sex, or was involved in the decision to discharge her.

  b.   As to Dennis McLoughlin, Ms. Abell alleges that he was her "supervisor" and that she reported irregularities, "which she believed were securities

law and/or ethical violations," to him at an unspecified point in time. *Id.* ¶ 84. Again, Ms. Abell fails to allege that Mr. McLoughlin knew of her complaints of sex discrimination, participated in any discriminatory or harassing conduct based on her sex, or was involved in the decision to let her go.

c.  As to Paul Ciavolella, Pacira's Senior Director of Business Analytics, Market Research, and Operations, Ms. Abell makes essentially the same allegations— that he was her "supervisor" and that she reported the same concerns to him, *id.* ¶ 84, but adds that he could set her pay, *id.* ¶ 13. She makes no allegations related to his knowledge of, or participation in, sex discrimination or harassment or her termination.

d.  As to Joyce Davis, Pacira's Vice President of Strategic Alliance, *id.* ¶ 8, Ms. Abell alleges that Ms. Davis would approve "grants" that she believed (without citation to any law or regulation) were improperly reported as revenue. *Id.* ¶ 68. As with the others, Ms. Abell, does not allege that Ms. Davis knew of her complaints of sex discrimination, participated in any discriminatory or harassing conduct based on her sex, or was involved in the decision to discharge her. Nor does Ms. Abell allege that Ms. Davis was her "supervisor." *Id.* ¶ 8.

e.  As to Matt Lehmann, Pacira's Senior Vice President of Commercial, the

allegations are even more sparse. Ms. Abell simply recites the same conclusory allegations in the "Parties" section of her Complaint and includes no additional facts about him in her Complaint, other than a conclusory statement in the "Nature of the Action" and "Causes of Action" sections that she reported "financial irregularities" to him and others. *Id.* ¶ 122. Ms. Abell does not allege when she made this report or what she said or that Mr. Lehmann was her "supervisor." *Id.* ¶ 9.

f.  As to Rich Kahr, the Vice President of Human Resources, Ms. Abell asserts that Mr. Kahr investigated the incident between Ms. Abell and Rock at Top Golf, *id.* ¶ 54, and that Mr. Kahr told her she was being discharged because employees complained about her viewing sexually explicit material at a work conference. *Id.* ¶ 64. As with Mr. Lehmann, Ms. Abell includes a conclusory allegation in the "Nature of the Action" and "Causes of Action" sections that she reported ethical or business irregularities to Mr. Kahr, but she cites no specific facts in her Complaint that she actually did so, including what she said or when, despite including this information for other individuals. *Id.* ¶ 122. Nor does she allege that Mr. Kahr was her supervisor. *Id.* ¶ 4.

g.  As to Peter Murphy, Ms. Abell's supervisor at the time, Ms. Abell alleges that Mr. Reiser and Mr. Murphy began an "investigation" into the Top Golf

incident. *Id.* ¶ 53. She also alleges that Mr. Murphy and Mr. Kahr later told her she was being discharged for showing sexually explicit material to colleagues, *id.* ¶ 64. She also alleges that she reported concerns about business irregularities to him beginning in 2014 and continuing thereafter. *Id.* ¶¶ 79. 81, 84.

h. Finally, as to Glenn Reiser, also Ms. Abell's former supervisor, Ms. Abell asserts that coworkers who witnessed the argument between Rock and her at the conference reported the incident to Mr. Reiser who then "left the immediate area to contact Kahr at Pacira's Human Resources department," *id.* ¶ 50. She claims that Mr. Reiser led the HR investigation with Mr. Murphy, but does not allege that he was involved in the decision to discharge her. *Id.* ¶ 53. Ms. Abell also alleges that she reported concerns about business irregularities to him beginning in 2014 and continuing thereafter. *Id.* ¶¶ 79. 81, 84.

## III.   ARGUMENT

### A.   Legal Standard for a Motion to Dismiss

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although Ms. Abell's complaint is riddled with inaccuracies, pursuant to this standard, Defendants and this Court must

142338719.4

accept her *factual* allegations as true for the purposes of this motion. Nonetheless, the Court is not required to accept as true "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which "do not suffice." *Id.*; *see also id.* ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555); *Glenz v. RCI, LLC*, No. 09-378, 2010 WL 323327, at *2 (D.N.J. Jan. 20, 2010) (rejecting "bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations"). As the Third Circuit has summarized:

> To determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the Court must take the following three steps: First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted). Ms. Abell's claims should be dismissed because she does not plead claims giving rise to an entitlement for relief after discounting the numerous conclusory allegations and legal conclusions in her Complaint. Moreover, Ms. Abell admits that she engaged in the misconduct which led to her discharge.

**B.    The Complaint Should be Dismissed Because Plaintiff was Discharged for Legitimate, Non-Discriminatory Reasons: Viewing Sexually Explicit Material at a Work Conference**

All of Ms. Abell's claims against Defendants should be dismissed because she admits that she was discharged for viewing at sexually explicit material on her phone at a work conference. Abell's admission contradicts her allegations and establishes Pacira's defense to all her claims—that Ms. Abell was fired for legitimate and lawful reasons. *See Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) ("[D]ismissal may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense."); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 369 (D.N.J. 2007) ("a plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts . . . Allegations in a complaint are binding admissions . . . and admissions can of course admit the admitter to the exit from the federal courthouse") (internal citation omitted). Because Ms. Abell's Complaint also establishes Pacira's defense, her Complaint warrants dismissal.

Moreover, the law is clear that plaintiff's prima facie case must include an allegation that the plaintiff's job performance met the employer's legitimate expectations. Any attempt by Abell to plead such allegation is negated by her admission. *Bratek v. TD Bank, N.A.*, No. CIV. 11-3049 RBK/KMW, 2012 WL 603299, at *4 (D.N.J. Feb. 22, 2012) (granting motion to dismiss plaintiff's NJLAD

claim and explaining that the "second element of the prima facie case, that plaintiff's job performance met the employer's legitimate expectations, simply requires that plaintiff allege that he or she was performing the job prior to the termination"). Further, courts acknowledge that judicial forums are not "super-personnel" departments who review business decisions. *See Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) ("We do not sit as a super-personnel department that reexamines an entity's business decisions") (quoting *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir. 1992)). Accordingly, because Ms. Abell's lawsuit rests entirely on the reason for her discharge, the lawsuit should be dismissed, as she admits to misconduct in the workplace.

### C.    Plaintiff's Claim for Whistleblower Retaliation under Dodd-Frank Fails as a Matter of Law

Ms. Abell's Dodd-Frank whistleblower retaliation claim fails for one simple reason: Ms. Abell has not (and cannot) plead that she engaged in protected activity and is therefore not entitled to protection under the Act. The elements of a Dodd-Frank retaliation claim are: (1) that the plaintiff engaged in a protected activity, (2) that the plaintiff suffered an adverse employment action, and (3) that the adverse action was causally connected to the protected activity. *See Ott v. Fred Alger Mgmt., Inc.*, 11 CIV. 4418 LAP, 2012 WL 4767200, at *4 (S.D.N.Y. Sept. 27, 2012) (citing Securities and Exchange Commission ("SEC"), Implementation of the

- 14-

Whistleblower Provisions of Section 21F of the Securities Exchange Act of 1934, Exchange Act Release No. 34-64545 (May 25, 2011), at 18 n. 41).

The United States Supreme Court recently clarified what constitutes "protected activity" under Dodd-Frank. *See Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 200 L. Ed. 2d 15 (2018). In *Digital Realty Trust*, the Supreme Court held that an employee does not qualify as a "whistleblower" under the anti-retaliation provision of Dodd-Frank and is not protected by its anti-retaliation provision if the employee fails to provide information concerning suspected securities-law violations to the SEC. *Id.* at 772. The Supreme Court concluded that it was insufficient for the employee to report the concerns internally to senior management because Dodd-Frank's definition of whistleblower expressly includes an SEC reporting requirement. *Id.*

In line with this decision, this Court in *Price v. UBS Fin. Servs., Inc*, also rejected a plaintiff's whistleblower retaliation claim because he, like Ms. Abell, failed to report his alleged concerns to the SEC *before* being terminated:

> Plaintiff does not allege that he reported any information to the SEC prior to his termination. His testimony to FINRA plainly does not meet the statutory requirement and he, ***therefore, is not a whistleblower under Dodd– Frank***. Furthermore, any attempt to amend his complaint with facts stating that he disclosed information to the SEC *after his termination* would be futile. As the Supreme Court made clear, the purpose of Dodd–Frank whistleblower protections is to incentivize individuals like Plaintiff to come forward and provide information of

> securities law violations to the SEC. Here, Plaintiff did not
> come forward until well after the fact of the alleged
> securities violations, his testimony to FINRA and his own
> termination. ***Plaintiff had ample time between when he
> first learned of the violations and his termination to
> report the misconduct to the SEC, but he chose not to.***
> The Court, therefore, finds that Plaintiff does not meet the
> definition of "whistleblower" under Dodd–Frank.
> Accordingly, Plaintiff's Dodd–Frank claim is dismissed
> ***with prejudice***.

*Price v. UBS Fin. Servs., Inc.*, No. CV 2:17-01882, 2018 WL 1885669, at *2

(D.N.J. Apr. 19, 2018) (internal citations omitted) (emphasis added). Other

decisions after *Digital Realty* are in accord. *See, e.g.*, *Wutherich v. Rice Energy Inc.*,

No. CV 18-200, 2018 WL 5724128, at *7 (W.D. Pa. Oct. 2, 2018), *report and

recommendation adopted,* CV 18-200, 2018 WL 5722685 (W.D. Pa. Nov. 1, 2018)

("Because Plaintiff did not provide information to the Commission before his

termination, he did not qualify as a whistleblower at the time of the alleged

retaliation and is therefore ineligible to seek relief."); *Johnson v. AmeriGas Propane,

L.P.*, No. 117CV252BKSDEP, 2018 WL 2304742, at *5 (N.D.N.Y. May 21, 2018)

(dismissing plaintiff's Dodd-Frank retaliation claim because plaintiff was not a

"whistleblower" where although plaintiff reported to the company's legal

department that he believed certain activities were illegal, it was "undisputed that

Plaintiff did not make a complaint to the SEC until *after* his termination").

Here, too, Ms. Abell admits that she did not report her concerns to the SEC

until September 14, 2018, six months *after* she was terminated from Pacira. Compl.

¶¶ 91-92. Because Ms. Abell did not file a report with the SEC until after her termination, she has failed to establish that she was a whistleblower and is therefore ineligible to seek relief under Dodd-Frank. On this basis alone, the court should dismiss Ms. Abell's claim *with prejudice* because no set of facts could afford her the law's protection.

### D. Plaintiff Fails to Plausibly Allege Individual Liability for her Sex Discrimination and Hostile Work Environment Claims under the NJLAD

Ms. Abell's allegations of sex discrimination and hostile work environment under the NJLAD against the Individual Defendants fare no better. Under the NJLAD, the definition of "employer" does not include an individual supervisor. *Cicchetti v. Morris Cty. Sheriff's Office*, 194 N.J. 563, 594, 947 A.2d 626, 645 (2008). Thus, individual supervisors can only be held personally liable under the NJLAD for "aiding and abetting" discrimination by an employer. *Id.* (citing N.J.S.A. § 10:5-12(e)). But Ms. Abell has failed to adequately plead this theory in her Complaint. Indeed, Ms. Abell's Complaint does not even contain the words "aid" or "abet."

In order to hold an individual defendant liable as an aider and abettor under the NJLAD, a plaintiff must show that: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he

provides the assistance; and (3) the defendant must *knowingly and substantially* assist the principal violation." *Tarr v. Ciasulli*, 181 N.J. 70, 84, 853 A.2d 921, 929 (2004) (emphasis added) (quoting *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3rd Cir. 1999)).[3]

Importantly, "an individual employee can only be found liable of aiding and abetting if actively involved in the discriminatory conduct." *Feraro-Bengle v. Randstad N. Am., L.P.*, No. 03-1650, 2006 WL 2524170, at *12 (D.N.J. Aug. 30, 2006) (internal quotation marks omitted); *Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir. 1998) (finding that an "employee aids and abets a violation of the [NJ]LAD when he knowingly gives substantial assistance or encouragement to the unlawful conduct of his employer"). Employees are "not liable as aider and abettor merely because they had some role, or knowledge or involvement," in the discriminatory termination. *Guarneri v. Buckeye Pipe Line Servs. Co.*, No. CIV.A. 14-1131 JBS, 2014 WL 1783072, at *2 (D.N.J. May 5, 2014) (citing *Failla*, 146 F.3d at 159). For the reasons set forth below, Ms. Abell fails to plead an aiding and abetting theory under both of her NJLAD claims.

---

[3] In evaluating whether an employee "substantially assisted" the principal violator, courts analyze the following five factors from the Restatement (Second) of Torts: "(1) the nature of the act encouraged; (2) the amount of assistance given by the supervisor; (3) whether the supervisor was present at the time of the asserted harassment; (4) the supervisor's relations to the others; and (5) the state of mind of the supervisor." *Tarr*, 181 N.J. at 84.

### 1.   Plaintiff's Hostile Work Environment Claim Against the Individual Defendants Fails as a Matter of Law

In support of her claim for hostile work environment, Ms. Abell claims that "on a typical day" she was subjected to comments about sleeping with clients to get ahead, but does not specify who said them or when. Compl. ¶¶ 18, 22. The only other gender-based allegation she makes relates to the argument with Mr. Rock at the Top Golf outing where he allegedly told her that the event was a "for guys" and "other sexist comments." *Id.* ¶ 43. She does not, however, allege that any of the Individual Defendants were present to hear inappropriate comments or witness the argument with Mr. Rock. In fact, she admits that Mr. Reiser "had not witnessed the interaction between [her] and Rock." *Id.* ¶ 46. Thus, because the Individual Defendants had no role in creating a hostile work environment, her aiding and abetting claim for hostile work environment fails on the second and third elements and must be dismissed. *See Tarr*, 181 N.J. at 85 (holding that defendant could not be liable for "aiding and abetting" sexual harassment because there was no evidence that he "encouraged any of the wrongful conduct against plaintiff, that he assisted the wrongdoers, or that he was even present when the wrongful conduct occurred" and this is "insufficient to conclude that he provided substantial assistance to the wrongdoers to impose individual liability").

### 2.   Plaintiff's Sex Discrimination Claim Against the Individual Defendants Fails as a Matter of Law

In support of her claim for sex discrimination, Ms. Abell appears to allege that she was terminated, at least in part, because of sex-based discrimination. Like her other claims, Ms. Abell, however, fails to allege that five of the Individual Defendants — Mr. Stack, Mr. Lehmann, Ms. Davis, Mr. McLoughlin, and Mr. Ciavolella — were even "generally aware" of any potential discrimination based on sex *or* her termination, let alone that they "substantially assisted" in any way. *Tarr*, 181 N.J. at 84. Thus, as described above, Ms. Abell again cannot prove the second and third elements under the NJLAD against those defendants, warranting dismissal of her sex discrimination claim. *Id. See also Varughese v. Robert Wood Johnson Med. Sch.*, No. CV1602828FLWLHG, 2017 WL 4270523, at *11–12 (D.N.J. Sept. 26, 2017) (dismissing NJLAD claim against individual defendants because there were no allegations to support the two of the three required elements, namely, the complaint lacked allegations that the defendants were generally aware of their role as part of an overall illegal or tortious activity at the time they provided assistance, and the defendants knowingly and substantially assisted the principal violation).

Next, as to defendant Reiser, Ms. Abell alleges that when her coworkers told Mr. Reiser about the February 13 incident with Mr. Rock, he immediately reported it to Human Resources. Compl. ¶ 49-50. This hardly shows that Mr. Reiser knowingly "aided and abetted" discriminatory conduct – rather, it shows that he

sought to prevent and stop potential discrimination by taking the incident seriously and reporting it right away. Moreover, Ms. Abell has not alleged that Mr. Reiser was involved in her termination and thus also fails to show that he "substantially assisted" with it. Absent facts supporting each element of the aiding and abetting theory, her NJLAD claims against Mr. Reiser must also be dismissed.

Finally, as to defendants Kahr and Murphy, Ms. Abell has alleged that they were involved in investigating the complaint against Mr. Rock, but subsequently discovered that she had engaged in workplace misconduct, which they investigated, and then called her to inform her of her discharge for that misconduct. What is lacking in her Complaint, however, is any connection to sex-based discrimination. Ms. Abell makes no allegations that either Mr. Kahr or Mr. Murphy ever made gender-based comments to her or acted in an inappropriate way to her based on her sex. *See Tarr*, 181 N.J. at 84 (supervisor's "state of mind" is relevant in determining whether he substantially assisted in discrimination). Without more, Ms. Abell's sex discrimination claims against them merit dismissal.

Moreover, with respect to all Individual Defendants, Ms. Abell never even refers to their conduct as "aiding and abetting" unlawful discrimination or harassment anywhere in her Complaint. The Court has dismissed complaints that fail to use this fundamental language. *See, e.g.*, *Bobo v. Wildwood Pub. Sch. Bd. of Educ.*, No. CIV. 13-5007 RBK/KMW, 2014 WL 2215935, at *8 (D.N.J. May 28,

2014) (dismissing NJLAD claim against individual defendants where the terms "aiding," "abetting," and "conspiracy," were absent from the complaint and plaintiff failed to plead "any facts that show [the individual defendant] took any action toward the Plaintiff . . . [or] set forth any allegations in his Complaint that make it more plausible than not that [the other individual defendants] could be held liable under the NJLAD for aiding and abetting [the employer defendant's] conduct").

### E.    Plaintiff Fails to Plausibly Allege a Claim for Retaliation under the NJLAD Against the Eight Individual Defendants

Ms. Abell's cause of action against the Individual Defendants for retaliation under the NJLAD also fails to state a claim upon which relief can be granted. Under the NJLAD, an individual may be subject to liability if the plaintiff can sufficiently plead each element of a prima face case with respect to that individual. *See Cortes v. University of Medicine and Dentistry of New Jersey,* 391 F. Supp. 2d 298, 314 (D.N.J.2005) (citing N.J. Stat. Ann. 10:5-12(d)).

To establish a prima facie case of retaliation under the NJLAD, Ms. Abell must show that she: (1) engaged in protected activity; (2) suffered an adverse employment action; and (3) established a causal connection between the protected activity and the adverse employment action. *Deville v. Givaudan Fragrances Corp.*, No. CIVA082034GEBMCA, 2010 WL 2232718, at *5 (D.N.J. June 1, 2010), *aff'd,* 419 Fed. Appx. 201 (3d Cir. 2011). Here, she must also do so for each defendant.

As described above, Ms. Abell has not asserted that six of the defendants (Mr. Stack, Mr. Lehmann, Mr. McLoughlin, Mr. Ciavolella, Ms. Davis, and Mr. Reiser) had any role in her termination and therefore cannot sustain a cause of action against them for committing an adverse action. Nor has Ms. Abell alleged that five of those six defendants[4] were even aware of the Human Resources investigation into her argument with Mr. Rock. Thus, she fails to establish the second and third elements of a prima facie case against those defendants.

As to the remaining two defendants, Mr. Kahr and Mr. Murphy, she has failed to establish causation because she admits that she was looking at sexually explicit material, which was the reason for her discharge.

### F. Plaintiff Fails to State a Claim for Retaliation and NJCEPA Against the Eight Individual Defendants

Ms. Abell also fails to plead a retaliation claim under NJCEPA against the eight Individual Defendants. In order to maintain a cause of action under NJCEPA, Ms. Abell  must demonstrate that (1) she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(a) or (c); (3) an adverse employment action was taken against her; and (4) a causal connection exists between

---

[4] Mr. Reiser is the only defendant of the six that Ms. Abell has alleged knew of the Human Resources investigation.

the whistle-blowing activity and the adverse employment action. *Turner v. Associated Humane Societies, Inc.*, 396 N.J. Super. 582, 592 (App. Div. 2007). She must also show that she reasonably believes that her employer violated the law or a clear mandate of public policy. *Id.*

Like a retaliation claim under the NJLAD, under NJCEPA, defendants may only be individually liable if they are a "person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent." *See e.g.*, *Palladino v. VNA of Southern New Jersey, Inc.*, 68 F. Supp. 2d 455, 474 (D.N.J. 1999). That liability, however, is not derivative; it requires personal involvement. *See Michel v. Mainland Regional School Dist.*, 2009 WL 2391293, *3 (D.N.J. 2009) (NJCEPA provides for individual liability but such liability must be grounded in the "individual conduct" of the defendant). NJCEPA "will not impose liability on any employee, supervisor, commissioner, or attorney unless the plaintiff proves that the defendant took an adverse employment action against him because of his whistle blowing." *Bowen v. Parking Auth. of City of Camden*, No. CIV. 00-5765 (JBS), 2003 WL 22145814, at *23 (D.N.J. Sept. 18, 2003). *See also Brennan v. Palmieri*, No. 07-4364, 2008 WL 5233782, at *6 (D.N.J. Dec. 12, 2008) (requiring plaintiff "to aver factual allegations that, if accepted as true, could establish how each individual defendant was personally liable for a CEPA violation"). Ms. Abell's NJCEPA claim fails as to each defendant.

First, Ms. Abell's claim against defendants Stack, McLoughlin, Ciavolella, Davis, Reiser, and Lehmann is deficient because has failed to connect them to an adverse employment action. Although Ms. Abell alleges that she reported what she believed to be "unlawful" business practices to these defendants, she has not cited any facts linking them to her discharge or any other adverse action against her. On this basis alone, her NJCEPA claim against them fails. *See Brennan*, 2008 WL 5233782, at *6 (dismissing NJCEPA claim as to six of the Individual Defendants because plaintiff failed to show that those defendants *each* took "a retaliatory adverse employment action against [the plaintiff] that was causally linked with [the plaintiff's] alleged disclosure of 'unethical, unlawful, illegal, fraudulent, and corrupt activity'"); *Michel*, 2009 WL 2391293 at *4 ("[A]s Plaintiff does not allege in either her Complaint or Amended Complaint any particular retaliatory adverse employment act taken by Defendant Hickman, Defendants' motion to dismiss Count I as against Defendant Hickman will be granted."); *Brown v. Joel Tanis & Sons, Inc.*, No. 2:13-CV-02984 (WJM), 2016 WL 3951378, at *3 (D.N.J. July 21, 2016) ("Plaintiff has failed to establish a prima facie case of retaliation against Dell individually" where Plaintiff failed to plead any resulting "adverse employment action" that "he suffered at the hands of Dell"); *Allia v. Target Corp.*, No. CIV.A. 07-4130 (NLH), 2008 WL 1732964, at *4 (D.N.J. Apr. 10, 2008) (dismissing plaintiff's NJCEPA claim against individual defendants because plaintiff "has not

alleged how the conduct of any of the individual defendants gives rise to a CEPA claim"). Thus, absent facts alleging an adverse action by *each* defendant, her claim must be dismissed.

Second, although Ms. Abell alleges that Mr. Kahr and Mr. Murphy were involved in the decision to end her employment, she has not sufficiently pled causation — i.e., that her discharge was *because of* her whistleblowing activity. In fact, Ms. Abell does not allege when or what she told defendant Kahr that would entitle her to protection as a whistleblower under the NJCEPA, nor does she plead that he had knowledge that she complained of business practices to others. Without this information, her unspecified allegations against Mr. Khar are conclusory, and cannot survive a motion to dismiss.

What is more, Ms. Abell's Complaint undercuts her causation theory because she includes many facts that show she was treated favorably by defendants Reiser and Murphy after reporting concerns in 2014, including receiving a promotion and being called "Jordan," after allegedly reporting business irregularities to them as early as 2014. *See Calabria v. State Operated Sch. Dist. for City of Paterson*, No. 06–6256, 2008 WL 3925174, at *6 (D.N.J. Aug. 26, 2008) (in evaluating the causation prong of NJCEPA, "[t]he Third Circuit has focused on the timing of the retaliatory action and any evidence of ongoing antagonism"). Therefore, Ms. Abell has plead the opposite of "ongoing antagonism" from Mr. Reiser and Mr. Murphy

142338719.4

after she allegedly reported business irregularities to them.

In sum, as to defendants Kahr, Reiser, and Murphy Ms. Abell has not alleged facts showing that her discharge, which occurred four years later, had anything to do with her alleged whistleblowing. The Court takes this temporal gap as evidence that cuts against pleading causation. *See Griffin v. Metromedia Energy, Inc.*, No. CV 10-3739, 2011 WL 12872504, at *2-4 (D.N.J. Feb. 7, 2011) (dismissing plaintiff's NJCEPA claim against the employer defendant and the individual defendants because the plaintiff failed to adequately "allege a causal connection between the whistle-blowing activity and his termination" and noting that a seven month gap between termination and the plaintiff's allegation of opposing fraudulent billing practices was not sufficiently proximate to support an inference of causation). Ms. Abell, therefore, has not adequately plead retaliation against the Individual Defendants under the NJCEPA.

### G.     The Complaint Should be Dismissed Without Leave to Amend

"[A] district court need not allow a curative amendment where it would be futile and inequitable" and where "the complaint cannot succeed as a matter of law." *Hollis-Arrington v. PHH Mortgage Corp.*, No. CIV.A. 05-2556FLW, 2005 WL 3077853, at *4 (D.N.J. Nov. 15, 2005), *aff'd*, 205 Fed. Appx. 48 (3d Cir. 2006) (citing *Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004)). As described above, Plaintiff has not properly pled any of her purported causes of action, nor could she. It would

be futile to allow Plaintiff an opportunity to recast her meritless claims, and inequitable to force Defendants to incur further expense responding to them again.

## IV.   CONCLUSION

Ms. Abell filed this lawsuit after being discharged because Pacira received reports that she was looking at a sexually explicit website at a work event and showing that website to her colleagues. Even taking Ms. Abell's allegations as true, this lawsuit should be dismissed because Ms. Abell admits in her Complaint that she looked at this website at work. But even if not dismissed in its entirety, Ms. Abell's Fifth Cause of Action—alleging whistleblower retaliation under Dodd-Frank—should be dismissed against all defendants with prejudice because she is not entitled to whistleblower protection under the Act. Further, all of Ms. Abell's Causes of Action against the eight Individual Defendants—alleging claims for sex discrimination, hostile work environment and retaliation under the NJLAD and retaliation under the NJCEPA—fail to allege sufficient facts to state a claim under the federal pleading standard and should be dismissed as a matter of law.

142338719.4

DATED:  December 28, 2018

By:  *s/ Anthony Malloy*
    Anthony Molloy
    Pacira Pharmaceuticals, Inc.
    5 Sylvan Way
    Parsippany, NJ 07054
    (973) 254-4351 direct
    (973) 267-0060 fax
    anthony.molloy@pacira.com

    Javier Garcia, *Pro Hac Vice* (Pending)
    Perkins Coie LLP
    1888 Century Park East, Suite 1700
    Los Angeles, CA 90067-1721
    (310) 788-3293 direct
    (310) 843-2803 fax
    jgarcia@perkinscoie.com

    Attorneys for Defendants Pacira
    Pharmaceuticals, Inc., Stack, Kahr,
    Murphy, McLoughlin, Ciavolella, Reiser,
    Davis, and Lehmann

# CERTIFICATE OF SERVICE

I certify that on December 28, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorney(s) of record.

| | |
|---|---|
| Milena Pisano-McNally<br>Neal Brickman<br>Law Offices of Neal Brickman, P.C.<br>420 Lexington Avenue, Suite 2440<br>New York, NY  10170<br>(212) 986-6840<br>Attorneys for Plaintiff | |

DATED:  December 28, 2018

*s/ Anthony Molloy*
Anthony Molloy

142338719.4