UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
--------------------------------------------------------X
RESHMA ABELL,

                Plaintiff,         Case No. 2:18-cv-16509-MCA-LDW

   -against-
                                   Hon. Madeline Cox Arleo

PACIRA PHARMACEUTICALS, INC.,
DAVE STACK, individually and in his
capacity as Chief Executive Officer of
PACIRA PHARMACEUTICALS, INC.,
And RICH KAHR, PETER MURPHY,
DENNIS McLOUGHLIN, PAUL
CIAVOLELLA, GLENN REISER, JOYCE
DAVIS, and MATT LEHMANN, in their
capacities as employees of PACIRA
PHARMACEUTICALS, INC.
                      Defendants.
--------------------------------------------------------X

## PLAINTIFFS RESHMA ABELL'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

LAW OFFICES OF NEAL BRICKMAN, P.C.
Milena Pisano McNally, Esq. (013942012)
Neal Brickman, Esq.
Judith Goldsborough, Esq.
Attorneys for Plaintiff, Reshma Abell
420 Lexington Avenue, Suite 2440
New York, New York 10017
Telephone: (212) 986-6840
Facsimile: (212) 986-7691
E-mail: neal@brickmanlaw.com
E-mail: jlg@brickmanlaw.com

# TABLE OF AUTHORITIES

*Abbamont v. Piscataway Tp. Bd. of Educ.*, 138 N.J. 405, 650 A.2d 958, 966 (N.J. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993) . . . . . . . . . 7

*Allia v. Target Corp.,* Civ. A. 07-4130(NLH)(AMD), 2010 U.S. Dist. LEXIS 25337 (D.N.J. Mar. 17, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . 25

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bell v. Metallurgie Hoboken Overpelt*, 902 F.2d 194, 197 (2d Cir. 1990) . . . . . . . 7

*Bombalski v. Lanxess Corp., No. 13-01653, 2014 U.S. Dist. LEXIS 31570 (W.D. Pa. Mar. 11, 2014* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bowen v. Parking Authority of the City of Camden,* No. 00-5765, 2003 U.S. Dist. LEXIS 16305, 2003 WL 22145814 (D. N.J. Sept 18, 2003) . . . . . . . . . . . . . . . . . 23

*Bowles v. City of Camden, 993 F. Supp. 255, 264-65 (D.N.J. 1998)* . . . . . . . . . . 12

*Campbell v. Sup. Ct. of N.J., Civ. No. 11-555, 2012 U.S. Dist. LEXIS 41650,*

*2012 WL 1033308, *17 (D.N.J. Mar. 27, 2012)* . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Clayton v. City of Atl. City*, 722 F. Supp. 2d 581, 588-89 (D.N.J. 2010) . . . . . . . 22

*Cotto v. Ardagh Glass Packing, Inc.,* No. 18-1037 (RBK/AMD), 2018 U.S. Dist. LEXIS 135194 (D.N.J. Aug. 10, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cowher v. Carson & Roberts*, 425 N.J. Super. 285, 303-04, 40 A.3d 1171 (N.J. App. Div. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Davis v. Supervalu, Inc.,* No. 13-414 JBS/JS, 2013 U.S. Dist. LEXIS 56341, 2013 WL 1704295, at *4 (D.N.J. Apr. 19, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767, 770-771, 200 L. Ed. 2d 15 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Dorchester Fin. Sees., Inc. v. Banco BRJ, S.A.,* 722 F.3d 81 (2d Cir. 2013) . . . . . 7

*Estabrook v. Safety and Ecology Corp.,* 556 Fed. Appx. 152, 157, 2014 U.S. App. LEXIS 3475, 2001 WL 702355 (3d Cir. N.J. 2014) . . . . . . . . . . . . . . . . . . . . . . 2

*EEOC v. Foodcrafters Distrib. Co.,* 2006 U.S. Dist. LEXIS 11426 at 42-45 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17,20

*Gaines v. UPS,* No. 2:13-3709 (KM) (MCA), 2014 U.S. Dist. LEXIS 51413 (D.N.J. Apr. 14, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,18

*Gunther v. Shelter Grp.,* No. 13-4739, 2014 U.S. Dist. LEXIS 108881, 2014 WL 3869940, (D.N.J. Aug. 7, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hargrave v. Cnty. of Atlantic,* 262 F. Supp. 2d 393, 423 (D.N.J. 2003) . . . . . . . . 19

*Hashem v. Hunterdon Cty.* 2016 U.S. Dist. LEXIS 134055 (D.N.J. Sep. 29, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hurley v. Atl. City Police Dep't,* 174 F.3d 95, 126-27 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17,19

*Ivan v. County of Middlesex,* 595 F. Supp. 2d 425, 478 (D.N.J. 2009) . . . . . . . . . 22

*Kehr Packages v. Fidelcor, Inc.,* 926 F.2d 1406 (3d Cir. 1991) . . . . . . . . . . . . . . 6

*Lehmann v. Toys R Us, Inc.,* 132 N.J. 587, 601, 626 A.2d 445 (1993) . . . . . . . 9,10

*McTernan v. City of New York* 577 F.3d 521 (3d Cir. 2009) . . . . . . . . . . . . . . . 13

*Michel v. Mainland Reg'l Sch. Dist.,* No. 08-2238, 2009 U.S. Dist. LEXIS 66828, 2009 WL 2391293, at *3 (D.N.J. July 30, 2009) . . . . . . . . . . . . . . . . . . . . . . 22,24

*Parker v. City of Trenton,* 2008 N.J. Super. Unpub. LEXIS 2462, 2008 WL 2917184 (N.J. Super. A.D. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,21

*Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) . . . . . . . . . . . . . 6

*Southward v. Elizabeth Bd. of Educ.,* 2017 U.S. Dist. LEXIS 4209, 2017 WL 111924, at *4 (D.N.J. Jan. 11, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,23

*Tarr v. Ciasulli* 181 N.J. 70 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,19

*Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Tonkinson v. Byrd,* No. 17-06162, 2018 U.S. Dist. LEXIS 68555, 2018 WL 1919829  (D.N.J. Apr. 24, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Washington v. Human Res. Manager Manheim Auto Auction,* No. CV 17 2761, 2017 U.S. Dist. LEXIS 155817, 2017 WL 4246896, at \*2 (E.D. Pa. Sept. 22, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Zanes v. Fairfield Cmtys., Inc.,* No. 05-2288, 2008 U.S. Dist. LEXIS 54513, at \*12-13 (D.N.J. July 17, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Zanger v. Bank of Am., N.A.,* No. 10-2480-RBK-KMW, 2011 U.S. Dist. LEXIS 162430 (D.N.J. Dec. 19, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**Statutes**

N.J.S.A. §§ 10:5-1 to 10:5-49. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

N.J.S.A. §§ 34:19-1 to 34:19-8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 22

**Rules**

Federal Rule of Civil Procedure 15. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Federal Rules of Civil Procedure Rule 12 (b)(6) . . . . . . . . . . . . . . . . . . . . . . . . .1,6

Plaintiff Reshma Abell ("Abell" or "Plaintiff"), respectfully submits this Memorandum of Law in Opposition to the Motion of Defendants, Pacira Pharmaceuticals, Inc. ("Pacira"), Dave Stack, individually and in his capacity as Chief Executive Officer of Pacira ("Stack"), Rich Kahr ("Kahr"), Pete Murphy ("Murphy"), Dennis McLoughlin ("McLoughlin"), Paul Ciavolella ("Ciavolella"), Glenn Reiser ("Reiser"), Joyce Davis ("Davis"), and Matt Lehmann ("Lehmann," and, collectively, "Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P." 12 (b)(6)), to dismiss the Complaint.

## I.    **PRELIMINARY STATEMENT**

This is an action for damages arising from the hostile work environment that Plaintiff experienced at Pacira, Defendants' illegal discriminatory treatment of, retaliation against, and termination of Plaintiff. The factual basis for Plaintiff's claims, recounted in detail in the Complaint, includes a long history of discriminatory and retaliatory acts based, at least in part, on her sex and national origin, which ultimately led to her termination, after internally reporting various financial irregularities to, among others, individual defendants Kahr, Murphy, McLoughlin, Ciavolella, Reiser, Davis, and Lehmann.

In her Complaint, Plaintiff Reshma Abell makes sufficient factual allegations to justify each and every claim for relief stated therein. Despite the

1

early stage of this action, before any discovery has taken place, Defendants have filed a motion to dismiss all of Plaintiff's claims, with prejudice. In addition, Defendants have incorrectly applied the summary judgment standard by challenging Plaintiff's claims and disputing the facts alleged in the Complaint. This standard is inappropriate on a motion to dismiss. See *Estabrook v. Safety and Ecology Corp.,* 556 Fed. Appx. 152, 157, 2014 U.S. App. LEXIS 3475, 2001 WL 702355 (3d Cir. N.J. 2014).

Plaintiff, a female of Indian descent, was a Surgical Account Specialist at Pacira until she was wrongfully terminated in March 2018. In her Complaint, she states the following claims: :(1) Sexual Discrimination under the New Jersey Law Against Discrimination ("NJLAD," N.J.S.A. §§ 10:5-1 to 10:5-49), (2) Sexual Harassment Hostile Work Environment under NJLAD, (3) Retaliation under NJLAD, (4) Retaliation under the New Jersey Conscientious Employee Protection Act ("NJCEPA," N.J.S.A. §§ 34:19-1 to 34:19-8), and (5) Retaliation in violation of the Dodd Frank Wall Street Reform and Consumer Protection Act ( Dodd Frank). [1] As set forth below, none of the arguments for dismissal are availing and Defendants' motion to dismiss should be denied in its entirety.

---

[1] In view of the Supreme Court decision in *Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767, 770-771, 200 L. Ed. 2d 15 (2018), Plaintiff withdraws her Fifth Cause of Action for Retaliation Under the Dodd Frank Act.

2

## II.   STATEMENT OF FACTS

Plaintiff was summarily terminated from her job in the middle of an investigation into a sexual harassment incident perpetrated by a co-worker against her, and after she had reported various ongoing questionable and illegal business irregularities at Pacira. Complaint ¶¶ 67-86, 99-101, 104-108.  Abell alleged that the atmosphere in the office was "overtly hostile" "male-dominated" and pervaded by raunchy, sexually-based jokes and innuendo. She was regularly subjected to sexually charged comments such as that "she was sleeping with her clients" or "blowing someone."  Complaint ¶ 22.  She further alleged that the governing office "boys' code" discouraged complaints about this kind of harassment and she had to put up with it. Specifically, with regard to the gender discrimination claim Plaintiff alleges that defendants discriminated against her by treating her differently and far less favorably than male employees who had engaged in egregious harassment and discrimination against her without facing any discipline or adverse consequences.

Plaintiff also was expected to work two jobs without commensurate pay despite repeated requests to her supervisor Murphy to get final approval from the CEO, Stack, of the raise and promotion she had been promised. Complaint ¶ 24-29. Murphy repeatedly cancelled meetings and stonewalled her requests by saying that he had to catch Stack in a "good mood" because of his "explosive temper."

3

At the company National Sales Meeting in February 2018, Abell was subjected to a hostile and threatening assault by Rock, another employee who verbally abused her because she had decided to attend a TopGolf event in order to network and recruit some new members for her department. Complaint ¶¶39-42. Rock harassed and humiliated her in front of her colleagues by shouting at her that she should attend the Women's Leadership Conference, not the golf event which he shouted was a "guy thing." Complaint ¶ 43. This encounter left her visibly distraught to the point where she had to be escorted back to her room. Complaint ¶ 45. The complaint further details that after plaintiff was subjected to this hostile sexual harassment by Rock, that he was not disciplined at all. Complaint ¶ 56. Instead, the Plaintiff was admonished "to stay away from him" as though she was at fault for his outrageous conduct. Complaint ¶¶ 55.

Despite the clear allegations in the complaint that plaintiff was summarily terminated, during the supposed investigation into Rock's abusive behavior, based on a bogus charge of misconduct against her with no investigation---and despite her protestations that she had done nothing wrong - - defendants misstate throughout their brief that Plaintiff "admitted to misconduct." Complaint ¶¶ 59-64. Despite defendants' repeated statements to the contrary, nowhere in the complaint does plaintiff admit to any misconduct or to viewing "sexually explicit" material on her phone. She only acknowledged that she had received a text from a client

4

and looked at it for only seconds, that it was the cultural norm in India and not offensive at all. But when she tried to explain to Murphy and Kahr that there was nothing offensive about the text, which was the basis of the anonymous complaint against her, Kahr flatly refused to view it. Complaint ¶¶ 62-64. The complaint makes clear that she disputed this bogus complaint against her which was fabricated as a pretext to fire her after the sexual harassment incident and her internal reports of securities violations and irregular business practices.

Despite the clear allegations in the Complaint defendant repeatedly argues -- improperly and without factual basis -- that Plaintiff's "admission of misconduct" establishes Pacira's defense, i.e. that she was fired for a legitimate and lawful reason which prevents her from bringing a claim under NJLAD. In fact, accepting the allegations of the complaint as stated therein and NOT as misstated and improperly argued by defendant, the complaint alleges ample facts to show that Defendants wrongfully terminated  her using a bogus complaint as a pretext instead of properly addressing the sexual discrimination and harassment  she had been subjected to by male employees, and in retaliation for her ongoing complaints about business and ethical irregularities at the company. Complaint ¶ 61-66.

## III.   ARGUMENT

In their argument for dismissal of the complaint defendants essentially make two main arguments: (1) that the claims for discrimination under NJLAD and NJCEPA fail because Plaintiff was discharged for a legitimate, non-discriminatory reason, and (2) that the claims against the individuals fail to connect them to the discriminatory and retaliatory acts complained of. These arguments rely on defendants' improper factual distortion of, and challenge to, the actual allegations of the Complaint and a gross misstatement of law. These arguments do not meet defendants' burden of showing that no claim has been stated. See *Kehr Packages v. Fidelcor, Inc.,* 926 F.2d 1406 (3d Cir. 1991).

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for failure to state a claim upon which relief can be granted. When reviewing a 12(b)(6) motion to dismiss on the pleadings, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008). The defendant, as the moving party, bears the burden of

showing that no claim has been stated. *Gaines v. UPS,* No. 2:13-3709 (KM)
(MCA), 2014 U.S. Dist. LEXIS 51413 (D.N.J. Apr. 14, 2014).

A pleading that states a claim for relief must contain a "short and plain
statement of the claim showing that the pleader is entitled to relief" in order to
"give the defendant fair notice of what the... claim is and the grounds upon which it
rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.
Ed. 2d 929 (2007).

Dismissal is appropriate at the motion to dismiss stage only if, accepting all the
facts alleged in the complaint as true, a pleading has not pleaded "enough facts to
state a claim to relief that is plausible on its face." In order to thwart a pre-
discovery dismissal motion under 12(b)(6), the plaintiff need only make a "prima
facie showing...established solely by allegations" (*see e.g., Bell v. Metallurgie
Hoboken Overpelt*, 902 F.2d 194, 197 (2d Cir. 1990)), and "...all allegations are
construed in the light most favorable to the plaintiff and doubts are resolved in the
plaintiff's favor." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir.
1993); *see also, Dorchester Fin. Sees., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81 (2d
Cir. 2013). A pleading that states a claim for relief need only contain a "short and
plain statement of the claim showing that the pleader is entitled to relief" in order
to "give the defendant fair notice of what the... claim is and the grounds upon
which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct.

7

1955, 167 L. Ed. 2d 929 (2007).  For the reasons below Plaintiff's Complaint meets this legal standard and the Defendants' Motion to Dismiss should be denied in its entirety.

## B. The Complaint States Claims for Sexual Discrimination and Hostile Work  Environment

A complaint withstands a motion to dismiss in a discriminatory discharge case, if it contains "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of the elements of a prima facie case of discriminatory discharge. *Cotto v. Ardagh Glass Packing, Inc.,* No. 18-1037 (RBK/AMD), 2018 U.S. Dist. LEXIS 135194 (D.N.J. Aug. 10, 2018). The burden of establishing a prima facie case of discrimination is "not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). As detailed herein, Plaintiff has alleged sufficient facts of discrimination to move forward with her case.

## 1.  Sex Discrimination Standard Under NJLAD

The NJLAD prohibits unlawful discrimination against an individual with respect to the terms and conditions of employment because of various traits and characteristics, including, but not limited to, race, religion, age, sex and disability." *Davis v. Supervalu, Inc.,* No. 13-414 JBS/JS, 2013 U.S. Dist. LEXIS 56341, 2013 WL 1704295, at *4 (D.N.J. Apr. 19, 2013). The elements of a prima facie case of

8

discrimination under NJLAD are (1) the plaintiff belongs to a protected class; (2) that she was qualified for the position; (3) that she suffered an adverse employment action; and (4) that the adverse action occurred under circumstances that could give rise to an inference of intentional discrimination. *Campbell v. Sup. Ct. of N.J.*, Civ. No. 11-555, 2012 U.S. Dist. LEXIS 41650, 2012 WL 1033308, *17 (D.N.J. Mar. 27, 2012).

### 2. Hostile Work Environment Under NYLAD

To state a claim for hostile work environment sexual harassment, a female plaintiff must allege conduct that occurred because of her sex and that a reasonable woman would consider it sufficiently severe or pervasive enough to alter the conditions of her employment and create an intimidating, hostile, or offensive working environment. *Lehmann v. Toys R Us, Inc.,* 132 N.J. 587, 601, 626 A.2d 445 (1993). However, whether plaintiff met the "reasonable woman" standard for a hostile work environment claim is a factual inquiry "inappropriate for resolution on a motion to dismiss." *Gunther v. Shelter Grp.,* No. 13-4739, 2014 U.S. Dist. LEXIS 108881, 2014 WL 3869940, at *6 (D.N.J. Aug. 7, 2014).

Here, Abell sufficiently alleges that she was subjected to a hostile environment and sexual discrimination and treated differently than her male colleagues, which is a protected activity under NYLAD. See *Hashem v. Hunterdon Cty.* 2016 U.S.

Dist. LEXIS 134055 (D.N.J. Sep. 29, 2016). She alleges that she was subjected to daily raunchy jokes and sexually charged comments about her work by her male co- workers who derided her work ethic and attributed her success to "sleeping with her clients" or "blowing someone." She alleges that this was pervasive and typical of the work environment she was forced to endure in order to not violate the boys code which ruled the workplace and which was not addressed by any of her supervisors. She further alleges that she was expected to do the work of two jobs without commensurate pay or title. Additionally, she alleged that after she was subjected to the threatening and hostile sexist tirade of a male employee, who was angry that she was attending a company TopGolf event considered to be 'a guy thing,' that he was not disciplined at all for his discriminatory conduct. Instead *Plaintiff,* inexplicably, suddenly was targeted by management with a bogus investigation into her own conduct and summarily terminated on the vague and unsubstantiated basis that she had violated the "core policies" of the company. When a plaintiff alleges that she has been subjected to harassing comments about the lesser abilities, capacities, or the "proper role" of members of her sex, she has established that the harassment occurred because of her sex. *Lehmann* 132 N.J. at 601. Even a single incident of sexual harassment can constitute a hostile work environment if it is sufficiently severe. *Bombalski v. Lanxess Corp.,* No. 13-01653, 2014 U.S. Dist. LEXIS 31570 (W.D. Pa. Mar. 11, 2014).

10

### 3. Defendants' Blanket Argument for Dismissal of the Complaint Relies on Impermissible Factual Distortion that Cannot Support Dismissal

Defendants argue that an "admission" of misconduct by Plaintiff contradicts her allegations in the Complaint and establishes their defense to all of her claims. Defendants rely on this improper and utterly faulty premise in arguing for the wholesale dismissal of the Complaint. Defendants' repeated refrain that the Complaint alleges that Plaintiff admitted to misconduct flies in the face of the actual allegations, as a simple reading of the Complaint makes clear. Plaintiff made no admission of any misconduct. Rather, in the face of a bogus anonymous complaint, apparently made by someone who had attended the same NSM conference at which Plaintiff had been sexually harassed, she strenuously denied this claim. She tried to explain to Kahr and Murphy that she had received a text from a client related to her Indian culture, which she had looked at only for *seconds* but that it was *neither pornographic nor offensive.*  Contrary to defendants' argument, at no time did she admit to "viewing sexually explicit material" on her phone or doing anything wrong. The Complaint states that when the Plaintiff offered proof that the text, which she had viewed only for seconds, was not offensive to Kahr, he flat out refused to look at it and did not allow the Plaintiff any opportunity to defend herself against the baseless charges and prove her innocence.

Accepting these allegations as true, they are more than sufficient to state a

prima facie case of discrimination at this stage of the litigation. The fact that

Plaintiff was terminated within hours of the bogus complaint against her with no

investigation into it, and no opportunity to defend against the charge, supports the

inference that the reason given for her termination was pretextual. See *Zanes v.*

*Fairfield Cmtys., Inc.*, No. 05-2288, 2008 U.S. Dist. LEXIS 54513, at *12-13

(D.N.J. July 17, 2008) (stating the fact that plaintiff was summarily fired without

an opportunity to deny, explain, or otherwise respond to the complaint against him

supports inference of pretext).

Defendants' second argument, that Plaintiff did not allege that her job

performance "met her employer's legitimate expectations" is similarly baseless. It

completely ignores the detailed statements about Plaintiff's excellent work

performance. The Complaint clearly alleges that Plaintiff was a top performer who

was overdue for a raise and promotion, which were denied to her in the midst of

her ongoing reports to her superiors concerning illegal activities at the company,

and in the middle of an investigation into complaints about the Rock sexual

harassment incident. These allegations sufficiently state that the plaintiff met her

employers' reasonable expectations. See *Bowles v. City of Camden,* 993 F. Supp.

255, 264-65 (D.N.J. 1998) (complaint sufficiently alleged facts "such that the court

can infer that if the employer's actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons").

Accordingly, because Defendants' argument relies on a faulty factual premise and a complete distortion of the facts alleged in the Complaint, it fails. The temporal proximity of the anonymous complaint, which was made by someone at the same conference where the Rock incident occurred, to the supposed investigation into the incident, supports an inference of sex discrimination with regard to her termination. See, *Zanes, supra.*

Defendants' argument erroneously introduces new facts and challenges the facts as alleged in the Complaint which is contrary to the well-established standard on a motion to dismiss which requires the court to accept all facts alleged as true. See *McTernan v. City of New York* 577 F.3d 521 (3d Cir. 2009).

## C. The Complaint Adequately States Claims Against Individuals Under NJLAD

The individually named defendants can be held personally liable for the sex discrimination and hostile environment claims under New Jersey's Law Against Discrimination (N.J.S.A. 10;5-15). See, *Tarr v. Ciasulli* 181 N.J. 70 (2004) (holding that supervisors can be liable under the New Jersey Law Against Discrimination under a theory of aiding and abetting if they perform an act that caused the injury or knowingly assisted in the violation). Contrary to defendants' argument, a claim for aiding and abetting is properly stated where the defendants'

discriminatory conduct is described, regardless of whether the complaint makes any specific reference to the theory of aiding and abetting. See *Cowher v. Carson & Roberts*, 425 N.J. Super. 285, 303-04, 40 A.3d 1171 (N.J. App. Div. 2012). In order adequately to state a claim the complaint need only describe the events that occurred and how these events were discriminatory. See *Washington v. Human Res. Manager Manheim Auto Auction,* No. CV 17 2761, 2017 U.S. Dist. LEXIS 155817, 2017 WL 4246896, at *2 (E.D. Pa. Sept. 22, 2017).

The Complaint meets this standard by alleging, *inter alia*, the following facts which support both the sex discrimination and sexual harassment hostile environment claims under NJLAD against the individual defendants:

(1) The plaintiff suffered a hostile and sexist assault by another employee, Rock, which left her shaken and distraught; her supervisors failed to properly investigate or address this assault or discipline the co-worker. Rich Kahr and Peter Murphy were two of the individual defendants who participated in the investigation into this charge and in the events that led to her termination; Instead of actually investigating and taking steps to address the harassment against Abell, Murphy and Kahr told her that there had been an anonymous complaint about *her* behavior, claiming that she had looked at kama sutra on her phone for 30 minutes; (6) Kahr and Murphy failed to investigate this bogus complaint against Plaintiff and, in fact, Kahr refused to look at the

14

text from her client which she proffered as evidence that it was not at all offensive. Complaint ¶¶ 43-45,55-64,72,79,81,122-123.

(2) The Plaintiff alleged that she was summarily terminated on a conference call by Kahr and Murphy with no notice or warning within hours of the bogus anonymous complaint, which they never investigated, without allowing her any opportunity to defend herself, during the supposed investigation into the sexual harassment incident by Rock, in stark contrast to the treatment of Rock and other employees guilty of harassment whose behavior was condoned and who received no discipline at all. Complaint ¶¶ 55-64

(3) The Plaintiff alleged that Reiser, one of her supervisors, took part in the investigation into Rock's harassment that resulted in no disciplinary action; She further alleged that she had reported to Reiser and Murphy her concerns of business irregularities and illegal activities at Pacira. Complaint ¶¶ 49,50, 84,114, 122.

(4) Murphy admonished the Plaintiff to stay away from Rock as if she was the guilty party, but Rock was not disciplined at all.  Complaint ¶ 55-56.

(5) The Plaintiff further alleged that she was subjected to raunchy sexist comments as typical workplace atmosphere and derided by her coworkers who attributed her work success to her doling out sexual favors. Her

15

supervisors including individual defendants Murphy, McLoughlin, Ciavolella and Reiser were responsible for ensuring that she was not harassed on a daily basis in the workplace and for disciplining those responsible, but instead took action allowing this hostile and sexist workplace atmosphere to continue. Complaint ¶¶ 5,6,7.

(6) She was told that the decision to terminate her was made by the "executive team" without identifying the team members. Any of the individual defendants could have been part of that executive team: she had reported concerns of illegal business activities to several of them including to her supervisors Murphy, McLoughlin, Ciavolella, and Reiser, as well as to Joyce Davis and to Matt Lehmann. Stark as CEO had ultimate power over the terms and conditions of her employment.  Only discovery will yield the identity of the executive team members who were responsible for her termination. Complaint ¶¶ 62-64.

(7) She alleged that she had reported her concerns about the nepotism of the CEO Stark and alleged that Murphy repeatedly had failed to promote and pay her the raise she had earned, blaming Stark's temper.

(8) She reported concerns about compliance and ethical issues as well as about the nepotism of Stark and Board members to Murphy and Reiser, who told her to keep her mouth shut. Complaint ¶79,80,81,84.

(9) She was summarily terminated for allegedly engaging in conduct that violated Pacira's "core values" with no warning and with no prior complaints or performance plan, after the sexual harassment incident which defendants Reiser, Kahr and Murphy claimed to be investigating, but failed to address in any meaningful way. Complaint ¶¶ 62-65.

Inaction can be sufficient to establish individual liability where a supervisor violates a duty to act by deliberate indifference or affirmatively harassing acts. See *Hurley*, 174 F.3d at 126. Tolerance of and inaction in the face of sexual discrimination and harassment can support individual liability. The individual defendants who were her supervisors and/or who participated in her wrongful termination are liable for the discrimination she suffered if they were aware of it and failed to address it. See, *EEOC v. Foodcrafters Distrib. Co.*, 2006 U.S. Dist. LEXIS 11426 at 42-45 (2006) (supervisor individually liable under NJLAD who was often unresponsive to appeals to remedy the harassing environment and failed his duty to respond to complaints and address workplace abuses). Supervisors have a duty to act against harassment under NJLAD. See *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 126-27 (3d Cir. 1999). The duty imputes an obligation upon supervisors to address conduct, whether active or passive, that condones employee harassment. Id. at 126. "When a supervisor flouts this duty, he subjects himself and his employer to liability." Id.

At this pre-discovery stage of the action, without the benefit of any

discovery, Plaintiff does not have all the facts needed to establish exactly which

individual defendants, including Stark, Davis and Lehmann, were part of the

"executive team" responsible for the events which led to her unlawful termination.

However, the Complaint alleges sufficient facts to allow the case to go forward and

give Plaintiff the opportunity to conduct discovery. See *Gaines v. UPS*, No. 2:13-

3709 (KM) (MCA), 2014 U.S. Dist. LEXIS 51413 (D.N.J. Apr. 14, 2014)

(employee's allegations of protected activity, which stated that she complained of

racial discrimination on three occasions, were sufficient for the NJLAD retaliation

claim to go forward). Moreover, the question of whether the named individual

defendants substantially assisted and encouraged the harassment is a question of

fact not properly determined on a motion to dismiss the pleadings. See *Parker v.*

*City of Trenton*, 2008 N.J. Super. Unpub. LEXIS 2462, 2008 WL 2917184 (N.J.

Super. A.D. 2008).

### D. <u>The Complaint Adequately States a Claim Against for Retaliation Under NJLAD Against the Individuals</u>

To state a claim of retaliation under NJLAD, a plaintiff must show that: "(1) she

engaged in a protected activity under NJLAD; (2) the employer took an adverse

action against her; and (3) there was a causal connection between the employee's

participation in the protected activity and the adverse employment action."

*Hargrave v. Cnty. of Atlantic*, 262 F. Supp. 2d 393, 423 (D.N.J. 2003). To establish an aiding and abetting claim under NJLAD, the Plaintiff must demonstrate that the defendants: (1) aided another in performing a wrongful act that caused an injury; (2) were aware of their role in the illegal activity at the time it was committed; and (3) knowingly and substantially assisted with the main violation. *Tarr v. Ciasulli,* 181 N.J. 70, 853 A.2d 921, 929 (N.J. 2004).

The Complaint alleges that the Plaintiff worked in an atmosphere where she was subjected daily to a barrage of sexist jokes and inappropriate raunchy comments attributing her work success to "sleeping with clients" or the like. This atmosphere was condoned and males who engaged in inappropriate behavior were not disciplined. Supervisors have a duty to act against harassment under NJLAD. See *Hurley v. Atl. City Police Dep't,* 174 F.3d 95, 126-27 (3d Cir. 1999). The duty imputes an obligation upon supervisors to address conduct — whether active or passive — that condones employee harassment. *Id.* at 126. "When a supervisor flouts this duty, he subjects himself and his employer to liability." *Id.* Under this standard, all of Abell's supervisors can be held individually liable for her wrongful termination as active participants or passive in their inaction to address the discrimination.

As detailed, Kahr and Murphy failed properly to investigate the Rock harassment incident and were directly involved in the bogus investigation against

19

Plaintiff. Kahr and Murphy refused to view the exonerating text she proffered to prove her innocence and told her that she was terminated by the "executive team" for failing to follow the core values of the company. Complaint ¶ ¶ 54, 56, 64,72. Ms. Abell was never told the identity of the executive team. Tolerance of and inaction in the face of sexual discrimination and harassment can support individual liability. The individual defendants who were her supervisors and the executives who participated in the wrongful termination can be liable for the discrimination she suffered if they were aware of it and failed to address it. See, *EEOC v. Foodcrafters Distrib. Co.*, 2006 U.S. Dist. LEXIS 11426 at 42-45 (2006) (supervisor individually liable under NJLAD who was often unresponsive to Plaintiffs' direct appeals to remedy the harassing environment and failed his duty to respond to Plaintiffs' complaints and address workplace abuses).

Under this standard, all of Abell's supervisors and the executives on the team can be held individually liable for her wrongful termination as active participants or passive in their inaction to address the harassment and acts of discrimination. That Kahr and Murphy called her "Jordan" in 2016, or that she was given a promotion does not mitigate their individual liability for their involvement in the events surrounding her termination. As clearly stated in the Complaint, she never actually received the promotion, but was terminated instead.

At this stage, without the benefit of any discovery, Plaintiff does not have all the facts needed to establish exactly which individual management level defendants, including Stark, Davis and Lehmann were part of the "executive team" which was responsible for the events which led to her unlawful termination. Abell had reported concerns about potentially illegal business activities at Pacira to each of these management executives, as well as to Murphy and Reiser. Moreover, the question of whether the named individual defendants substantially assisted and encouraged the discrimination/harassment is a question of fact not properly determined on a motion to dismiss the pleadings. See *Parker v. City of Trenton*, 2008 N.J. Super. Unpub. LEXIS 2462, 2008 WL 2917184 (N.J. Super. A.D. 2008).

### E.  The Complaint Adequately States a Claim Against the Individual Defendants for Retaliation Under CEPA to Survive a Rule 12(b)(6) Motion.

Defendants argue that the Complaint fails to state a CEPA claim against the individual defendants because the complaint fails to connect each individual to an adverse employment action. This argument misconstrues the standard governing a motion to dismiss.  See *Southward v. Elizabeth Bd. of Educ.,* 2017 U.S. Dist. LEXIS 4209, 2017 WL 111924, at *4 (D.N.J. Jan. 11, 2017). To plead a CEPA claim, a plaintiff must demonstrate that "(1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she

21

performed a 'whistle-blowing' activity . . . ; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action." *Clayton v. City of Atl. City*, 722 F. Supp. 2d 581, 588-89 (D.N.J. 2010). Under CEPA, an "employer," includes a "person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent." N.J.S.A. 34:19-2(a). CEPA liability may attach to the employer by way of respondeat superior for the actions of its employees, and to individuals who perform retaliatory acts with the authorization of their employers. *Abbamont v. Piscataway Tp. Bd. of Educ.*, 138 N.J. 405, 650 A.2d 958, 966 (N.J. 1994); *Ivan v. County of Middlesex*, 595 F. Supp. 2d 425, 478 (D.N.J. 2009). In the instant action, the Plaintiff alleged that the decision to terminate her was made by the executive team, a group of individuals who were not identified.  This fact is enough to state a claim at this stage against each individual member of the team.  *Michel v. Mainland Reg'l Sch. Dist.*, No. 08-2238, 2009 U.S. Dist. LEXIS 66828, 2009 WL 2391293, at *3 (D.N.J. July 30, 2009) (At the complaint stage, it would be a sufficient allegation of individual liability under CEPA that the members of the Board met, discussed, and voted to terminate a plaintiff). See also *Southward v. Elizabeth Bd. of Educ.,* 2017 U.S. Dist. LEXIS at 29 (Pre-discovery complaint sufficiently stated claim against

individual Board members who voted to terminate plaintiff despite lack of detail as to actions of each individual).

At the pleading stage of an action, a CEPA claim against a group of individuals will survive dismissal where the plaintiff lacks information to state the specific act of the individuals in the group which worked in concert to take the complained of action. *Tonkinson v. Byrd,* No. 17-06162, 2018 U.S. Dist. LEXIS 68555, 2018 WL 1919829 (D.N.J. Apr. 24, 2018). [2]

The Complaint alleges that from 2014 through 2018 Plaintiff internally reported her concerns about business irregularities and securities laws violations and the rampant nepotism amongst the Executive Team and Pacira Board, all of whom were close personal friends of the CEO, to corporate officers Kahr, Lehmann, Murphy and Davis and to her immediate supervisors McLoughlin, Ciavolella and Reiser. Complaint ¶ 79-85. [3]Abell also alleges that when she reported her concerns

---

[2]Defendants mistakenly rely on *Allia v.Target Corp.,* Civ. A. 07-4130(NLH)(AMD), 2010 U.S. Dist. LEXIS 25337 (D.N.J. Mar. 17, 2010) *Bowen v. Parking Authority of the City of Camden,* No. 00-5765, 2003 U.S. Dist. LEXIS 16305, 2003 WL 22145814 (D. N.J. Sept 18, 2003) as supporting dismissal against the individual defendants but these cases are inapposite as they were decided under summary judgment standard, not the standard governing a motion to dismiss at the pleading stage. See *Southward v. Elizabeth Bd. of Educ.,* 2017 U.S. Dist. LEXIS 4209, supra.

[3] Defendants' argument that there was no causal link between Plaintiff's termination and her whistleblowing to Reiser and Murphy because there was a four-year gap is not accurate and is belied by the Complaint. Complaint ¶ 84.

to Murphy and Reiser that they told her to keep her mouth shut. Complaint ¶ 79,

81. The Complaint further states that Kahr and Murphy personally participated in

the events that led to her termination and personally informed her of the decision to

terminate her. Complaint¶ 112-116. This conduct subjects them to potential

individual liability under CEPA. See *Michel v. Mainland Reg'l Sch. Dist.*, 2009

U.S. Dist. LEXIS 66828 at 10. (Despite fact that Board made decision to terminate

plaintiff, individual supervisors can be liable under CEPA if they were engaged in

any adverse employment action against Plaintiff because of her protected conduct

under CEPA). The Complaint also details that she never got the promotion or raise

she had been promised because Murphy stonewalled on obtaining them citing

concerns about approaching the CEO, Stark.  Complaint¶ 53-56.[4]  These facts

certainly raises an inference that Abell's whistle blowing activities potentially had

put her on the chopping block with Stark, who, Murphy reported, would explode if

asked to approve her raise. Any and all of these executives, as well as Stark, could

have been part of the "executive team" that made the decision to terminate plaintiff

by means of the bogus investigation. Dismissal of the CEPA claim against the

individual defendants, under these circumstances, is not warranted. Plaintiff is

---

[4] Defendants argument that because Reiser and Murphy called Plaintiff "Jordan" in 2016 does not insulate them from liability in view of the multiple allegations regarding their involvement in the events surrounding her termination which occurred after 2016.

entitled to discovery to determine the identity of the individual team members.  See *Tonkinson, supra.*

### F.  Leave to Amend Standard

Federal Rule of Civil Procedure 15 provides that leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Thus, leave should generally be granted absent undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment. *Zanger v. Bank of Am., N.A.,* No. 10-2480-RBK-KMW, 2011 U.S. Dist. LEXIS 162430 (D.N.J. Dec. 19, 2011). An initial dismissal for failure to state a claim will ordinarily be entered without prejudice to amendment. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

Under this standard, in the unlikely event that any of Plaintiff's claims are found wanting, Plaintiff should be granted leave to file an Amended Complaint to cure any technical deficiencies or to provide additional facts to support these claims.

## IV.   **CONCLUSION**

The only issue properly to be determined by the court at this juncture is

whether the allegations in the Complaint suffice to state causes of action under the

appropriate standard. Defendant has ignored the applicable law and has improperly

misstated or ignored the facts alleged in the Complaint which adequately states

facts sufficient to support each claim. For all of the foregoing reasons, the Plaintiff

respectfully requests that this Court deny the instant motion to dismiss the

complaint, in its entirety, and award her such other and further relief as this Court

deems just, proper and fair.


Dated:        New York, New York
              February 4, 2019

                              The Law Offices of Neal Brickman, P.C.


                         By:    s/  Milena Pisano McNally
                                Milena Pisano McNally, Esq.
                                Neal Brickman, Esq.
                                Judith Goldsborough, Esq.
                                The Law Offices of Neal Brickman
                                *Attorneys for Plaintiff*
                                *Reshma Abell*
                                420 Lexington Avenue, Suite 2440
                                New York, New York 10170
                                (212) 986-6840

26

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY THAT ON February 4, 2019, I electronically filed the foregoing

document with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to the following attorneys of record:

Anthony Molloy (#1972006)
Vice President, Legal and Compliance
General Counsel
Deputy Compliance Officer
Pacira Pharmaceuticals, Inc.
5 Sylvan Way
Parsippany, NJ 07054
(973) 254-4351 direct
(973) 267-0060 fax
anthony.molloy@pacira.com

Javier Garcia, Pro Hac Vice (Pending)
Perkins Coie LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
(310) 788-3293 direct
(310) 843-2803 fax
 jgarcia@perkinscoie.com

Attorneys for Defendants

Dated: February 4, 2019          s/ Milena Pisano-McNally

                                 Milena Pisano-McNally