James J. Panzini, Esq. (Bar ID: 022101990)
Pooja Bhutani (Bar ID: 169592016)
**JACKSON LEWIS P.C.**
766 Shrewsbury Avenue
East Tower, Suite 101
Tinton Falls, New Jersey 07724
T: 732-532-6148
F: 732-842-0301
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RESHMA ABELL, | : |
| | :    Civil Action No.: |
| Plaintiff, | :    2:18-cv-16509 (MCA) (AME) |
| | : |
| v. | : |
| | : |
| PACIRA PHARMACEUTICALS, INC., | : |
| DAVE STACK, individually and in his | : |
| capacity as Chief Executive Officer of | : |
| PACIRA PHARMACEUTICALS, INC., | : |
| and RICH KAHR, PETER MURPHY, | : |
| DENNIS McLOUGHLIN, PAUL | : |
| CIAVOLELLA, GLENN REISER, JOYCE | : |
| DAVIS AND MATT LEHMANN, in their | : |
| capacities as employees of PACIRA | : |
| PHARMACEUTICALS, INC., | : |
| | : |
| Defendants. | : |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

---

Of Counsel:
    James J. Panzini, Esq.

On the Brief:
    James J. Panzini, Esq.
    Pooja Bhutani, Esq.

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF MATERIAL FACTS ...................................................................2

LEGAL ARGUMENT................................................................................................2

     POINT I
     SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE
     PLAINTIFF'S CLAIMS ARE DEFICIENT AS A MATTER OF LAW .........................2

     POINT II
     PLAINTIFF'S DISPARATE TREATMENT GENDER DISCRIMINATION
     CLAIM MUST BE DISMISSED AS A MATTER OF LAW............................................3

          A. Plaintiff Cannot Meet Her Burden to Establish a *Prima Facie* Case
             of Gender Discrimination ...................................................................................4

            1. Plaintiff Cannot Show that She Was Treated Less Favorably
               Than Similarly Situated Individuals .............................................................5

            2. Plaintiff Cannot Meet Her Burden to Establish Any Inference
               of Discrimination Based Only on Vague and Speculative Allegations .......7

          B. Pacira Articulated a Legitimate, Non-Discriminatory Reason For its
             Decision to Terminate Plaintiff's Employment .................................................9

          C. There Is No Evidence That Pacira Articulated Reasons for
             Terminating Plaintiff's Employment are Pretext for Gender
             Discrimination..................................................................................................10

     POINT III
     PLAINTIFF'S CLAIM FOR A HOSTILE WORK ENVIRONMENT IN
     VIOLATION OF THE NJLAD MUST BE DISMISSED AS A MATTER
     OF LAW ......................................................................................................................12

          A. Plaintiff Cannot Establish a *Prima Facie* case for her Hostile
             Work Environment Claim, and Defendant is Entitled to a
             "Safe Haven" Because Plaintiff Never Reported Any Instance of
             Sexual Harassment to Pacira..........................................................................13

i

1.  Plaintiff Cannot Meet her Burden to Establish a *Prima Facie* Case
    for her Hostile Work Environment Claim .................................................15

2.  Even Assuming Plaintiff Established the *Prima Facie* Case for her
    Hostile Work Environment Claim, this Claim is Barred Because
    the Company Has Established Policies to Prevent Harassment
    which Plaintiff Admittedly Never Availed Herself To .............................16

POINT IV
PLAINTIFF'S LAD RETALIATION CLAIM MUST BE DISMISSED AS A
MATTER OF LAW .................................................................................................19

A.  Plaintiff Cannot Meet Her Burden to Establish a *Prima Facie* Case
    of Retaliation under the LAD .........................................................................20

1.  There is No Causal Connection Between Plaintiff's Protected Activity
    and Pacira's Decision to Terminate Plaintiff's Employment for Engaging
    in Sexual Misconduct at the NSM ...........................................................20

B.  Defendant Has Articulated a Legitimate, Non-Retaliatory Reason for
    its Decision to Terminate Plaintiff's Employment ..........................................23

C.  Plaintiff Cannot Establish that Defendant's Articulated Reason for its
    Decision to Terminate Plaintiff's Employment was a Pretext for Retaliation.24

POINT V
PLAINTIFF'S CEPA RETALIATION CLAIM MUST BE DISMISSED AS A
MATTER OF LAW .................................................................................................25

A.  Plaintiff Cannot Meet Her Burden to Establish a *Prima Facie* Case
    of Retaliation under CEPA .............................................................................26

1.  Plaintiff Cannot Identify A Law, Rule, Regulation, or Clear Mandate
    of Public Policy Which She Reasonably Believed Pacira Violated .........27

2.  Plaintiff Cannot Establish a Causal Connection Between Her
    Separation and Any Alleged Whistle-Blowing Activity ..........................29

POINT VI
TO THE EXTENT PLAINTIFF HAS ASSERTED CLAIMS FOR AIDING
AND ABETTING AGAINST KAHR, MURPHY, AND REISER UNDER THE
NJLAD, THIS CLAIM MUST BE DISMISSED AS A MATTER OF LAW .................30

POINT VII
TO THE EXTENT PLAINTIFF HAS ASSERTED CLAIMS FOR
INDIVIDUAL LIABILITY AGAINST KAHR, MURPHY, AND REISER
UNDER CEPA, THIS CLAIM MUST BE DISMISSED AS A MATTER OFLAW.......32

POINT VIII
PLAINTIFF CANNOT MAINTAIN A CLAIM FOR PUNITIVE DAMAGES AS
A MATTER OF LAW ........................................................................................33

CONCLUSION..................................................................................................35

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

Abbamont v. Piscataway Bd. of Educ.,
   138 N.J. 405 (N.J. 1994) ........................................................................26

Acumed LLC v. Advanced Surgical Servs., Inc.,
   561 F.3d 199 (3d Cir. 2009)....................................................................8

Aguas v. State,
   220 N.J. 494 (2015) ................................................................................5

Ahmed v. Interstat Mgmt. Co.,
   11-683, 2012 U.S. Dist. LEXIS 103512 (D.N.J. July 25, 2012) ...........18

Ali v. Woodbridge Twp. Sch. Dist.,
   2019 U.S. Dist. LEXIS 72877 (D.N.J. April 30, 2019) ........................18

Anderson v. Exxon Co., U.S.A.,
   89 N.J. 483 (1982)................................................................................13

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986)...........................................................................2, 3

Attanasio v. Plainfield Country Club,
   2009 N.J. Super. Unpub. LEXIS 1592..................................................2

Barroso v. Lidestri Foods, Inc.,
   937 F. Supp. 2d 620 (D.N.J. 2013) ...........................................16, 17, 18

Bergen Commer. Bank v. Sisler,
   157 N.J. 188 (1999) ...............................................................................9

Blakely v. Continental Airlines, Inc.,
   164 N.J. 38 (2000) ...............................................................................15

Catalane v. Gilian Instrument Corp.,
   271 N.J. Super. 476 (App. Div.), certif. denied 136 N.J. 298 (1994)......34

Cavuoti v. N.J. Transit Corp.,
   161 N.J. 107 (1999) .............................................................................15

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986)...........................................................................2, 3

Chambers v. Heidelberg USA, Inc.,
2006 U.S. Dist. LEXIS 32334 (D.N.J. 2006) ...........................................................8

Ciecka v. Cooper Health Sys.,
Civ. Act. No. 15-4075, 2017 U.S. Dist. LEXIS 20539 (D.N.J Feb. 14, 2017)..................21,30

Cohen v. Univ. of Med. & Dentistry of N.J.,
2013 N.J. Super. Unpub. ...........................................................5

Cokus v. Bristol Myers Squibb Co.,
362 N.J. Super. 366 (Law Div. 2002) ...........................................................35

David v. Rutgers Cas. Ins. Co,
964 F. Supp. 560 (D.N.J. 1997) ...........................................................10

Delbridge v. Acme Food Corp.,
2010 U.S. Dist. LEXIS 2789 (D.N.J. 2010) ...........................................................0

DiGiovanni v. Pessel,
55 N.J. 188 (1970) ...........................................................34

Donofry v. Autotote Sys., Inc.,
350 N.J. Super. 276 (App. Div. 2001) ...........................................................30

Dzwonar v. McDevitt,
177 N.J. 451 (2003) ...........................................................27, 28, 29

El-Sioufi v. St. Peter's Univ. Hosp.,
382 N.J. Super. 145 (App. Div. 2005) ...........................................................4, 10

Erickson v. Marsh & McLennan Co.,
117 N.J. 39 (1990) ...........................................................14, 17

Escanio v. United Parcel Serv.,
538 F. App'x 195 (3d Cir. 2013) ...........................................................22

Espinosa v. Continental Airlines,
80 F. Supp. 29 297, 306 (D.N.J. 2000) ...........................................................33

Failla v. City of Passaic,
146 F.3d 149 (3d Cir. 1998)...........................................................31

Farrell v. Planters Lifesavers Co.,
206 F.3d 271 (3d Cir. 2000)...........................................................21

Fuentes v. Perskie,
32 F.3d 759 (3d Cir.1994)...........................................................10, 24

Gaines v. Bellino,
    173 N.J. 301 (N.J. 2002) ...................................................................................15

Gethers v. PNC Bank,
    813 Fed. Appx. 746 (3d Cir. 2020) ....................................................................5

Grigoletti v. Ortho Pharm. Corp.,
    118 N.J. 89 (1990) ............................................................................................20

Hargrave v. Cty. of Atlantic,
    262 F. Supp. 2d 393 (D.N.J. 2003) ....................................................................8

Harris v. Forklift Sys.,
    510 U.S. 17 (1993) ............................................................................................14

Heitzman v. Monmouth County,
    728 A.2d 298 (App. Div. 1999) ...................................................................14, 17

Herman v. Coastal Corp.,
    348 N.J. Super. 1 (App. Div. 2002) ..................................................................31

Hoist v. N.J.,
    2015 U.S. Dist. LEXIS 106527 (D.N.J. Aug. 13, 2015) ...................................8

Houston v. Dialysis Clinic, Inc.,
    No. 13-4461, 2015 U.S. Dist. LEXIS 83151 (D.N.J. June 26, 2015) ..............22

Hurley v. Atlantic City Police Dep't.,
    174 F.3d 95 (3d Cir. 1999) ...............................................................................31

Jones v. Sch. Dis. of Phila.,
    198 F.3d 403 (3d Cir. 1999) ...............................................................................4

Kearney Generating Sys. Div. of Pub. Serv. v. Roper,
    184 N.J. Super. 253 (App. Div.), certif. denied, 91 N.J. 254 (1982) .................9

Kennedy v. Chubb Group of Ins. Cos.,
    60 F.Supp.2d 384 (D.N.J. 1999) ......................................................................31

Kimber-Anderson v. City of Newark,
    502 Fed. Appx. 210 (3d Cir. 2012) ....................................................................4

Klein v. Univ. of Med. & Dentistry,
    377 N.J. Super. 28 (App. Div. 2005), certif. denied, 185 N.J. 39 (2005) .........27

Kolb v. Burns,
    320 N.J. Super. 467 (App. Div. 1999) ..............................................................27

iv

Krouse v. American Sterilizer Co.,
    126 F.3d 494 (3d Cir. 1997)..................................................................21

Lehmann v. Toys 'R' Us, Inc.,
    132 N.J. 587 (1993) ...........................................................................14

Lynch v. New Deal Delivery Service,
    974 F. Supp. 441 (D.N.J. 1997) ...........................................................14

Maimone v. Atl. City,
    188 N.J. 221 (2006) ...........................................................................33

Maiorino v. Schering-Plough Corp.,
    302 N.J. Super. 323 (App. Div. 1997) ..........................................10, 34

Makky v. Chertoff,
    541 F.3d 205 (3d Cir. 2008)..................................................................5

Malloy v. Intercall, Inc.,
    2010 U.S. Dist. LEXIS 136808, 2010 WL 5441658 (D.N.J. Dec. 28, 2010).........................22

Mandel v. UBS/PaineWebber Inc.,
    373 N.J. Super. 55 (App. Div. 2004) ...............................................5, 14

Mara v. Phila. Housing Auth.,
    497 F.3d 286 (3d Cir. 2007)................................................................20

Marzano v. Computer Sci. Corp. Inc.,
    91 F.3d 497 (3d Cir. 1996)....................................................................5

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986).............................................................................2

Maw v. Advanced Clinical Communications, Inc.,
    359 N.J. Super. 420 (App. Div. 2003) ..................................................28

Mehlman v. Mobil Oil Corp.,
    153 N.J. 163 (1998) ...........................................................................27

Merchants Exp. Money Order Co. v. Sun Nat. Bank,
    374 N.J. Super. 563 (App. Div. 2005) ....................................................9

Meritor Sav. Bank, FSB v. Vinson,
    477 U.S. 57 (1986)...............................................................................4

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973)...........................................................................13, 27

v

Mogull v. CB Commercial Real Estate Group, Inc.,
    162 N.J. 449 (2000) ........................................................................................23

Moore v. City of Philadelphia,
    461 F.3d 331 (3d Cir. 2006)........................................................................20, 29

Morro v. DGMB Casino, LLC,
    112 F. Supp. 3d 260 (D.N.J. 2015) ..................................................................24

Nappe v. Anschelewitz, Barr, Ansell & Bonello,
    97 N.J. 37 (1984) .............................................................................................34

Newsome v. Admin. Office of Courts,
    103 F. Supp. 2d 807 (D.N.J. 2000) ..................................................................31

Palladino v. VNA of Southern New Jersey, Inc.,
    68 F. Supp. 2d 455 (D.N.J. 1999) ....................................................................33

Parker v. Verizon Pa., Inc.,
    309 F. App'x. 551 (3d Cir. 2009) .....................................................................11

Parks v. Pep Boys,
    282 N.J. Super. 1 (App. Div. 1995) .............................................................41, 42

Pizarro v. Int'l Paper Co.,
    2020 U.S. Dist. LEXIS 36760 (D.N.J. Mar. 3, 2020)......................................24

Reynolds v. Palnut Co.,
    330 N.J. Super. 162 (App. Div. 2000) .............................................................10

Samowsky v. Air Brooke Limousine, Inc.,
    510 F.3d 398 (3d Cir. 2007).............................................................................27

Schechter v. N.J. Dep't of Law & Pub. Safety, Div. of Gaming Enforcement,
    327 N.J. Super. 428 (App. Div. 2000) .............................................................27

Scott v. Schindler Elevator Corp.,
    2019 U.S. Dist. LEXIS 74774 (D.N.J. 2019) ..................................................31

Shinn v. FedEx Freight, Inc.,
    2016 U.S. Dist. LEXIS 169037 (D.N.J., Dec. 6, 2016)...............................22, 24

Solis v. Sher,
    2011 N.J. Super. Unpub. LEXIS 2939..............................................................11

St. Mary's Honor Ctr. v. Hicks,
    509 U.S. 502 (1993)......................................................................................24, 27

Swider v. Ha-Lo Indus., Inc.,
    134 F. Supp. 2d 607 (D.N.J. 2001) ...................................................................11

Tarr v. Ciasulli,
    181 N.J. 70 (2004) .............................................................................................31

Thomas v. Town of Hammonton,
    351 F.3d 108 (3d Cir. 2003)..............................................................................22

Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs,
    982 F.2d 884 (3d Cir. 1992)................................................................................3

Viscik v. Fowler Equip. Co.,
    173 N.J. 1 (2002) .......................................................................................10, 20

Zive v. Stanley Roberts, Inc.
    182 N.J. 436 (N.J. 2005) ..................................................................................10

## Statutes

Affordable Care Act Section 6002........................................................................25

New Jersey Law Against Discrimination ...................................................... passim

New Jersey Conscientious Employee Protection Act ..................................... passim

Dodd Frank Act...............................................................................................25, 28

Sunshine Act ..............................................................................................25, 28, 29

## Other Authorities

Fed. R. Civ. P. 56(c) ......................................................................................2, 35

## PRELIMINARY STATEMENT

Defendants Pacira Pharmaceuticals, Inc. ("Pacira" or "the Company"), Richard Kahr, Peter Murphy, and Glenn Reiser (collectively as "Defendants"), respectfully submit this Memorandum of Law in support of its summary judgment motion to dismiss Plaintiff Reshma Abell's four causes of action alleging claims of: (1) gender/sex discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"); (2) a hostile work environment on the basis of her sex in violation of the NJLAD (3) retaliation in violation of the NJLAD, and; (4) the New Jersey Conscientious Employee Protection Act ("CEPA"). There are no genuine issues of material facts, and summary judgment should be granted to Defendants.

This case is extremely straightforward – Plaintiff's termination from Pacira is due to Plaintiff's own severe misconduct. Specifically, while Human Resources ("HR") had been conducting an investigation into a verbal altercation between Plaintiff and colleague during the Company's annual National Sales Meeting ("NSM"), **three** employees, including Plaintiff's direct supervisor (a female), separately complained about Plaintiff showing them sexually graphic images from the Kama Sutra which depicted people having sex in different positions. (See Defendants' Statement of Undisputed Material Facts ("SOF") filed herewith, ¶¶ 63, 68, 76-82). Notably, Plaintiff has, at all times, admitted both to viewing the sexually explicit content at a work function and that a couple colleagues at the NSM saw the sexual images of the Kama Sutra on her phone. (SOF, ¶ 82, 84). She likewise admits that this conduct was not appropriate for the workplace, and her direct supervisor was visibly uncomfortable by the sexual images. (SOF, ¶ 84). These facts, not Plaintiff's gender/sex or any alleged protected activity, led directly to Plaintiff's termination. Plaintiff has *zero* evidence to support her allegations in this case or to demonstrate that the legitimate, non-discriminatory and non-retaliatory reasons for her termination are

pretextual.  Additionally, Plaintiff does not present any basis for her claims against the individual defendants or damages, nonetheless punitive damages, because her highly inappropriate actions are not in dispute.

Accordingly, Plaintiff's claims should be dismissed in their entirety as a matter of law.

## STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 56.1, the undisputed material facts relevant to Defendants' motion for summary judgment are set forth in separately numbered paragraphs in its Statement of Material Facts ("SOF"). In the interest of brevity, these facts will not be repeated, but will be referred to with citations in the legal argument portion of this brief.

## LEGAL ARGUMENT

## POINT I

## SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFF'S CLAIMS ARE DEFICIENT AS A MATTER OF LAW.

Summary judgment is appropriate when no genuine issue of material fact exists, entitling the movant to judgment as a matter of law. FED. R. CIV. P. 56(c).  In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), the United States Supreme Court enunciated the standard for analyzing a summary judgment motion. Once the moving party has established the absence of a fact issue, the non-moving party must come forward with specific facts, taking the record as whole, showing that there is a genuine issue for trial. Matsushita, 475 U.S. at 586.

The Court further explained that summary judgment is required when the evidence proffered by the nonmoving party "is merely colorable or is not significantly probative." Anderson, 477 U.S. at 249-50. Instead, "there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252. Thus, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Since Plaintiff bears the burden of proving the existence of a genuine issue of material fact, she cannot defeat summary judgment simply by relying on the allegations in the pleadings and, more importantly, her subjective interpretation of the facts. See Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) ("A non-moving party may not 'rest upon mere allegations, general denials or…vague statements.…'") (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).

**POINT II**

**PLAINTIFF'S DISPARATE TREATMENT GENDER DISCRIMINATION CLAIM MUST BE DISMISSED AS A MATTER OF LAW.**

In Count I of Plaintiff's Complaint for gender discrimination, Plaintiff generally alleges that Defendants terminated her on the basis of her gender. (SOF, ¶ 2). Though Plaintiff does not specify which theory of gender discrimination Plaintiff asserts claims under in Count I, (and her claims for a hostile work environment based on gender are asserted under a separate count which are separately addressed), it appears Plaintiff is asserting a claim for disparate treatment gender discrimination based on her belief that: (1) the male employee with whom she had a verbal disagreement with at the NSM and for which HR conducted an investigation, was not subjected to an adverse employment action, while Pacira terminated her, and (2); Pacira terminated her for behavior that would not have resulted in a termination if a male engaged in the same conduct (SOF,

3

¶¶ 31-32).  To that end, Plaintiff's claims are completely unsupported because the male who HR investigated was terminated. (SOF, ¶¶ 71, 86).  Further, Plaintiff's claims that a male would not have been terminated for the same offense is not supported by *any* evidence.  Indeed, this contention is entirely speculative and based on Plaintiff's mere belief that this would have been in the case.  Thus, Plaintiff will not be able to establish the fourth element of the *prima facie* case for disparate treatment that Pacira's decision to terminate her was in any way based on her gender, or that male employees who engaged in the same or similar conduct were treated more favorably.

Even assuming *arguendo* Plaintiff can establish the *prima facie* case for her disparate treatment claim, she cannot prove that the Company's articulated, non-discriminatory business decision to terminate her -- Plaintiff's viewing of sexually explicit material during a national meeting -- is pretextual.

### A.     Plaintiff Cannot Meet Her Burden to Establish a *Prima Facie* Case of Gender Discrimination.

To establish a *prima facie* claim for discrimination under a disparate treatment theory, Plaintiff must demonstrate that: (1) she is in a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination. Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008); Jones v. Sch. Dis. of Phila., 198 F.3d 403, 413 (3d Cir. 1999); see also Kimber-Anderson v. City of Newark, 502 Fed. Appx. 210, 212 (3d Cir. 2012).  Discrimination may be inferred when a similarly situated employee who is not within the protected class was treated more favorably, Jones, 198 F.3d at 508, or that plaintiff suffered an adverse employment action, but others not within that protected class did not suffer a similar adverse employment action. Id.  at 212 (citing El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145 (App. Div. 2005).

To establish the fourth element of her *prima facie* case, Plaintiff generally must show she was treated less favorably than others *because of* her protected class. See Mandel v. UBS/PaineWebber Inc., 373 N.J. Super. 55, 74 (App. Div. 2004) (citing EEOC v. Metal Serv. Co., 892 F.2d 341, 347 (3d Cir. 1990)), and the facts reflect that discrimination was the cause for the adverse employment action, Marzano v. Computer Sci. Corp. Inc., 91 F.3d 497, 508 (3d Cir. 1996). Alternatively, evidence of "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus" also may be sufficient to establish an inference of discrimination. Cohen v. Univ. of Med. & Dentistry of N.J., 2013 N.J. Super. Unpub. LEXIS 3054, *12-13 (App. Div. Dec. 20, 2013) (quoting Cherkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996). None of these circumstances are present here.

1. **Plaintiff Cannot Show that She Was Treated Less Favorably Than Similarly Situated Individuals.**

Plaintiff is unable to establish any inference of discrimination because Plaintiff cannot show that others outside her protected class were treated more favorably than her. See Gethers v. PNC Bank, 813 Fed. Appx. 746, 749-750 (3d Cir. 2020) (determining plaintiff "failed to show her termination raised an inference of discrimination because she could not establish that [defendant] treated other Code of Ethics violators outside her protected class more favorably than her").

Here, Plaintiff expressly alleges that Pacira treated Rock more favorably than her during the HR investigation conducted in response to the reports that she and Rock had a verbal disagreement at Topgolf. (SOF, ¶¶ 31-32). Specifically, Plaintiff alleges that HR expressly informed her that the investigation into their disagreement at Topgolf was "inconclusive," but HR took zero disciplinary action against Rock, and it conducted a separate "bogus" investigation which was "vague" and "conclusory" into Plaintiff which led to her termination. (SOF, ¶¶ 31,

83). Thus, Plaintiff essentially states, in a conclusory manner without *any* evidence to support this contention, that the results of the HR investigation into her and Rock led to her termination but did not result in any disciplinary action for Rock. (Id). **This allegation does not represent the undisputed record evidence, and the claim that Rock suffered no adverse action is entirely false.** Indeed, unbeknownst to Plaintiff as personnel decisions are confidential, Pacira also terminated Rock following the HR investigation into the Topgolf incident.[1] (SOF, ¶ 86). If anything, the record evidence suggests the opposite of any disparate treatment against female employees as Pacira terminated Rock for a lesser offense (i.e., conduct unbefitting of a manager) as compared to Plaintiff's violation. (SOF, ¶ 76-82, 86-87). Neither Rock nor Plaintiff had a prior disciplinary history. (SOF, ¶ 86).

Additionally, it is also entirely absent from the record that Rich Kahr, the individual involved in the decision to terminate Plaintiff, harbored any type of discriminatory animus towards Plaintiff. Indeed, even as of the date of this filing, Kahr has never met Plaintiff or otherwise had any personal interactions with her during her employment with Pacira. (SOF, ¶ 92). There is no evidence that he held some discriminatory motive against a person he had never met or known in any significant capacity. Kahr has at all times maintained, and indeed all notes reflect, that the decision to terminate Plaintiff was precipitated by her own inappropriate conduct at the NSM.

---

[1] Pacira terminated Rock based on him abruptly leaving the NSM without advising his supervisors or team, effectively resigning, and then later returning to the NSM. (SOF, ¶¶ 67, 74, 86). On March 13, 2018, Pacira terminated Rock for this conduct as his behavior was unbefitting of a leader. (SOF, ¶ 86). Pacira also terminated Plaintiff on March 14, 2018 based on the findings of HR's investigation and her admission of viewing sexually inappropriate material at the NSM. (SOF, ¶¶ 76-82, 87-89).

Thus, Pacira did not terminate either Plaintiff or Rock for the verbal disagreement they had with one another but rather the ancillary issues that HR learned of during the course of the investigation. (SOF, ¶¶ 85-89).

(SOF, ¶¶ 76-82, 87-89).  Nor is there any evidence that "gender" played a role in the reason for Plaintiff's termination as it was her own inappropriate conduct which led to that outcome.

### 2.   Plaintiff Cannot Meet Her Burden to Establish Any Inference of Discrimination Based Only on Vague and Speculative Allegations.

In an effort to establish some inference of discrimination on the basis of her gender, Plaintiff generally asserts, without factual support, that HR conducted a "bogus" investigation and summarily terminated her based on "vague" and "conclusory" allegations. (SOF, ¶¶ 31, 83).  In Plaintiff's deposition, she elaborated on this claim stating that she felt the allegations about her viewing sexual images were vague because she asked Kahr to give her details about who complained about her viewing the Kama Sutra at the NSM, and to describe how the employees explained they were "offended," but he did not provide her answers to these questions, therefore, Kahr conducted a "vague" investigation. (Id. at ¶ 83).  Plaintiff also offered to apologize to any employee whom she offended and asked Kahr whether he wanted to view the images of the Kama Sutra. (Id).  However, Kahr declined her the opportunity to apologize and look at the Kama Sutra images, therefore, Kahr's investigation was conclusory. (Id.).

While Plaintiff may feel this is unfair and disagree, Plaintiff does not point to *any* facts which suggest that these actions were gender-based or that HR conducted its investigations differently for any male employee.  Plaintiff's mere thoughts or opinions are not sufficient to defeat this motion, and Plaintiff's assertions are not supported by any facts in the record.  Rather, the record evidence supports that HR terminated Plaintiff and Rock for unrelated offenses that Pacira learned during the HR investigation into their interactions at Topgolf but were not related to the disagreement itself. (SOF, ¶¶ 85-89).  At the time of her Complaint filing, Plaintiff was not aware Pacira terminated Rock and simply assumed that Pacira had treated her as a female disparately as compared to Rock, a male.  This belief is completely inaccurate, and Rock's termination is a

proven, unconverted fact in this litigation.  (SOF, ¶ 86).  Further, there are detailed notes documenting the complaints received about Plaintiff's conduct at the NSM, and Plaintiff admitted that she viewed sexual images at the NSM. (SOF, ¶¶ 76-82, 87-89).  Thus, HR based its decision on the information available to it at the time which was that three employees complained of Plaintiff engaging in sexually offensive conduct. (Id).  Plaintiff's spurious and speculative claims to the contrary do not influence the fact that Kahr, the person charged with enforcing Pacira's workplace policies, conducted an investigation and in his business judgment, determined that her conduct violated its policies and values and warranted immediate termination.

It is well-settled that Plaintiff's unsupported and speculative assertions of discriminatory conduct are insufficient to satisfy her initial burden of establishing that her termination occurred under "circumstances that give rise to an inference of discrimination."  See Hargrave v. Cty. of Atlantic, 262 F. Supp. 2d 393, 419 (D.N.J. 2003) (noting conclusory allegations are insufficient to support an inference of discrimination); Chambers v. Heidelberg USA, Inc., 2006 U.S. Dist. LEXIS 32334, *14 (D.N.J. 2006) ("Speculations, generalities, and gut feelings, however genuine, do not allow for an inference of discrimination to be drawn when they are not supported by specific facts.") (citations omitted); Hoist v. N.J., 2015 U.S. Dist. LEXIS 106527, *56 (D.N.J. Aug. 13, 2015) ("[Plaintiff]'s 'subjective belief that race played a role in these employment decisions . . . is not sufficient to establish an inference of discrimination.'") (citation omitted).

There is simply nothing in the record which remotely connects the decision to terminate Plaintiff's employment with her gender, and Plaintiff's conclusory allegations are clearly insufficient to support any inference of disability discrimination.  Speculation is simply insufficient for Plaintiff to establish her burden. See Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d

199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat a motion for summary judgment."); see also Merchants Exp. Money Order Co. v. Sun Nat. Bank, 374 N.J. Super. 563 (App. Div. 2005) ("[S]peculation does not meet the evidential requirements which would allow [a plaintiff] to defeat a summary judgment.").

**B.** **Pacira Articulated a Legitimate, Non-Discriminatory Reason For its Decision to Terminate Plaintiff's Employment.**

Assuming *arguendo* Plaintiff establishes a *prima facie* case of discrimination, Pacira need only articulate – not prove – the legitimate, non-discriminatory reasons for the employment action. See Kearney Generating Sys. Div. of Pub. Serv. v. Roper, 184 N.J. Super. 253, 259 (App. Div.); Bergen Commer. Bank v. Sisler, 157 N.J. 188, 211 (1999) ("Although the burden of production shifts throughout the process, the employee at all phases retains the burden of proof that the adverse employment action was caused by purposeful or intentional discrimination."). Where the employer proffers a legitimate, non-discriminatory reason, "the presumption of discrimination disappears." Id.

Here, Pacira has set forth a legitimate, non-discriminatory reason for terminating Plaintiff's employment; namely, three employees complained that Plaintiff viewed sexual images from the Kama Sutra at the NSM. (SOF, ¶¶ 76-82). Two of the reporting employees specifically complained that Plaintiff viewing these images made them feel uncomfortable. (SOF, ¶ 78-79). Further, Plaintiff admitted that the third employee, her direct supervisor, physically appeared uncomfortable by the images. (SOF, ¶ 84). Additionally, and perhaps most importantly, Plaintiff admitted she engaged in this conduct, and it was inappropriate. (Id.).

Therefore, Pacira has satisfied its burden of articulating a non-discriminatory reason for terminating Plaintiff's employment.

**C.      There Is No Evidence That Pacira Articulated Reasons for Terminating Plaintiff's Employment are Pretext for Gender Discrimination.**

Because Pacira has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment, Plaintiff now bears the ultimate burden of presenting "sufficient evidence to support an inference that the employer did not act for its stated non-discriminatory reasons." Reynolds v. Palnut Co., 330 N.J. Super. 162, 170 (App. Div. 2000) (citing Kelly v. Bally's Grand, Inc., 285 N.J. Super. 422, 432 (App. Div. 1995)). In Zive v. Stanley Roberts, Inc., New Jersey's Supreme Court ruled that the plaintiff must "demonstrate that the employer was motivated by discriminatory intent" to prove pretext. 182 N.J. 436, 449 (N.J. 2005) (citing Viscik v. Fowler Equip. Co., 173 N.J. 1, 14 (2002)). The Court added:

> As stated in Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.1994), if the employer proffers a non-discriminatory reason, plaintiff does not qualify for a jury trial unless he or she can "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."

Id. at 455-56; accord El-Sioufi, 382 N.J. Super. at 169; Maiorino v. Schering-Plough Corp., 302 N.J. Super. 323, 347 (App. Div. 1997).

Here, Plaintiff is unable to offer facts, material or otherwise, to refute Pacira's legitimate, non-discriminatory business reasons for her termination. "[P]retext is not shown by evidence that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Delbridge v. Acme Food Corp., 2010 U.S. Dist. LEXIS 2789, at *14 (D.N.J. 2010); see also David v. Rutgers Cas. Ins. Co, 964 F. Supp. 560, 573 (D.N.J. 1997) (employee cannot seek protection "from an employer's decisions about hiring or firing that are merely erroneous or that fall within the exercise of business judgment free of illegal bias").

10

Importantly, to discredit Pacira's proffered reasons, Plaintiff "cannot simply show that [Pacira's] decision was wrong or mistaken" but must demonstrate such weaknesses, implausibilities, inconsistencies or contradictions in Pacira's proffered legitimate reasons. Parker v. Verizon Pa., Inc., 309 F. App'x. 551, 556-57 (3d Cir. 2009) (citing cases).

Indeed, entirely absent from the record is any evidence that Plaintiff's termination was motivated by something other than Plaintiff's own inappropriate conduct.  There is no inconsistency or contradiction in Pacira's stated reasons for the termination, nor is there any weakness as it would have been a liability for Pacira not to take action in response to three employees' complaints about an employee's sexual inappropriateness at a national meeting. While Plaintiff may disagree with Pacira's decision to terminate her, she admits to viewing images of sexual positions at the NSM, and she cannot dispute that three employees complained about this. (SOF, ¶¶ 76-82, 84).  Plaintiff also admitted that she understood her conduct could be inappropriate in a workplace setting, and her direct supervisor visibly appeared to be uncomfortable by Plaintiff's actions. (SOF, ¶ 84).  Plaintiff simply feels she should not have been terminated for this offense, but this is insufficient as a matter of law as it is well-settled that Plaintiff's disagreement with Pacira's legitimate business reasons to terminate her are not sufficient to defeat a properly supported motion for summary judgment.  See, e.g., Swider v. Ha-Lo Indus., Inc., 134 F. Supp. 2d 607, 628 (D.N.J. 2001) ("[A] plaintiff's disagreement with a defendant's evaluation of his performance, or the plaintiff's own perception of his performance, does not demonstrate pretext under the McDonnell Douglas framework."); Solis v. Sher, 2011 N.J. Super. Unpub. LEXIS 2939, *8 (App. Div. Dec. 5, 2011) ("A plaintiff is required to do more than merely "challenge" a defendant's articulated reason for the discharge; she must satisfy her burden of presenting competent evidence that would permit a rational fact-finder to conclude the proffered reason for

discharge was false."); <u>Attanasio v. Plainfield Country Club</u>, 2009 N.J. Super. Unpub. LEXIS 1592, *17 (App. Div. June 18, 2009) ("It is important to note that the employee's personal disagreement with the employer's decision to terminate plaintiff is insufficient to prove pretext, as is the employee's subjective disagreement (or conclusory statement) in raising an issue regarding the employer's credibility.").   In the case at bar, Pacira's decision was not only free of illegal bias, but it was a wise and prudent decision based on the uncontroverted evidence.

Plaintiff's failure to establish that Pacira's legitimate, non-discriminatory reason for her termination was a pretext for unlawful discrimination renders her disparate treatment gender discrimination claim subject to dismissal as a matter of law.

### POINT III

### <u>PLAINTIFF'S CLAIM FOR A HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE NJLAD MUST BE DISMISSED AS A MATTER OF LAW</u>

In Count II of Plaintiff's Complaint, Plaintiff alleges in a conclusory manner that Pacira harbored a hostile work environment. (SOF, ¶¶ 2, 33).   In support of this claim, she self-servingly alleges that it was "business as usual" for unidentified persons to make comments that she was "successful" because she was "sleeping with her clients," or "blowing someone," (SOF, ¶ 33), and she was "regularly the recipient of sexually charged comments, jokes, and innuendo" by unidentified persons (<u>Id</u>.).   Plaintiff's Complaint allegations do not make clear who made such comments or when. (<u>Id</u>).   Yet, by the close of discovery three years later, Plaintiff still fails to provide *any* evidence to support her claims of being subjected to harassing conduct on any, nonetheless a "regular" basis or provide clear details of her claims.

In Plaintiff's deposition, she testified about two alleged instances of "sexual harassment" during her four-year employment by co-workers: (1) a colleague Brandon touched

Plaintiff's back and commented on her appearance at the 2016 NSM, (SOF, ¶ 37) and; (2) a colleague Justin hugged Plaintiff with his hands "a little too low" at the 2016 NSM, and he made a "joke" that she was only performing well "because [she was] probably sleeping with [her] clients or blowing someone" at an unspecified NSM. (SOF, ¶ 39).

It is undisputed that Plaintiff never reported these interactions to HR. (SOF, ¶¶ 38, 40). Additionally, Plaintiff clearly stated that she does not assert any claims for damages concerning any "touching," as she testified: **"I am not seeking compensation for people touching me or not reporting them. . . it was my choice to stay quiet."** (SOF, ¶ 45).

Thus, Plaintiff's claims of a "hostile work environment" are fundamentally flawed because: (1) she fails to provide sufficient evidence to support her claims; (2) Plaintiff stated she was not pursuing any claims for "touching" in this litigation because she did not report them; (3) the alleged conduct, even if true, is not "severe or pervasive," and it could not have altered the terms and conditions of her employment.

A.   **Plaintiff Cannot Establish a _Prima Facie_ case for her Hostile Work Environment Claim, and Defendant is Entitled to a "Safe Haven" Because Plaintiff Never Reported Any Instance of Sexual Harassment to Pacira**

Plaintiff cannot set forth the _prima facie_ elements of her hostile work environment claim, much less prove pretext for any harassment. Additionally, due to the undisputed fact that Plaintiff did not ever complain of sexual harassment to Pacira, her hostile work environment claim pertaining to "co-worker" harassment, is barred as a matter of law.

Because Plaintiff has no direct evidence of a hostile work environment, her LAD claims are analyzed under the McDonnell Douglas burden-shifting framework set forth above. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Anderson v. Exxon Co., U.S.A., 89 N.J. 483, 492-93 (1982). Plaintiff must show the complained-of conduct: (1) would not have

occurred but for her gender; and it was (2) severe or pervasive enough to make a (3) *reasonable* woman believe that (4) the conditions of the employment are altered and the working environment is hostile or abusive. Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-604 (1993).  Though the second, third, and fourth prongs are listed separately, they are interdependent. Id. at 604.

In determining whether a work environment is hostile, courts apply an objective standard and are instructed to look "at all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Lynch v. New Deal Delivery Service, 974 F. Supp. 441, 451 (D.N.J. 1997); see also Harris v. Forklift Sys., 510 U.S. 17, 23 (1993).  Not all workplace conduct that may be described as "harassment" affects a term, condition, or privilege of employment.  See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986).  Courts have held the LAD is not intended to be a "general civility code for conduct in the workplace." Mandel, 373 N.J. Super. at 73.

Additionally, employers are only liable for sexual harassment if the employer knew or should have known about the conduct and failed to take prompt and appropriate corrective action. See Erickson v. Marsh & McLennan Co., 117 N.J. 39, 557-59 (1990).  Additionally, an employer is not generally liable for harassing conduct by coworkers unless "management-level employees knew, or in the exercise of reasonable care should have known, about the campaign of harassment." Heitzman v. Monmouth County, 728 A.2d 298, 301 (App. Div. 1999) (declining to hold an employer vicariously liable for a hostile work environment based on plaintiff's claim that a co-worker made an anti-Semitic comment which he admittedly never reported to his supervisor).

It is well-settled that even in cases involving supervisor harassment, an employer that promulgates and supports an active anti-harassment policy is entitled to a safe haven from

liability for harassment. <u>Gaines v. Bellino</u>, 173 N.J. 301, 303 (N.J. 2002) (stating that "the establishment of an effective . . . policy and complaint mechanism evidences an employer's due care and may provide [the employer with] affirmative protection from vicarious liability" for a hostile work environment claim); <u>Blakely v. Continental Airlines, Inc.</u>, 164 N.J. 38, 62-63 (2000) (recognizing that "[e]ffective remedial steps reflecting a lack of tolerance for harassment will be relevant to an employer's affirmative defense that its actions absolve it from all liability." "If the plaintiff unreasonably failed to avail herself of the employer's preventative or remedial apparatus, she should not recover damages that could have been avoided if she had done so." <u>Aguas v. State</u>, 220 N.J. 494 (2015) (internal quotation marks omitted) (alteration in original); <u>see also</u> <u>Cavuoti v. N.J. Transit Corp.</u>, 161 N.J. 107, 121 (1999) (stating that a company will be less apt to be liable for hostile work environment claim if the employer promulgates "periodic publication to workers of its antiharassment policy; any effective and practical grievance process; and training sessions for workers, supervisors, and managers" about harassment prevention).

1. **<u>Plaintiff Cannot Meet her Burden to Establish a <i>Prima Facie</i> Case for her Hostile Work Environment Claim</u>**

First, as described above, Plaintiff clearly denounced any interest in pursuing any claim for "touching" in this litigation. (SOF, ¶ 45). Therefore, the only allegations Plaintiff makes in support of her hostile work environment claim is that a co-worker Brandon made comments about her appearance at the 2016 NSM and a co-worker Justin made a "joke" that she was only performing well "because [she was] probably sleeping with [her] clients or blowing someone" at an unspecified NSM. (SOF, ¶¶ 37-39). Even assuming the two allegations pertaining to "touching" by these two individuals were considered by the Court, the undisputed facts remain that these individuals were colleagues, and Plaintiff admits she never reported any sexual harassment to Pacira. (SOF, ¶¶ 38-45).

Specifically, it is undisputed that Brandon and Justin were co-workers (below Plaintiff in rank), and Plaintiff only personally met them a few times per year because they worked in different regions. (SOF, ¶¶ 23, 41).  Plaintiff has not proffered *any* evidence showing that the limited allegation she makes about Brandon and Justin, even if true, were severe, pervasive, or sufficiently hostile or abusive to alter the terms and conditions of her employment.  Additionally, given her status as below Plaintiff in rank, they had no authority to alter her work environment. (Id).; see Barroso v. Lidestri Foods, Inc., 937 F. Supp. 2d 620, 631-634 (D.N.J. 2013) (granting summary judgment as to Plaintiff's hostile work environment claim and reasoning that even though plaintiff alleged several repeated offensive comments, including those that were sexually explicit were made, and plaintiff claimed to have been touched without his consent, his claim warranted dismissal because the alleged harasser was not a "supervisor" with any authority to adversely affect plaintiff's work environment and plaintiff only interacted with the alleged harasser twice per week).

Thus, Plaintiff cannot establish a *prima facie* case of hostile work environment because there is simply no evidence to suggest that the two instances of alleged harassment by colleagues from a different region during Plaintiff's four year tenure is severe, pervasive, or reasonably altered the terms and conditions of her employment.  Assuming as true Plaintiff's own contentions about her performance and a future promotion (SOF, ¶ 24), it cannot follow that any terms and conditions of her employment were impacted by any of the alleged harassment she now claims for the first time in this lawsuit.  The record is entirely devoid of *any* specifics to prove this claim, and the undisputed evidence demonstrates that this claim must fail.

2. **Even Assuming Plaintiff Established the *Prima Facie* Case for her Hostile Work Environment Claim, this Claim is Barred Because the Company Has Established Policies to Prevent Harassment which Plaintiff Admittedly Never Availed Herself To**

16

Assuming *arguendo* the Court finds Plaintiff meets her burden of establishing the *prima facie* case, Pacira is entitled to a "safe haven" because it had robust anti-harassment and reporting policies in place, it provided these policies to employees at hire, and it regularly provided training on these policies to employees and separately to management. (SOF, ¶ 14-21).  However, Plaintiff, despite admitting she knew the policies, never reported any harassment. (SOF, ¶¶ 38, 40, 42-45).

As addressed supra, employers are only liable for sexual harassment if the employer knew or should have known about the conduct and failed to take prompt and appropriate corrective action. See Erickson, 117 N.J. at 557-59.  This is a higher standard to prove if the alleged harasser is a co-worker. Heitzman, 728 A.2d at 301; see also Barroso, 937 F. Supp. 2d. at 631-634. Additionally, employers are entitled to a "safe haven" if it has discrimination policies in place, and it enforces them when given the opportunity to.

Here, Plaintiff **never** complained of any sexual harassment during her employment, and Pacira had robust policies to prevent harassment which they enforce, provide regular training on to employees and management, and of which Plaintiff had been aware.  (SOF, ¶¶ 38, 40, 42-45).  This is also undisputed.

Specifically, in Plaintiff's deposition, she testified that she had been aware of policies concerning harassment, discrimination, retaliation, and the mechanisms in which to report any issues relating to same. (SOF, ¶¶ 14-20, 42-45).  She also testified that she had been aware that if she did not raise any complaint, it would mean that the Company could not take action to prevent any conduct from occurring or resolve the issues (which is expressly written in the policy), and it was her "choice" to "remain quiet." (Id. at ¶ 42-45.).  Further, there is ample evidence that Pacira adhered to these policies as is exemplified by the fact that the HR promptly undertook an

17

investigation into the complaints received about Topgolf, Rock, and Plaintiff. (Id. at ¶¶ 62, 67, 71). Moreover, Plaintiff admitted that she routinely attended trainings on the topics of anti-discrimination, anti-harassment, and reporting procedures, as recently as October and December 2017 and had been aware of these policies. (Id. at ¶¶ 18-20).  Additionally, Pacira made these policies accessible to all employees, regularly conducted training on these topics to all employees as evidenced by Plaintiff's own training records, and indeed, Pacira retained outside counsel to hold "Sensitivity Training" for managers just a week in advance of the NSM which covered the topics of sexual harassment, reporting, discrimination, retaliation, and a hostile work environment. (Id. at ¶ 14-21)   However, on numerous occasions throughout Plaintiff's deposition, she admitted that she did not raise any issue concerning sexual harassment to anyone. (Id. at ¶¶ 38, 40, 45).

Indeed, hostile work environment claims are routinely dismissed on summary judgment when the record evidence establishes that the plaintiff never reported the allegedly hostile work environment for any remedial action to be taken. See Ahmed v. Interstate Mgmt. Co., 11-683, 2012 U.S. Dist. LEXIS 103512, at *17 (D.N.J. July 25, 2012) (finding co-workers' use of ethnic epithets did not form basis for hostile work environment where plaintiff did not report the conduct.); Ali v. Woodbridge Twp. Sch. Dist., 2019 U.S. Dist. LEXIS 72877, at *26 (D.N.J. April 30, 2019) (J. Arleo) (noting that the fact plaintiff never reported the allegedly hostile comments to the union or administration in its reasoning for granting summary judgment as to plaintiff hostile work environment claim); see also Barroso 937 F. Supp. 2d at 631-634 (granting summary judgment as to Plaintiff's hostile work environment claim and reasoning that employer was entitled to a safe haven because it had anti-harassment policies and adhered to them in response to plaintiff's complaint about harassment).

Based upon the foregoing Plaintiff cannot establish a *prima facie* case of hostile work environment discrimination, and even if Plaintiff could, Pacira is entitled to a "safe haven" from liability. Thus, Plaintiff's hostile work environment claims against Pacira are subject to dismissal as a matter of law.

## POINT IV

## PLAINTIFF'S LAD RETALIATION CLAIM MUST BE DISMISSED AS A MATTER OF LAW.

In Count III of Plaintiff's Complaint for retaliation under the NJLAD, Plaintiff alleges Defendants terminated her in retaliation for complaining about discrimination. (SOF, at ¶ 46). We assume for purposes of this motion that Plaintiff bases this claim on the report she made to HR during the course of its investigation into the Topgolf incident. Specifically, during Plaintiff's interview with HR on February 21, 2018, Plaintiff informed HR that Rock (a host of the Topgolf event) informed her she could not attend the event because it was a boy's night out, and she felt unwelcome, purportedly based on her gender, as a result. (SOF, ¶¶ 46, 73, 76).

As stated supra, the reason for Plaintiff's termination is straightforward. Pacira terminated Plaintiff on March 14, 2018 because HR received three complaints about Plaintiff viewing sexual images at the NSM which made other employees uncomfortable. (SOF, ¶¶ 76, 78-82). Indeed, the sole reason for Plaintiff's termination was due to the intervening event of **her own misconduct**. (SOF, ¶ 87-90). Thus, Plaintiff's claim that the decision to terminate her by Pacira was due to her complaint is completely unsupported. There is no evidence of discriminatory animus by Kahr, (Id., at ¶¶ 88, 92), nor can Plaintiff establish "causation" solely from a temporal standpoint based on the undisputed factual record in this matter.

Even assuming *arguendo* Plaintiff can establish the *prima facie* case for her LAD retaliation claim, she cannot prove that the Company's articulated, non-discriminatory business decision to terminate her -- Plaintiff's viewing of sexually explicit material -- was pretextual.

### A.   Plaintiff Cannot Meet Her Burden to Establish a *Prima Facie* Case of Retaliation under the LAD.

Retaliation claims under the LAD are analyzed using the burden-shifting framework articulated in McDonnell Douglas.  See e.g., Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 97-98 (1990); Viscik, 173 N.J. at 23.  In order to state a *prima facie* LAD retaliation claim, Plaintiff must show: (1) [s]he engaged in a protected activity; (2) that there was an adverse action by the employer either after or contemporaneous with [her] protected activity; (3) that there is a causal connection between [her] protected activity and the employer's adverse action. Mara v. Phila. Housing Auth., 497 F.3d 286, 300 (3d Cir. 2007).  Based on the undisputed record evidence, Plaintiff will be unable to establish causation.

### 1.   There is No Causal Connection Between Plaintiff's Protected Activity and Pacira's Decision to Terminate Plaintiff's Employment for Engaging in Sexual Misconduct at the NSM

With respect to the fourth element of the *prima facie* case, "causation," first, Defendants maintain that Plaintiff will not be able to prove causation because Kahr, the decisionmaker for Plaintiff's termination, denies being aware of Plaintiff engaging in any protected activity.  Specifically, Kahr testified that he did not believe Plaintiff's complaint about Rock to be gender-based but rather a complaint about unprofessional conduct by Rock. (SOF, ¶ 75).  As this is Kahr's own sense impression, this cannot be disputed by Plaintiff on summary judgment.  Thus, for Plaintiff to claim Kahr retaliated against her based on protected activity that he was not even aware she engaged in would be impossible. Moore v. City of Philadelphia, 461 F.3d 331, 351 (3d Cir. 2006) (stating that it is "not reasonable for a factfinder to infer that an employer's reaction

20

was motivated by an intent to retaliate for conduct of which the employer's decisionmaker was not aware); Ciecka v. Cooper Health Sys., Civ. Act. No. 15-4075, 2017 U.S. Dist. LEXIS 20539, at *28 (D.N.J Feb. 14, 2017) (stating, "of course, an employer cannot retaliate against an employee if the employer's decisionmaker did not know of the employee's protected activity.").

Assuming *arguendo* Kahr even had this level of awareness, which he does not, Plaintiff would not be able to prove that the temporal proximity between her protected activity on February 21, 2018 and her termination on March 14, 2018, standing alone, establishes causation.

To establish the causation element of an LAD retaliation claim, evidence of an "**unusually suggestive** temporal proximity between the protected activity and the allegedly retaliatory action" may be used to support a plaintiff's *prima facie* case. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000). However, it is well-settled that proving a causal nexus requires more than just temporal proximity. Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (stating that "the mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events."). If temporal proximity is insufficient standing alone, assessing whether there was 'time plus' other intervening retaliatory acts is required. Farrell, 206 F.3d at 280.

Here, there are approximately three weeks between Plaintiff's alleged protected activity and the termination. (SOF, ¶¶ 73, 88). The record is also clear that in between the protected activity and the termination, Pacira received three reports from employees about Plaintiff viewing inappropriate sexual material at the NSM. (SOF, ¶¶ 76-82, 84, 87). Thus, the termination occurred after Pacira learned of Plaintiff's inappropriate conduct and confirmed from Plaintiff directly that she engaged in the sexual behavior she was accused of. (SOF, ¶¶ 82, 84, 87-89). This presents a

21

superseding, intervening event that negates any possible connection to her alleged whistleblowing activity and also provides a legitimate, non-retaliatory reason for the termination decision.  Indeed, inferring a causal relationship between the protected activity and the adverse action is not logical when the two are separated by an intervening event that independently . . . caused the adverse action." Houston v. Dialysis Clinic, Inc., No. 13-4461, 2015 U.S. Dist. LEXIS 83151, at *33 (D.N.J. June 26, 2015).

Further, there are several cases in which courts have held that a period of three weeks between protected activity and termination, without more, is insufficient to establish the casual link element of *prima facie* case for retaliation under the LAD. Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (finding that period of three weeks between protected activity and adverse action was insufficient to establish causal link in retaliation claim); Malloy v. Intercall, Inc., 2010 U.S. Dist. LEXIS 136808, 2010 WL 5441658, at *20-21 (D.N.J. Dec. 28, 2010) (granting summary judgment on NJLAD retaliation claim where plaintiff "pointed to no facts supporting her claim that she was terminated in retaliation for her complaint other than merely pointing to the fact that she complained and was terminated approximately two weeks later); Shinn v. FedEx Freight, Inc., 2016 U.S. Dist. LEXIS 169037, at *17-18 (D.N.J., Dec. 6, 2016) (granting summary judgment on NJLAD retaliation claim where plaintiffs provided no other basis to support causal link other than period of two weeks and two months between protected activity and termination, and reasoning that plaintiffs' misconduct which occurred close in time to the adverse action and which defendant learned just prior to terminations were "legitimate" reasons to support the Court's finding that plaintiffs could not establish "causation based on timing alone."); see also Escanio v. United Parcel Serv., 538 F. App'x 195, 200 (3d Cir. 2013) (finding

22

that period of roughly three weeks between protected activity and termination, without more, is not sufficient to establish causation element of prima facie case for LAD retaliation claim).

Moreover, there is no evidence of any "ongoing antagonism" between Plaintiff and Pacira.  Just prior to Plaintiff's termination, Pacira determined that neither Rock nor Plaintiff would be subject to disciplinary action for the Topgolf incident. (SOF, ¶ 85).  In fact, Kahr did not even know Plaintiff personally to harbor any motive or animus, nor is there any evidence or allegations of comments made by Kahr which would suggest that he exhibited an animus. (SOF, ¶ 91).  There was no "antagonism" of any kind.  Additionally, as noted above, Pacira regularly promotes and trains its employees on equal employment policies and just a week prior to the NSM, Pacira held an anti-harassment training for its managers. (SOF, ¶¶ 14-17, 21).  Pacira's decision to terminate Plaintiff and Rock was in compliance with these same policies.  Even at the time of Plaintiff's termination when she asked if she could raise issues about numerous other things she admitted she never asserted in the past, Kahr encouraged her to do so.  (SOF, ¶¶ 18-20, 38, 40, 42-44, 90).  This is evidence that Pacira encourages proper reporting of complaints, the opposite of an "animus" as Plaintiff claims.  Thus, to now allege that Kahr held a retaliatory animus against Plaintiff is nonsensical and not established by the factual record.

**B.**     **Defendant Has Articulated a Legitimate, Non-Retaliatory Reason for its Decision to Terminate Plaintiff's Employment.**

LAD retaliation claims are also subject to the McDonnell Douglas burden shifting framework. Mogull v. CB Commercial Real Estate Group, Inc., 162 N.J. 449, 468 (2000); Andersen, 89 N.J. at 493.  Thus, similar to the analysis of Plaintiff's discrimination claims described above, even if Plaintiff establishes a *prima facie* case of retaliation under the LAD, Pacira only has the burden of articulating (not proving) a legitimate, nonretaliatory reason for the

23

employment decision.  See Pizarro v. Int'l Paper Co., 2020 U.S. Dist. LEXIS 36760, *15 (D.N.J. Mar. 3, 2020).

As set forth in detail supra, Pacira has set forth its legitimate, non-retaliatory business reason for terminating Plaintiff's employment -- Plaintiff viewed sexually explicit material at the NSM which three employees complained of.

**C.**   **Plaintiff Cannot Establish that Defendant's Articulated Reason for its Decision to Terminate Plaintiff's Employment was a Pretext for Retaliation.**

Even if Plaintiff could proffer competent evidence of the *prima facie* elements of a retaliation claim, Plaintiff still bears the burden of demonstrating, by a preponderance of the evidence, that Pacira's articulated reason for the termination of her employment is a pretext, and that the real reason was retaliation based on Plaintiff's "gender based" complaints to HR about Rock.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-511 (1993); Morro v. DGMB Casino, LLC, 112 F. Supp. 3d 260, 279 (D.N.J. 2015).  To do so, Plaintiff must submit evidence either "cast[ing] sufficient doubt" on Pacira's proffered reason such that a factfinder "could reasonably conclude that each reason was a fabrication," or affirmatively showing that discrimination or retaliation was the true reason for discharge.  Fuentes, 32 F.3d at 762.  "[T]he ultimate burden of proving intentional [retaliation] always rests with the plaintiff."  Id. at 763.

For the reasons previously discussed supra, entirely absent from the record is any evidence demonstrating that Pacira terminated Plaintiff's employment for any reason other than her own clear misconduct.  To avoid summary judgment, Plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)."Id. at 764; Shinn, 2016 U.S. Dist. LEXIS 1609037, n. 3-4. Plaintiff has not set forth any evidence to rebut the

legitimate, non-discriminatory and non-retaliatory reasons cited by Plaintiff for her termination and has failed to meet this burden.

Accordingly, Defendants respectfully request that Plaintiff's NJLAD retaliation claim be dismissed, with prejudice, as a matter of law.

## POINT V

## PLAINTIFF'S CEPA RETALIATION CLAIM MUST BE DISMISSED AS A MATTER OF LAW.

In Count IV of Plaintiff's Complaint, Plaintiff alleges Defendants terminated her in retaliation for complaining about violations of the Dodd Frank Act. (SOF, ¶¶ 2, 48).  This is the only rule, law, or regulation referenced in Plaintiff's Complaint, and at the motion to dismiss stage, Plaintiff withdrew this count. (SOF, ¶ 3).

The body of Plaintiff's Complaint references three other generalized "complaints" about "business irregularities" that Plaintiff allegedly made regarding: the Company's use of financial "grants"; commission payments regarding sales done in "White Space" accounts (which are accounts that are not assigned to a specific territory); and, assumed conflicts of interests between non-sales and sales employees. (SOF, ¶ 47).  However, **Plaintiff does not identify any rule, law, policy, or regulation to support these claims of protected activity under CEPA.**

Other than the claims Plaintiff already withdrew, the only rule, law, policy, or regulation that Plaintiff raises in this litigation was in her deposition when Plaintiff made a passing reference about how she believed that non-sales staff attending a company-sponsored trip was a "gray area" of the "Sunshine Act." [2] (SOF, ¶¶ 49).  As evidenced by Plaintiff's own testimony, she

---

[2] The Sunshine Act is federal statute that requires medical product manufacturers to disclose to the Centers for Medicare and Medicaid Services (CMS) any payments or other transfers of value made to physicians or teaching hospitals.  Section 6002 of the Affordable Care Act (ACA) of 2010.  This has nothing to do with rewarding Pacira's clerical staff with an all-expense paid retreat as a bonus and thank-you.

does not even allege that she believed in good faith the conduct to violative of the statute. (SOF, ¶¶ 50-51).  A "gray area" cannot be a clear-cut violation.  Moreover, there is no evidence that Kahr, who made the decision to terminate Plaintiff in conjunction with legal, was even aware of this alleged protected activity assuming it occurred.

As such, Plaintiff has failed to provide sufficient details of her alleged CEPA claim as she has not met her burden to establish whether she engaged in protected activity (and if so, when and to whom), how she claims the rule, law, or regulation to have been violated, or set forth any proof that the decisionmaker for her termination had any awareness of her alleged protected activity.  Thus, Plaintiff's CEPA claim should be dismissed as a matter of law.

A.   **Plaintiff Cannot Meet Her Burden to Establish a *Prima Facie* Case of Retaliation under CEPA.**

CEPA was designed "to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." Abbamont v. Piscataway Bd. of Educ., 138 N.J. 405, 431 (N.J. 1994). CEPA prohibits an employer from taking retaliatory action against an employee because the employee:

    a.  Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:  is in violation of a law, or a rule or regulation promulgated pursuant to law…or

    b.  Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer…or

    c.  Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:  (1) is in violation of a law, or a rule or regulation promulgated pursuant to law…; (2) is fraudulent or criminal; or (3) is incompatible

with a clear mandate of policy concerning the public health,
safety or welfare or protection of the environment.

N.J.S.A. § 34:19-3.

To set forth a *prima facie* case of retaliation under CEPA, Plaintiff must demonstrate: (1) a reasonable belief that the employer's conduct was violating either a law, rule, regulation, or public policy; (2) he or she performed a "whistle blowing" activity as described in N.J.S.A. 34:19-3; (3) an adverse action was taken against him or her; and (4) a casual connection existed between his whistle-blowing activity and the adverse employment action. Samowsky v. Air Brooke Limousine, Inc., 510 F.3d 398, 404 (3d Cir. 2007); Dzwonar v. McDevitt, 177 N.J. 451, 464 (2003).

In analyzing claims brought under CEPA, New Jersey courts apply the three-part burden-shifting framework. Klein v. Univ. of Med. & Dentistry, 377 N.J. Super. 28, 38-39 (App. Div. 2005); Kolb v. Burns, 320 N.J. Super. 467, 478 (App. Div. 1999); see also McDonnell Douglas, 411 U.S. at 802.  Plaintiff bears the ultimate burden of proving unlawful retaliation at all times. St. Mary's Honor Ctr., 509 U.S. at 507.

1.     **Plaintiff Cannot Identify A Law, Rule, Regulation, or Clear Mandate of Public Policy Which She Reasonably Believed Pacira Violated.**

The threshold inquiry to establish a *prima facie* case for retaliation is whether Plaintiff has identified a law, rule, regulation, or clear mandate of public policy which may have been violated.  Mehlman v. Mobil Oil Corp., 153 N.J. 163, 187-88 (N.J.1998); Schechter v. N.J. Dep't of Law & Pub. Safety, Div. of Gaming Enforcement, 327 N.J. Super. 428, 431 (App. Div. 2000).  To withstand summary judgment, Plaintiff must "furnish the trial court with enough by way of proof and legal basis to enable the court to determine as a matter of law that the plaintiff has identified the asserted violation with adequate particularity for a jury's consideration." Klein,

377 N.J. Super. at 40 (internal quotation marks omitted) (affirming the grant of summary judgment as to plaintiff's CEPA claim on the basis that plaintiff did not sufficiently identified any illegal, unethical, or public policy violation sufficient to satisfy the first prong of a prima facie case of a CEPA claim under the language or intent of N.J.S.A. 34:19-3c). Indeed, the Supreme Court of New Jersey has clearly held that when a plaintiff brings an action pursuant to section 3(c) of CEPA, "the court or the plaintiff" must "identify a statute, regulation, rule, or public policy that closely related to the complained-of conduct," and a court "can and should enter judgment for a defendant when no such law or policy is forthcoming." Id. at 463-464; Maw v. Advanced Clinical Communications, Inc., 359 N.J. Super. 420, 432 (App. Div. 2003). This threshold inquiry, therefore, requires a determination of whether "there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or by the plaintiff." Dzwonar, 177 N.J. at 464.

Here, other than identifying the Dodd Frank Act in her Complaint and alleging a separate claim for retaliation under the Dodd Frank Act, which Plaintiff voluntarily withdrew, Plaintiff has not alleged anywhere in her Complaint that Defendants violated any law, rule, regulation, or public policy for Defendants to be able to even discern her claims under CEPA. (SOF, ¶¶ 2, 3, 48). Likewise, in Plaintiff's deposition, her allegations are vague. Indeed, the only reference to a law, rule, regulation, or public policy made by Plaintiff occurred during her deposition when she expressed, in passing, that she did not understand why non-sales Medical Affairs personnel were invited to a Company-sponsored trip awarded to high performers. (SOF, ¶¶ 49). Plaintiff stated that she believed non-sales staff attending this trip was a "gray area" of the "Sunshine Act." (Id.). This claim is not even reasonably related to the Sunshine Act. Further, as evidenced by Plaintiff's own testimony, she does not even allege that she believed in good faith

the conduct to violative of the statute as she states only that she believed this could have been a "gray" area of the statute, and she wanted an "explanation" of it. (Id.).

Nor does Plaintiff identify to whom she complained about this, when such a complaint was made, in what matter she complaint, what any response to such complaint was, or provide any document which she establishes that she ever addressed this issue. Further, despite Defendants conducting a detailed ESI search of thousands of pages based on search terms agreed upon by the parties, no responsive documents detailing "protected activity" pertaining to the Sunshine Act (or any other law) by Plaintiff could be located. Additionally, Kahr, who made the decision to terminate Plaintiff in conjunction with legal, had no knowledge of Plaintiff's purported complaints about Medical-Affairs' personnel attendance at any Company-sponsored trip or alleged claims of violations of the Sunshine Act. (SOF, ¶¶ 91-92).

### 2. Plaintiff Cannot Establish a Causal Connection Between Her Separation and Any Alleged Whistle-Blowing Activity.

Additionally, because Plaintiff cannot identify any statute, regulation, rule, or public policy or any protected activity, specific dates during which she allegedly complained, details of to whom and what manner she complained, Plaintiff also cannot show any adverse action or a causal relationship between the adverse action and her purported whistle-blowing activity. Dzwonar, 177 N.J. at 462. Indeed, Plaintiff would also need to prove that the decisionmaker for Plaintiff's termination was aware of her protected activity and acted in reaction to it. Moore, 461 F.3d at 351 (stating that it is "not reasonable for a factfinder to infer that an employer's reaction was motivated by an intent to retaliate for conduct of which the employer's decisionmaker was not

aware); <u>Ciecka</u>, 2017 U.S. Dist. LEXIS 20539 at \*28. She does not make any such showing and she cannot dispute that Kahr had not been aware of her alleged protected activity under CEPA.

It is Plaintiff's burden to prove it is "more likely than not" that the protected activity was a "determinative or substantial motivating factor" behind the adverse action. <u>Donofry v. Autotote Sys., Inc.</u>, 350 N.J. Super. 276, 293, 296 (App. Div. 2001). Further, given Plaintiff's vague and generalized allegations, she cannot remotely meet this burden. Indeed, for Plaintiff's CEPA claim specifically, there can be no argument that proceeding to the second step of the burden-shifting framework described above is even necessary as the claim should be dismissed as a matter of law.

Even assuming the Court somehow found that Plaintiff established the *prima facie* case for her CEPA claim, the same arguments described in earlier sections addressing that Defendants articulated a non-discriminatory and non-retaliatory reason for Plaintiff's termination, and Plaintiff's inability to prove with <u>any</u> discernible evidence that the fact Defendant terminated Plaintiff for viewing graphic images of sexual positions at the NSM was pretextual, would be applicable to Plaintiff's CEPA claim also. Thus, Plaintiff's CEPA claim should be dismissed as a matter of law.

### POINT VI

**TO THE EXTENT PLAINTIFF HAS ASSERTED CLAIMS FOR AIDING AND ABETTING AGAINST KAHR, MURPHY, AND REISER UNDER THE NJLAD, THIS CLAIM MUST BE DISMISSED AS A MATTER OF LAW.**

Following the Court's Order on Defendants' Motion to Dismiss and the voluntary stipulation to dismiss Dennis McLoughlin and Paul Ciavollela, the only individuals who remain as individual Defendants are Rich Kahr, Peter Murphy, and Glenn Reiser. (SOF, ¶¶ 6-7).

The only mechanism available to a plaintiff to assert individual liability under the LAD is under an aiding and abetting theory.  N.J.S.A. 10:5-12(e); see also Failla v. City of Passaic, 146 F.3d 149, 157-58 (3d Cir. 1998).  To establish an employee is liable as an aider or abettor, Plaintiff must show: (1) the party whom the defendant aided must have performed a wrongful act that caused injury; (2) the defendant must have been generally aware of his role as part of an overall illegal or tortious activity at the time that he provided the assistance; and (3) the defendant must have knowingly and substantially assisted in the principal violation. Tarr v. Ciasulli, 181 N.J. 70, 82-85 (2004).  As such, an individual employee can only be liable if the principal is liable.  Id. at 84; Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 127 (3d Cir. 1999).

Further, individual liability is only available under the LAD where a plaintiff demonstrates that a **supervisory** employee aids and abets a violation of the LAD.  Tarr, 181 N.J. at 84; Herman v. Coastal Corp., 348 N.J. Super. 1, 28 (App. Div. 2002).  An individual cannot aid and abet their own conduct in violation of the LAD.  Newsome v. Admin. Office of Courts, 103 F. Supp. 2d 807, 823 (D.N.J. 2000) (primary wrongdoer was entitled to summary judgment because there is no direct individual liability under the LAD and because, "as the alleged principal wrongdoer, [he] cannot aid and abet his own wrongful conduct.") (citing Hurley, 174 F.3d at 126).

Additionally, it should be noted Plaintiff's Complaint fails to assert any cause of action under the NJLAD alleging the basis of Plaintiff's claims against individuals Kahr, Murphy, and Reiser, and Plaintiff's failure to do so subjects the claim to dismissal. Kennedy v. Chubb Group of Ins. Cos., 60 F.Supp.2d 384, 390-391 (D.N.J. 1999); see also Scott v. Schindler Elevator Corp., 2019 U.S. Dist. LEXIS 74774, at *29 (D.N.J. 2019) (holding that if a complaint does not reference "aiding and abetting" or otherwise mention the basis of the NJLAD claims against the individual defendants, the NJLAD claim against individual defendants warrants dismissal).

31

Thus, because Plaintiff does not assert a separate count against the individual defendants for aiding and abetting under the NJLAD or have any evidence to support the elements of a *prima facie* case for aiding and abetting liability under the NJLAD, the individual Defendants Kahr, Murphy, and Reiser should be dismissed.

Even if the Court were to permit this claim against the individuals to proceed, because Pacira cannot be liable for any discriminatory or retaliatory conduct, and Plaintiff's claims are subject to dismissal for the reasons described above, there can be no aiding and abetting liability against individuals Kahr, Murphy, or Reiser.  Additionally, even if any claims against Pacira survives, first, there are no allegations or evidence to support that Kahr, VP of HR, who did not participate in Plaintiff's hire or otherwise even know Plaintiff, held a "supervisory" role over Plaintiff. (SOF, ¶¶ 8, 92).  Second, all individual Defendants including Kahr himself testified that Kahr made the decision to terminate Plaintiff in conjunction with legal.  (SOF, ¶ 88).  Thus, neither Murphy nor Reiser participated in the decision to terminate Plaintiff.  (Id.).

Therefore, as a matter of fact and law, there is no basis to conclude that Defendants Kahr, Murphy, and Reiser aided and abetted any unlawful conduct under the NJLAD, especially since Plaintiff cannot establish that Pacira ever committed any NJLAD violation, which it did not, and Plaintiff does not even assert this claim as a cause of action.

### POINT VII

### TO THE EXTENT PLAINTIFF HAS ASSERTED CLAIMS FOR INDIVIDUAL LIABILITY AGAINST KAHR, MURPHY, AND REISER UNDER CEPA, THIS CLAIM MUST BE DISMISSED AS A MATTER OF LAW.

Following the Court's Order on Defendants' Motion to Dismiss and the voluntary stipulation to dismiss Dennis McLoughlin and Paul Ciavollela, the only individuals who remain as individual Defendants are Rich Kahr, Peter Murphy, and Glenn Reiser.  (SOF, ¶¶ 6-7).

Individual liability under CEPA may extend to an employer or supervisory employees who "act with the authorization of the employer." N.J.S.A. 34:19-2(a), <u>Maimone v. Atl. City</u>, 188 N.J. 221, 229 (2006), <u>Palladino v. VNA of Southern New Jersey, Inc</u>., 68 F. Supp. 2d 455, 474 (D.N.J. 1999), <u>Espinosa v. Continental Airlines</u>, 80 F. Supp. 29 297, 306 (D.N.J. 2000).

Additionally, it should be noted Plaintiff's Complaint fails to assert <u>*any*</u> cause of action under CEPA for individual liability as to Kahr, Murphy, and Reiser, and Plaintiff's failure to properly assert the claim subjects it to dismissal.

Even if the Court were to permit this claim against the individuals to proceed, Plaintiff has not produced any record evidence that VP of HR Kahr would be an "employer" or "supervisor" as defined under CEPA as it relates to Plaintiff for the same reasons described <u>supra</u> in Point VI. Additionally, there is no evidence that Murphy or Reiser participated in any decision to terminate Plaintiff. (SOF, ¶ 88). Indeed, the undisputed testimony of Kahr, Murphy, and Reiser is that Kahr, in conjunction with legal, made the decision to terminate Plaintiff. (*Id*.).

Therefore, as a matter of fact and law, Plaintiff's claims under CEPA against individual Defendants Kahr, Murphy, and Reiser should be dismissed.

## POINT VIII

### PLAINTIFF CANNOT MAINTAIN A CLAIM FOR PUNITIVE DAMAGES AS A MATTER OF LAW.

Plaintiff's Complaint contains a demand for the award of punitive damages. Assuming any of Plaintiff's claims survive summary judgment, there is no genuine triable issue that Defendants engaged in any unlawful discriminatory and/or retaliatory conduct that was especially egregious. As such, the Court should dismiss Plaintiff's claim for punitive damages, as a matter of law.

It is well-established that punitive damages are limited to "particularly egregious" behavior. Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 48 (1984).  In order to establish that a punitive damages award is warranted, a plaintiff must show that "the defendant's conduct [was] . . . wantonly reckless or malicious.  There must have been an intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and willful disregard of the rights of others." Id. at 49.  Mere negligence, or even gross negligence, is legally insufficient to support an award of punitive damages.  DiGiovanni v. Pessel, 55 N.J. 188, 190-91 (1970); Parks v. Pep Boys, 282 N.J. Super. 1, 18 (App. Div. 1995) (finding defendants not liable for punitive damages in light of their conduct being grossly negligent).  "A necessary precursor to an award of punitive damages is finding that the offender is guilty of actual malice."  Maiorino, 302 N.J. Super. at 353 (internal quotation marks omitted).  "[P]unitive damages are only to be awarded in exceptional cases even where the LAD [or CEPA] has been violated." Catalane v. Gilian Instrument Corp., 271 N.J. Super. 476, 501 (App. Div. 1994).

Here, Plaintiff cannot make the necessary showing of "especially egregious" conduct.  As set forth in clear and convincing terms, Pacira based the decision to terminate Plaintiff based solely on her admission that she engaged in sexually inappropriate conduct. (SOF, ¶ 82). Additionally, she had been sternly warned to behave like a leader at the NSM which she blatantly ignored. (SOF, ¶ 29).  Further, Pacira promulgates robust anti-discrimination, harassment and retaliation policies, it regularly conducts training for employees and management and strictly enforces these policies. Plaintiff has set forth no evidence to support her allegations of discrimination or retaliation, much less prove that Defendants engaged in conduct sufficient to justify punitive damages. Because Plaintiff is unable to present evidence of any genuine triable issues of fact on his other claims to escape summary judgment, it necessarily follows Plaintiff

cannot present any evidence of conduct that exhibits malice or reckless disregard for his rights.

See Cokus v. Bristol Myers Squibb Co., 362 N.J. Super. 366, 392 (Law Div. 2002) ("in light of the court's ruling with regard to plaintiff's underlying claims, her additional claim for punitive damages must also be dismissed").

Accordingly, Plaintiff's claims for punitive damages against Defendants should be stricken as a matter of law.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court grant their motion for summary judgment pursuant to FED. R. CIV. P. 56, as a matter of law, and dismiss Plaintiff's Complaint in its entirety, with prejudice.

Respectfully submitted,

JACKSON LEWIS P.C.

By:     /s/ James J. Panzini
          James J. Panzini
          Pooja Bhutani

Dated: May 7, 2021

4817-8205-4632, v. 1