James J. Panzini, Esq. (Bar ID: 022101990)
Pooja Bhutani (Bar ID: 169592016)
**JACKSON LEWIS P.C.**
766 Shrewsbury Avenue
East Tower, Suite 101
Tinton Falls, New Jersey 07724
T: 732-532-6148
F: 732-842-0301
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RESHMA ABELL, | : |
| | : Civil Action No.: |
| Plaintiff, | : 2:18-cv-16509 (MCA) (AME) |
| | : |
| v. | : Return Date: August 16, 2021 |
| | : |
| PACIRA PHARMACEUTICALS, INC., DAVE STACK, individually and in his capacity as Chief Executive Officer of PACIRA PHARMACEUTICALS, INC., and RICH KAHR, PETER MURPHY, DENNIS McLOUGHLIN, PAUL CIAVOLELLA, GLENN REISER, JOYCE DAVIS AND MATT LEHMANN, in their capacities as employees of PACIRA PHARMACEUTICALS, INC., | : |
| | : |
| Defendants. | : |

**REPLY BRIEF IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Of Counsel:
    James J. Panzini, Esq.

On the Brief:
    James J. Panzini, Esq.
    Pooja Bhutani, Esq.

# **TABLE OF CONTENTS**

                                                                                                                            **PAGE**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

POINT I ................................................................................................................................... 3

        PLAINTIFF HAS NOT MET THE REQUISITE EVIDENTIARY STANDARD TO DEFEAT SUMMARY JUDGMENT ....................................... 3

POINT II .................................................................................................................................. 4

        PLAINTIFF'S GENDER DISCRIMINATION AND RETALIATION CLAIMS UNDER THE NJLAD ARE DEFICIENT AS A MATTER OF LAW ................................................................................................................... 4

        A.    Plaintiff Cannot Meet Her Burden to Establish a *Prima Facie* Case of Disparate Treatment on the Basis of Her Gender ........................... 4

        B.    Plaintiff Cannot Meet Her Burden to Establish a *Prima Facie* Case of a Hostile Work Environment on the Basis of Her Gender ................................................................................................................. 5

        C.    Plaintiff Cannot Meet Her Burden to Establish a *Prima Facie* Case of Retaliation ............................................................................................ 6

POINT III ................................................................................................................................. 7

        EVEN ASSUMING PLAINTIFF SET FORTH THE *PRIMA FACIE* CASE FOR HER NJLAD CLAIMS, SHE DOES NOT MEET HER BURDEN OF PROVING THAT PACIRA'S LEGITIMATE AND NON-DISCRIMINATORY REASONS FOR HER TERMINATION ARE PRETEXTUAL ...................................................................................... 7

        1.    There is No Evidence that Kahr Administered a "Sham" Investigation ................................................................................................. 8

        2.    There are No Issues of Material Fact ............................................................ 9

        3.    There is No Evidence of Any Invidious Motive by Kristin Williams ....................................................................................................... 10

CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Anthony v. Duff & Phelps Corp.,
    432 F. App'x 140 (3d Cir. 2011) ................................................................................. 3-4

Attanasio v. Plainfield Country Club,
    2009 N.J. Super. Unpub. LEXIS 1592 (App. Div. June 18, 2009) .................................. 10

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ........................................................................................................ 3

David v. Rutgers Cas. Ins. Co,
    964 F. Supp. 560 (D.N.J. 1997) ...................................................................................... 9

Delbridge v. Acme Food Corp.,
    2010 U.S. Dist. LEXIS 2789 (D.N.J. 2010) .................................................................... 9

Lexington Ins. Co. v. W. Pa. Hosp.,
    423 F.3d 318 (3d Cir. 2005) ........................................................................................... 3

Orsatti v. New Jersey State Police,
    71 F.3d 480 (3d Cir. 1995) ............................................................................................. 3

Parker v. Verizon Pa., Inc.,
    309 F. App'x. 551 (3d Cir. 2009) ................................................................................... 10

Solis v. Sher,
    2011 N.J. Super. Unpub. LEXIS 2939 (App. Div. Dec. 5, 2011) ............................... 9-10

Swider v. Ha-Lo Indus., Inc.,
    134 F. Supp. 2d 607 (D.N.J. 2001) ................................................................................ 9

Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs,
    982 F.2d 884 (3d Cir. 1992) ........................................................................................... 3

**Other Authorities**

FED. R. CIV. P. 56 .................................................................................................................. 11

**PRELIMINARY STATEMENT**

Pacira terminated Plaintiff for viewing and displaying images of people engaged in various sexual positions during its National Sales Meeting ("NSM"), conduct that Plaintiff admitted, and which three people complained to Human Resources ("HR") about. It cannot be disputed that this behavior is inappropriate for a workplace, whether Plaintiff claims it has cultural significance to her personally or not, and constitutes a legitimate, non-discriminatory and non-retaliatory business reason for her termination. Additionally, Plaintiff has failed to demonstrate *any* evidence to prove this reason is pretextual. In order to credit the arguments in Plaintiff's opposition ("Pl. Br."), Plaintiff would need to convince the Court that she set forth sufficient evidence to establish that: **two** employees from a different region than Plaintiff, whom she had only met on a few occasions, concocted a story about her showing them images of sexual positions at the NSM; Pacira's Director of Human Resources Kahr, who had never even met Plaintiff, fabricated his interview notes to further a "sham" investigation as part of a scheme to terminate her, and; Pacira's highest level legal officer, Williams (a female), who also never met Plaintiff, approved HR's decision to terminate Plaintiff simply because Plaintiff did not attend a women's dinner (which several other women also did not attend). The Court would also have to be convinced that Pacira prepared this elaborate scheme to terminate Plaintiff who was undisputedly a high sales performer, a position that is both unsupported by evidence and defies logic. Indeed, none of the claims Plaintiff makes are supported by any evidence. To the contrary, what is undisputed in this lawsuit is the following:

- Plaintiff was a high sales performer. There were discussions regarding a potential promotion so long as Plaintiff: performed a successful pilot for the role; demonstrated director-level behavioral qualities, especially at Pacira's 2018 NSM, and; the position was approved by all levels of management, HR, and the CEO. (See Defendants' Corrected Statement of Undisputed Material Facts ("DSOF") [ECF No. 86.1], at ¶¶ 24-29).

1

- At the NSM, Plaintiff opted not to attend a women's leadership dinner and attended an outing at TopGolf hosted by managers from another region for their respective teams. As Plaintiff worked in a different region, she was not invited, and the event was at capacity. (DSOF, at ¶¶ 55-62).

- Plaintiff and Rock, a male manager from another region, had a verbal disagreement at TopGolf. Plaintiff's second-level manager, Reiser, reported this to HR. (DSOF, at ¶¶ 63-65).

- HR conducted an investigation comprised of eight interviews of witnesses who attended the TopGolf outing. The interviewees were not able to detail the words exchanged between Plaintiff and Rock at TopGolf. (DSOF, at ¶¶ 72, 85; see Defendants' Reply to Plaintiff's Supplemental Statement of Disputed Material Facts ("DRPSOF") filed contemporaneously with this brief, at ¶ 102).

- However, during the course of the interviews, three witnesses reported that at the NSM, Plaintiff showed them images of the Kama Sutra, which depicted cartoon images of people having sex in different positions. Two of the witnesses expressly reported that Plaintiff's behavior made them feel uncomfortable. (DSOF, at ¶¶ 76-81, 84).

- Upon HR informing Plaintiff that there had been reports of her viewing the Kama Sutra at the NSM which depicted sexual images, Plaintiff admitted doing so. (DSOF, at ¶ 82).

- HR determined the investigation into the TopGolf incident was inconclusive. (DRPSOF, at ¶ 102). However, HR made the recommendation to terminate: Rock for conduct unbecoming of a manager because he had abruptly left the NSM following the disagreement at TopGolf, and; Plaintiff for her inappropriate behavior in viewing and displaying the Kama Sutra which made others uncomfortable. Pacira's legal department approved these recommendations, and Pacira terminated Rock and Plaintiff on March 13 and 14, 2018, respectively. (DSOF, at ¶¶ 85-89).

- Plaintiff alleges that two coworkers from a different region harassed her on two occasions in 2016, but despite being aware of Pacira's policies, she admits she never reported this behavior. (DSOF, at ¶¶ 37-45). Undisputedly, this "harassment" did not impact Plaintiff's ability to be

2

a high sales performer or the possibility of her being promoted, which she claims was due to be announced at the 2018 NSM. (See Plaintiff's Supplemental Statement of Disputed Material Facts ("PSSOF") [ECF No. 91.2], at ¶¶ 3, 11).

These undisputed facts prove that Plaintiff does not meet the *prima facie* case for her gender discrimination or retaliation claims.  Further, Pacira, at all times, took prompt and remedial action when it learned of any alleged wrongdoing, and it terminated Plaintiff and Rock, a male and female, pursuant to their policies and values, for legitimate, non-discriminatory and non-retaliatory reasons.  Plaintiff's hyperbolic claims otherwise are merely red herrings which are not supported by any evidence and should be ignored by this Court in granting summary judgment.

**I.     PLAINTIFF HAS NOT MET THE REQUISITE EVIDENTIARY STANDARD TO DEFEAT SUMMARY JUDGMENT**

At all times during this litigation, Plaintiff has relied on speculation.  However, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Since Plaintiff bears the burden of proving the existence of a genuine issue of material fact, she cannot defeat summary judgment simply by relying on the allegations in the pleadings and, more importantly, her subjective interpretation of the facts. Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) ("A non-moving party may not 'rest upon mere allegations, general denials or…vague statements.") (internal quotations omitted).  Plaintiff must instead "point to concrete evidence in the record that supports each and every essential element of [her] case." Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995).  Conclusory allegations devoid of concrete particulars, conjecture, speculation, and surmise are insufficient to defeat summary judgment. Lexington Ins. Co. v. W. Pa. Hosp., 423 F.3d 318, 332-33 (3d Cir. 2005); Anthony v. Duff & Phelps Corp., 432 F. App'x 140, 143 (3d Cir. 2011) (noting that "***unsupported assertions***,

3

*speculation, and conclusory allegations* are insufficient to withstand a motion for summary judgment" (internal quotation marks omitted)) (emphasis added).

For the reasons explained below, Plaintiff's allegations, her admissions, and the evidence demonstrate there is no issue of material fact for trial, and summary judgment for Defendants on each of Plaintiff's counts in her Complaint is appropriate, as a matter of law.

## II. PLAINTIFF'S GENDER DISCRIMINATION AND RETALIATION CLAIMS UNDER THE NJLAD ARE DEFICIENT AS A MATTER OF LAW

### A. Plaintiff Cannot Meet Her Burden to Establish a *Prima Facie* Case of Disparate Treatment on the Basis of Her Gender

Plaintiff is unable to meet the *prima facie* case for her disparate treatment claim because she cannot demonstrate that others outside of her protected class were treated more favorably than her. (Pl. Br., p. 5). In her opposition, Plaintiff claims for the first time that the males she should be compared against are two male colleagues, Massicote and Heritage, whom she alleges are the ones who took her phone at the NSM and showed the images of the Kama Sutra to Doherty. (Pl. Br., pps. 3-6). As "evidence" that Massicote and Heritage were treated more favorably than Plaintiff, she claims their conduct was more severe than hers because she only opened the Kama Sutra on her phones, but they are the ones who displayed it, and yet HR "refused" to investigate or take any adverse action against either of them. (Id.).

It is undisputed that HR did not investigate Massicote and Heritage, but there is a very simple explanation for this: **Plaintiff never informed HR that Massicote and Heritage were the ones who displayed the Kama Sutra images to anyone, nor did anyone who was interviewed by HR ever raise this.** Indeed, the very first time Plaintiff ever made this allegation was **during the course of her deposition—more than two and half years after her termination.** Notably, Massicote and Heritage's input is not addressed in Plaintiff's Complaint, brief in opposition to dismiss the Complaint, or discovery responses, nor does Plaintiff even claim that she informed HR of this during her

4

employment, during the call investigating the incident at TopGolf, or at the time of her termination. Thus, Plaintiff's argument that there is causation for her disparate treatment claims because two men who engaged in worse conduct than her were not investigated or disciplined, while she was, completely fails as HR cannot investigate conduct it is unaware of. Simply put, Plaintiff fails to meet the *prima facie* case.

### B. Plaintiff Cannot Meet Her Burden to Establish a *Prima Facie* Case of a Hostile Work Environment on the Basis of Her Gender

Plaintiff is unable to meet the *prima facie* case for her hostile work environment claim because she cannot show that she experienced "severe or pervasive conduct" which altered the "terms and conditions" of her employment. (Pl. Br., p. 13). Defendants acknowledge that Plaintiff testified about two specific incidents in 2016 in which two colleagues who were not in supervisory positions, and whom she infrequently met in person, allegedly commented about her appearance, joked that she had romantic relations with her clients, and touched her on two occasions. (DSOF, at ¶¶ 37-45; PSSOF, at ¶¶ 12, 14-19).

In Plaintiff's opposition, she ignores her clear testimony disavowing any claims for "touching" and makes a generalized statement, without pointing to specific evidence, that she worked in a "sexist work environment" where her achievements were "constantly attributed to her gender," and she was subjected to "recurring commentary" that she "slept" her way to the top. (Pl. Br., pps. 23-24). However, despite claiming that "constant" comments were made on a "recurring basis" by "multiple people," the **only specific instances** that Plaintiff points to are the same two Defendants described in their brief notwithstanding the fact that she admits she is not asserting any claims for touching. (Pl. Br., p. 24; see also DSOF, at ¶¶ 37-45; PSSOF, at ¶¶ 12, 14-19). Thus, Plaintiff's claims can be reduced to two alleged comments made by coworkers in 2016. This is not sufficient to meet Plaintiff's burden, and even assuming the comments Plaintiff described as true, she does not provide evidence regarding how two colleagues' purported behavior two years before her termination, who were not even in the same

5

region, impacted the terms and conditions of her employment, especially when considering her own claim that she was a top performer due to be promoted to a director-level position just before her termination.[1]

In addition to these examples, Plaintiff also claims that she was undeniably subjected to harassment on the night of the TopGolf event when Rock allegedly stated she could not attend because it was a "boy's event." (Pl. Br., p. 24). First, there is evidence that a male was also not permitted to attend this event due to there being event capacity. (DSOF, at ¶ 74). Additionally, even assuming Rock's comment as true, Plaintiff's claim still fails as there is no evidence that Rock's one comment could have impacted the terms and conditions of her employment, especially when considering Rock: was not Plaintiff's supervisor; he worked in a different region over 1000 miles away, and; he was terminated a day before Plaintiff.

### C. Plaintiff Cannot Meet Her Burden to Establish a *Prima Facie* Case of Retaliation

Plaintiff is unable to meet the *prima facie* case for her retaliation claim because there is no causal connection between her protected activity and termination as Kahr, the decisionmaker, did not believe Plaintiff's report about Rock was related to gender discrimination. (DSOF, at ¶ 75). This fact is not disputed as Plaintiff herself cites to this fact in her brief. (PSSOF, at ¶ 86). Without Kahr's awareness that Plaintiff engaged in protected activity, Plaintiff cannot establish causation, nor can she

---

[1] Plaintiff's claims also fail because she admits she was aware of the company policies on discrimination and retaliation but never reported her colleagues' conduct to HR. (DSOF, at ¶¶ 37-45). Plaintiff claims she feared retaliation because other women were retaliated against after complaining to HR, her supervisors discouraged complaints to HR, and her supervisors already "knew" or should have known about her colleagues' alleged behavior. (Pl. Br., p 25). **There is no support for these accusations**. Indeed, in discovery, Plaintiff attempted to gather data about other female employees being retaliated against. No evidence existed. Further, it is worth noting that Plaintiff herself admits that she was not shy to complain about other issues because she routinely made complaints about deserving a raise and her disappointment with her stock options, and one of Plaintiff's own supervisors, Reiser, reported the TopGolf incident to HR. (DSOF, at ¶ 46 and DRPSOF, at ¶ 20). Thus, for Plaintiff to claim her supervisors regularly encouraged her not to complain or failed to act properly is patently false.

dispute another person's awareness. However, assuming Kahr had this level of awareness, Plaintiff's only argument is the timing of her termination after her alleged protected activity. To this end, she does not refute the case law cited by Defendants showing that the timing was not close enough to be "causal" but instead claims that the timeline should be assessed from the date Kahr informed her he would be conducting an investigation into the Kama Sutra incident with her termination, which was a period of one day. This argument is completely nonsensical as there is nothing to support Plaintiff's claim that the causation analysis for a retaliation claim is to assess when an employee becomes aware of an investigation with the date of the adverse action. The law is clear that causation is to be assessed from the date of the protected activity as cited in Defendants' moving brief. The undisputed fact that Kahr was not even aware Plaintiff engaged in protected activity bars her claim entirely, and Plaintiff's belief of what the law should be is simply not enough to revive this claim.

### III. EVEN ASSUMING PLAINTIFF SET FORTH THE *PRIMA FACIE* CASE FOR HER NJLAD CLAIMS, SHE DOES NOT MEET HER BURDEN OF PROVING THAT PACIRA'S LEGITIMATE AND NON-DISCRIMINATORY REASONS FOR HER TERMINATION ARE PRETEXTUAL

Even assuming Plaintiff established the *prima facie* case for her gender discrimination and retaliation claims, Defendants have set forth a legitimate, non-discriminatory reason for Plaintiff's termination: Plaintiff viewed and displayed images of sexual positions at the NSM which others witnessed and complained of. Plaintiff claims Defendants' reason is pretextual because: (1) Kahr administered a "sham" investigation which was commenced only after Rock reported Plaintiff viewing the Kama Sutra, Kahr did not personally view the Kama Sutra during his investigation, and he did not interview the two males Plaintiff claims displayed the Kama Sutra graphics to others at the NSM; (2) There are issues of material fact regarding what occurred at the NSM because Plaintiff denies showing the Kama Sutra to Whaley, Huddy, and Doherty, there is no evidence that Doherty was offended by the Kama Sutra, and Plaintiff never admitted that viewing the Kama Sutra at the NSM was wrong, and; (3) Kristin Williams, the legal officer who helped plan the women's leadership dinner, had an "unclear"

7

role in Plaintiff's termination but not Rock's. (Pl. Br., pps. 15-16, 21-24). There is zero support for any of these assumptions that Plaintiff makes.

### 1. There is No Evidence that Kahr Administered a "Sham" Investigation

Plaintiff's belief that Kahr only investigated her because Rock, during the HR investigation into the TopGolf event, reported a series of instances where Plaintiff behaved inappropriately, including Plaintiff viewing the Kama Sutra at the NSM, is false. (Pl. Br., p. 16). Kahr commenced his investigation into Plaintiff for the Kama Sutra incident because he received unsolicited information about Plaintiff's conduct from Whaley, Huddy, and Doherty. (DSOF, at ¶¶ 76-82; DRPSOF, at ¶ 35). Kahr concluded his investigation when the Plaintiff admitted the objectively inappropriate behavior. There is no evidence that Whaley, Huddy, or Doherty were encouraged by Rock to complain about Plaintiff, and Whaley expressly denied so in his deposition. (DRPSOF, at ¶ 141). Additionally, Kahr never claimed to have relied on Rock's report about Plaintiff's conduct at the NSM or otherwise. If he had, he surely would have asked the interviewees about all of the examples Rock gave, rather than just the Kama Sutra incident. If he was scheming to build a case against Plaintiff as she claims, it defies logic that Kahr would have chosen one incident from Rock's notes and then ignored the others. Additionally, Kahr admits he did not view the Kama Sutra images during his investigation, and he would not have changed this decision because there was no need for him to view the images when three people reported it, and Plaintiff admitted it. (DSOF, at ¶¶ 82, 87-89; DRPSOF, at ¶¶ 124-131).

Further, it is undisputed that Kahr did not interview Massicotte and Heritage because no one, including Plaintiff, ever mentioned their involvement. Indeed, Kahr testified that he did not even know who those individuals were. (DRPSOF, at ¶ 82). Plaintiff simply believes that Kahr's investigation was a "sham," but she has absolutely zero evidence to support this. (Pl. Br., p. 22).

8

## 2. There are No Issues of Material Fact

Plaintiff claims there are issues of fact regarding what happened at the NSM because: she denies showing Huddy, Whaley, and Doherty the Kama Sutra; there is no evidence that Doherty was offended by it, and; she never admitted that her conduct was wrong. (Pl. Br., p. 15).

First, what transpired at the NSM are not material facts in this litigation. It is only material what HR knew at the time of its investigation and what information HR relied on in making the decision to terminate Plaintiff. At the time of the investigation, Kahr knew that: Whaley, Huddy, and Doherty reported Plaintiff viewing the Kama Sutra which contained images of sex positions at the NSM; Whaley and Huddy specifically stated they were offended by her conduct, and; Plaintiff admitted to viewing it. Second, Plaintiff further admitted she understood why someone would be uncomfortable by the Kama Sutra and that Doherty at least appeared to be uncomfortable. (DSOF, at ¶ 84). Whether Doherty was offended is not material to the inappropriate nature of Plaintiff's conduct, especially because Whaley and Huddy expressly reported being offended. (DSOF, at ¶¶ 78-79). Viewing images of sexual positions and/or engaging in conduct which makes a single employee in the workplace uncomfortable are violations of company policy. Based on the information Kahr was aware of at the time, Kahr made the recommendation to terminate Plaintiff. Third, Plaintiff admitting that she viewed the Kama Sutra but did not admit that she engaged in any "wrongdoing" is also immaterial as others reported being uncomfortable, and she understood her behavior could be offensive to others even if not to her. (DSOF, at ¶¶ 82, 84). Plaintiff's subjective belief is irrelevant.

Pacira is under no obligation to have made an employment decision which Plaintiff agreed with, which was entirely correct, or have held a flawless investigation, so long as the decision was made within the exercise of business judgment. Delbridge v. Acme Food Corp., 2010 U.S. Dist. LEXIS 2789, at *14 (D.N.J. 2010); see also David v. Rutgers Cas. Ins. Co, 964 F. Supp. 560, 573 (D.N.J. 1997); Swider v. Ha-Lo Indus., Inc., 134 F. Supp. 2d 607, 628 (D.N.J. 2001); Solis v. Sher, 2011 N.J. Super.

Unpub. LEXIS 2939, *8 (App. Div. Dec. 5, 2011); Attanasio v. Plainfield Country Club, 2009 N.J. Super. Unpub. LEXIS 1592, *17 (App. Div. June 18, 2009)[2].  Importantly, to discredit Pacira's proffered reasons, Plaintiff "cannot simply show that [Pacira's] decision was wrong or mistaken" but must demonstrate such weaknesses, implausibilities, inconsistencies or contradictions in Pacira's proffered legitimate reasons. Parker v. Verizon Pa., Inc., 309 F. App'x. 551, 556-57 (3d Cir. 2009) (citing cases).  There is no inconsistency or contradiction in Pacira's stated reasons for the termination, nor is there any evidence of weakness as it would have been a liability for Pacira not to take action in response to three employees' complaints about an employee viewing a website depicting sexual positions at a national meeting.  While Plaintiff may disagree with Pacira's decision to terminate her, she admitted to viewing the Kama Sutra at the NSM, and she cannot dispute that three employees complained about her conduct. (DSOF, at ¶¶ 76-82, 84).

### 3.     There is No Evidence of Any Invidious Motive by Kristin Williams

Plaintiff's claim that Williams planned the women's leadership dinner which Plaintiff chose not to attend, and Williams had an "unexplained" role in Plaintiff's termination but not Rock's, is also pure supposition.  By Plaintiff's own admission, Williams's role is "unexplained." (Pl. Br., p. 24). However, an "unexplained" role is not equivalent to pretext.  Kahr made the decision to terminate Plaintiff and Rock, and this was merely approved by the legal department, which included Williams. (DSOF, at ¶¶ 86, 88).  So again, Plaintiff's belief that Williams had some role in her termination and not Rock's is untrue, and it is also unsupported because there is no evidence that Williams, who is a woman who did not know Plaintiff or believe her to have engaged in protected activity, had any discriminatory or retaliatory animus against her.

---

[2] True and correct copies of the aforementioned unpublished cases were submitted with Defendants' moving brief in the "Compendium of Unpublished Cases in Support of Defendants' Motion for Summary Judgment" [ECF No. 82.6-82.7].

## **CONCLUSION**

As Plaintiff's claims against Defendants fail for the reasons described above, Plaintiff's aiding and abetting claims against the individual Defendants Kahr, Murphy, and Reiser, also fail.  Thus, for all the foregoing reasons, Defendants respectfully request that the Court grant their motion for summary judgment pursuant to Fed. R. Civ. P. 56, as a matter of law, and dismiss Plaintiff's Complaint in its entirety, with prejudice.

        Respectfully submitted,

        JACKSON LEWIS P.C.

By:   */s/ James J. Panzini*
       James J. Panzini
       Pooja Bhutani

Dated: August 9, 2021
4851-0859-7493, v. 1