UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**MADELINE COX ARLEO**<br>**UNITED STATES DISTRICT JUDGE** | **MARTIN LUTHER KING COURTHOUSE**<br>**50 WALNUT ST. ROOM 4066**<br>**NEWARK, NJ 07101**<br>**973-297-4903** |

December 28, 2021

VIA ECF

## LETTER ORDER

Re: **Reshma Abell v. Pacira Pharmaceuticals, Inc., et al.**
    **Civil Action No. 18-16509**

Dear Litigants:

Before the Court is Defendants Pacira Pharmaceuticals, Inc. ("Pacira"), Richard Kahr ("Kahr"), Peter Murphy ("Murphy"), and Glenn Reiser's ("Reiser," or, together with Pacira, Kahr, and Murphy, "Defendants") Motion for Summary Judgment. ECF No. 82. Plaintiff Reshma Abell ("Abell" or "Plaintiff") opposes the motion. ECF No. 91. For the reasons explained below, Defendants' motion is **GRANTED in part** and **DENIED in part**.

**I.    BACKGROUND**[1]

This employment discrimination action arises out of Plaintiff's termination from employment with Defendant Pacira. See generally Verified Complaint ("Compl."), ECF No. 1. Plaintiff claims that during the course of her employment at Pacira, she was subjected to a hostile work environment and was ultimately discharged on the basis of her sex and in retaliation for raising complaints of discrimination.

**A.  Plaintiff's Employment with Pacira**

Plaintiff is a female of Indian descent. Pl. SMF ¶ 1; Defs. Resp. SMF ¶ 1. She began working for Pacira, a specialty pharmaceutical company, in April 2014. Defs. SMF ¶¶ 1, 22; Pl. Resp. SMF ¶¶ 1, 22. In 2016, Plaintiff was promoted to Senior Surgical Account Specialist, a

---

[1] Unless otherwise noted, the following facts are not in dispute and are drawn from Defendants' Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment ("Defs. SMF"), ECF No. 86.1, Plaintiff's Response to Defendants' Corrected Statement of Undisputed Material Facts in Opposition to Defendants' Motion for Summary Judgment ("Pl. Resp. SMF"), ECF No. 91.1, Plaintiff's Supplemental Statement of Disputed Material Facts in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl. SMF"), ECF No. 91.2, Defendants' Reply to Plaintiff's Supplemental Statement of Disputed Facts ("Defs. Resp. SMF"), ECF No. 94.1 at 15-34, and the relevant record. The Court notes that Defendants also submitted a reply to Plaintiff's responses to Defendants' own statement of undisputed material facts. See ECF No. 94.1 at 2-15. "Replies to an opponent's response to a movant's statement of undisputed material facts are not permitted by Local Rule 56.1," and courts routinely disregard them. Paige v. City of New Brunswick, No. 13-2298, 2015 WL 3452480, at *2 n.2 (D.N.J. May 29, 2015); see also Local R. 56.1(a). Accordingly, the Court will disregard that portion of Defendants' reply submission.

position she held until her termination in March 2018. Defs. SMF ¶ 22; Pl. Resp. SMF ¶ 22; Pl. SMF ¶ 108; Defs. Resp. SMF ¶ 108. At the time of her termination, she reported directly to Regional Business Director Roxanne Doherty. Defs. SMF ¶ 13; Pl. Resp. SMF ¶ 13. Defendant Reiser was a second-level manager to Plaintiff and Defendant Murphy was a third-level manager to Plaintiff. Defs. SMF ¶¶ 10, 12; Pl. Resp. SMF ¶¶ 10, 12. It is undisputed that Plaintiff was a high-performing employee while at Pacira, routinely receiving positive reviews. Pl. SMF ¶¶ 3-4; Defs. Resp. SMF ¶¶ 3-4.

### B. Plaintiff's 2016 Hostile Work Environment Sexual Harassment Allegations

The events giving rise to this action began in or around 2016. Plaintiff claims that during that period, two male colleagues sexually harassed her. Specifically, she alleges that Surgical Sales Associate Brandon Christenson inappropriately touched her on two separate occasions. Pl. SMF ¶ 15; Defs. Resp. SMF ¶ 15; Defs. SMF ¶ 41; Pl. Resp. SMF ¶ 41. On the first occasion, he allegedly put his hand under Plaintiff's skirt. Pl. SMF ¶ 15; Defs. Resp. SMF ¶ 15. On the second, he allegedly touched Plaintiff's backside. Pl. SMF ¶ 17; Defs. Resp. SMF ¶ 17. Plaintiff further testified that he frequently made comments to her about her appearance, such as "you look so hot today" or "you look delicious." Pl. SMF ¶ 17; Defs. Resp. SMF ¶ 17; Deposition of Reshma Abell ("Pl. Dep.") Tr. at 66:24-67:6, ECF Nos. 91.4 at Ex. 2, 94.2 at Ex. 22. In addition, Plaintiff claims that Surgical Sales Associate Justin Sherrod touched her "too low" on multiple occasions and frequently joked that the reason Plaintiff was successful was because she was in sexual relationships with her clients. Pl. SMF ¶ 18 (internal quotation marks omitted); Defs. Resp. SMF ¶ 18.

At her deposition, Plaintiff testified that she never reported any instance of sexual harassment while at Pacira and that she is "not seeking compensation for people touching me or not reporting them . . . [I]t was my choice to stay quiet." Defs. SMF ¶¶ 38, 40, 45 (internal quotation marks omitted); Pl. Resp. SMF ¶¶ 38, 40, 45.

### C. Plaintiff's Sex Discrimination and Retaliation Allegations

The allegations giving rise to Plaintiff's discriminatory discharge and retaliation claims began in or around 2017. In or around February 2017, Plaintiff proposed a new position for herself at Pacira titled "Director of Post-Op Pain Management." Defs. SMF ¶ 24; Pl. Resp. SMF ¶ 24. Murphy and Reiser agreed to allow Plaintiff perform the duties of this proposed role as a "pilot" program, and discussions of a promotion continued into 2018. Defs. SMF ¶ 24; Pl. Resp. SMF ¶ 24; Pl. SMF ¶¶ 9-10; Defs. Resp. SMF ¶¶ 9-10.

From February 11, 2018 to February 15, 2018, Plaintiff attended Pacira's annual National Sales Meeting in Orlando, Florida. Defs. SMF ¶ 54; Pl. Resp. SMF ¶ 54. One of the events scheduled for February 13, 2018 was a Women's Leadership Initiative dinner, which was purportedly planned by Chief Administrative Officer Kristen Williams. Defs. SMF ¶¶ 55-56; Pl. Resp. SMF ¶¶ 55-56; Deposition of Richard Kahr ("Kahr Dep.") Tr. at 233:4-11, ECF Nos. 82.3 at Ex. 4, 91.4 at Ex. 3, 94.2 at Ex. 23. The dinner, however, was optional, and Plaintiff instead decided to attend a team-building event at Topgolf to discuss her pilot program with regional managers who would be in attendance. Defs. SMF ¶¶ 57, 60; Pl. Resp. SMF ¶¶ 57, 60; Pl. SMF ¶ 52; Defs. Resp. SMF ¶ 52. The Topgolf event was organized by regional managers Gio Vendemia and Robert Rock. Defs. SMF ¶ 60; Pl. Resp. SMF ¶ 60. According to Plaintiff, when she spoke to Rock about attending the Topgolf event, Rock informed her that "it's only for boys." Pl. SMF ¶ 56 (internal quotation marks omitted); Defs. Resp. SMF ¶ 56. Plaintiff also requested

permission to attend the event from Vendemia, who told her that "anybody can attend." Pl. SMF ¶ 57 (internal quotation marks omitted); Defs. Resp. SMF ¶ 57.

Plaintiff claims that when she arrived at the venue, Rock "stormed over to [her] and began questioning why she attended the TopGolf event instead of the Women's Leadership Initiative dinner." Pl. SMF ¶ 63; Defs. Resp. SMF ¶ 63. The two proceeded to exchange words for approximately three or four minutes, with both Rock and Plaintiff raising their voices and using profanity. Pl. SMF ¶ 64; Defs. Resp. SMF ¶ 64. Reiser was present at the event but claimed to have entered just as Plaintiff and Rock's verbal exchange concluded. Pl. SMF ¶ 70; Defs. Resp. SMF ¶ 70. He nevertheless was made aware of the incident and reported it to both Murphy and Human Resources. Defs. SMF ¶¶ 64-65; Pl. Resp. SMF ¶¶ 64-65. Murphy also reported the incident to Human Resources. Defs. SMF ¶ 65; Pl. Resp. SMF ¶ 65. Plaintiff herself spoke to Doherty, her direct supervisor, about the incident later that evening. Pl. SMF ¶ 69; Defs. Resp. SMF ¶ 69; see also ECF No. 82.5 at 3, 13. Following the Topgolf incident, Rock left the National Sales Meeting and resigned. Defs. SMF ¶ 67; Pl. Resp. SMF ¶ 67. He later returned to Pacira and admitted that resigning was an emotional reaction. Defs. SMF ¶ 67; Pl. Resp. SMF ¶ 67.

After receiving reports about the Topgolf incident, Defendant Kahr, the Vice President of Human Resources, conducted an investigation. Defs. SMF ¶¶ 8, 68; Pl. Resp. SMF ¶¶ 8, 68. Over the course of his investigation, Kahr interviewed Plaintiff, Rock, Vendemia, and other individuals Plaintiff named as witnesses, including Doherty, Pat Nolan, Isaac Smolko, and Steve Huddy. Defs. SMF ¶ 72; Pl. Resp. SMF ¶ 72. During her February 21, 2018 interview with Kahr, Plaintiff stated that Rock told her before the event that she could not attend because it was a "boy's night out." Defs. SMF ¶ 73 (internal quotation marks omitted); Pl. Resp. SMF ¶ 73; ECF No. 82.5 at 2. She further stated that she did not feel welcome "because she was a woman." Defs. SMF ¶ 73; Pl. Resp. SMF ¶ 73. When Kahr interviewed Rock, Rock denied making any gender-based remarks to Plaintiff. Defs. SMF ¶ 74; Pl. Resp. SMF ¶ 74. According to Rock, he informed Plaintiff that she could not attend because the reservations were already booked and it was a "closed" group. Defs. SMF ¶ 74 (internal quotation marks omitted); Pl. Resp. SMF ¶ 74. He stated that he had also declined to allow a male colleague attend for the same reason. Defs. SMF ¶ 74; Pl. Resp. SMF ¶ 74. Kahr admitted that he did not "look[] into whether . . . [Plaintiff's] gender played any part in the conflict between [Rock] and [Plaintiff]" during his investigation. Kahr Dep. Tr. at 190:4-8.

During Kahr's investigation into the Topgolf incident, four individuals—Rock, Doherty, Seth Whaley, and Steve Huddy—informed Kahr about a second, unrelated incident involving Plaintiff at the National Sales Meeting. ECF No. 82.3 at 261; ECF No. 82.5 at 12-13; Declaration of Seth Whaley ("Whaley Decl.") ¶ 7, ECF No. 86.3. According to them, Plaintiff showed or attempted to show several colleagues, including Whaley, Huddy, and Doherty, images from the Kama Sutra depicting people engaged in sexual positions during a meeting break. ECF No. 82.5 at 12-13; Whaley Decl. ¶ 5. Plaintiff also reportedly stated that her "people invented" the Kama Sutra. ECF No. 82.5 at 12; Whaley Decl. ¶ 5.

On March 13, 2018, Kahr contacted Plaintiff to follow up on the issues that arose at the National Sales Meeting. ECF No. 82.5 at 15-16. Kahr told Plaintiff that he had concluded his investigation into the Topgolf incident and found that while Plaintiff's and Rock's "interactions created an unnecessary distraction to others at the meeting," there was no basis for taking disciplinary action for that incident. Id. at 15. Kahr then asked Plaintiff to respond to claims made by multiple individuals that Plaintiff had opened a "Kamasutra app on her phone and asked others

3

around her to look at it" while on a break from a meeting. Id. Plaintiff admitted to viewing the website but stated that "she didn't go out of her way to show the website to others at the meeting." Id. She further stated that she had opened the application for less than ten minutes and only recalled showing it to two people. Id. When Kahr "asked [Plaintiff] if she understood that this incident was inappropriate," Plaintiff "responded yes." Id. At her deposition, Plaintiff testified that she had received a message from a client that, unbeknownst to her, contained cartoon images depicting the religious text Kama Sutra. Pl. SMF ¶ 112; Defs. Resp. SMF ¶ 112. According to Plaintiff, she only viewed the message for a couple of seconds before Dave Heritage took her phone from her hand. Pl. SMF ¶ 114; Defs. Resp. SMF ¶ 114. Heritage then allegedly showed the phone to Mike Massicotte, who in turn attempted to show it to Doherty. Pl. SMF ¶¶ 114-17; Defs. Resp. SMF ¶¶ 114-17. Kahr testified that he was not made aware of the fact that Massicotte and Heritage had also allegedly viewed and shared the images at the National Sales Meeting. Kahr Dep. Tr. at 231:25-232:3. During their call, Plaintiff asked Kahr if she could apologize to anyone who had complained to Human Resources or had been offended by the images. Pl. Dep. Tr. at 14:13-15. She also offered to provide the images to Kahr so that he could see their "religious context." Pl. Dep. Tr. at 14:8-22. Kahr declined both of Plaintiff's requests. Pl. Dep. Tr. at 14:13-22.

Kahr also spoke with Rock on March 13, 2018. ECF No. 82.5 at 14. Murphy was present on the call. Id. During the call, Kahr informed Rock that Rock and Plaintiff's interpersonal conflict at the Topgolf event did not warrant disciplinary action. Id. Murphy then explained that "what was of significant concern" was Rock's resignation without notice after the incident. Id. Murphy stated that Rock had "lost credibility with [the] management team" due to his behavior. Id. As a result, Pacira terminated Rock's employment, effective immediately. Id.

The following day, on March 14, 2018, Kahr and Murphy called Plaintiff to discuss the Kama Sutra incident. ECF No. 82.5 at 17. According to Kahr's notes from the call, Kahr told Plaintiff that "her sharing of an inappropriate website while at the National Sales Meeting . . . was unacceptable conduct" that Pacira "cannot support." Id. As a result, Pacira would be terminating her employment, effective immediately. Id. The decision to terminate Plaintiff was made collectively by Kahr, Williams, and Chief Legal Officer Tony Malloy. Kahr Dep. Tr. at 226:23-227:10.

### D. Procedural History

Plaintiff filed this action on November 28, 2018 against Pacira, Kahr, Murphy, Reiser, Dave Stack ("Stack"), Dennis McLoughlin ("McLoughlin"), Paul Ciavolella ("Ciavolella"), Joyce Davis ("Davis"), and Matt Lehmann ("Lehmann"). See Compl. The Complaint alleged five causes of action: (1) sex discrimination under the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1 to 10:5-49 ("NJLAD") ("Count I"); (2) hostile work environment sexual harassment under the NJLAD ("Count II"); (3) retaliation under the NJLAD ("Count III"); (4) violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A. §§ 34:19-1 to 34:19-8 ("CEPA") ("Count IV"); and (5) violation of § 922(a) of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6(h)(1)(B)(i) ("Dodd-Frank") ("Count V"). Compl. ¶¶ 93-127. Thereafter, the defendants filed a motion to dismiss and Plaintiff voluntarily dismissed Count V. See ECF Nos. 26, 32. By Order dated July 31, 2019, the Court dismissed Count I against Stack, McLoughlin, Ciavolella, Davis, and Lehmann, Count II against all of the individual defendants, Count III against Stack, McLoughlin, Ciavolella, Davis, and

4

Lehmann, and Count IV against Stack, Davis, and Lehmann. ECF No. 37. On May 6, 2021, Plaintiff voluntarily dismissed all claims against McLoughlin and Ciavolella. ECF No. 80.

On May 7, 2021, Defendants moved for summary judgment on the remainder of Plaintiff's claims. See ECF No. 82. In her opposition to Defendants' motion, Plaintiff voluntarily withdrew her Count IV CEPA claim. ECF No. 91 at 12 n.4. Accordingly, the only remaining claims in this action are: (1) sex discrimination under the NJLAD against Pacira, Kahr, Murphy, and Reiser; (2) hostile work environment sexual harassment under the NJLAD against Pacira; and (3) retaliation under the NJLAD against Pacira, Kahr, Murphy, and Reiser.

## I. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

## III. ANALYSIS

### A. Sex Discrimination (Count I)

Defendants argue that they are entitled to summary judgment on Count I because Plaintiff cannot establish that she was terminated from Pacira because of her sex. See ECF No. 82.1 at 13-22. The Court agrees.

NJLAD sex discrimination claims are governed "by the three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." Tourtellotte v. Eli Lilly & Co., 636 F. App'x 831, 841 (3d Cir. 2016). Under the McDonnell Douglas framework, the plaintiff must "first establish a prima facie case of discrimination." Id. at 842. If the plaintiff satisfies this initial burden, "the burden then shifts to the employer to articulate a legitimate, . . . nondiscriminatory reason for its actions." Id. If the employer does so, "the burden then shifts back to the plaintiff to prove that the employer's . . . nondiscriminatory explanation is merely a pretext for the discrimination." Id.

To establish a prima facie case of sex discrimination, the plaintiff must demonstrate: "(1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination." Id. "Evidence of discrimination is commonly presented in the form of evidence of disparate treatment, whereby a plaintiff shows that [he or she] was treated less favorably than similarly situated employees of a different" gender. Didier v. Dow Jones Co., No. 13-0176, 2014 WL 4094920, at *6 (D.N.J. Aug. 18, 2014) (internal citation and quotation marks omitted). Individuals are "similarly situated" if they "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it." Murray-Sims v. N.J. Transit Corp., No. 12-1821, 2014 WL 6991906, at *16 (D.N.J. Dec. 10, 2014) (internal citation and quotation marks omitted).

5

Here, Plaintiff has not proffered sufficient evidence from which a reasonable jury could conclude that she was terminated on the basis of her sex. Plaintiff argues that she was treated less favorably than two similarly situated male employees—Massicotte and Heritage—because she was terminated for viewing the Kama Sutra images while neither Massicotte nor Heritage was disciplined for engaging in similar conduct. See ECF No. 91 at 9. What Plaintiff's argument ignores, however, is that there is no evidence that anyone ever notified a supervisor or Human Resources of Massicotte or Heritage's involvement in the incident, despite having the opportunity to do so. Indeed, Plaintiff appears to have first identified Massicotte and Heritage as the individuals responsible for showing the images to others during her September 15, 2020 deposition—more than two years after her termination on March 14, 2018. She expressly admitted that she was not aware of anyone who complained about them to Human Resources, Pl. Dep. Tr. at 236:16-18, and the record is devoid of any complaints raised about Massicotte's and Heritage's conduct during Plaintiff's tenure at Pacira. In Plaintiff's March 13, 2018 statement to Kahr during his investigation, she conceded that she showed the website to two people. ECF No. 82.5 at 15. When Kahr asked "if she had anything else to add around this issue," Plaintiff made no mention of Massicotte or Heritage. Id. at 15-16. Similarly, in Doherty and Huddy's statements to Kahr, they only identified Plaintiff as the person who had viewed and showed or attempted to show the images to others. Id. at 12-13. As there is no evidence that Massicotte and Heritage's alleged involvement in the incident was ever brought to any supervisor's or Human Resources' attention, the Court cannot say that Massicotte and Heritage were sufficiently similarly situated to Plaintiff "without such differentiating or mitigating circumstances that would distinguish . . . [Pacira's] treatment of them." Murray-Sims, 2014 WL 6991906, at *16 (internal citation and quotation marks omitted).

Furthermore, Plaintiff's contention that Kristen Williams's involvement in the decision to terminate her constitutes evidence of unlawful sex discrimination is unpersuasive. ECF No. 91 at 24. Plaintiff argues that there was "no clear rationale for Williams'[s] involvement" other than the fact that Plaintiff decided not to attend the Women's Leadership Meeting that Williams planned. Id. This argument rests entirely on speculation and is not supported by the record. Indeed, as Kahr explained during his deposition, the decision to terminate Plaintiff was made collectively by Human Resources and Pacira's legal department, which both report to Williams. Kahr Dep. Tr. at 227:2-10, 228:25-229:3, ECF No. 82.3 at Ex. 4. It thus was rational for Williams, as Pacira's Chief Administrative Officer, to be involved in a personnel decision. Accordingly, because "[s]peculations, generalities, and gut feelings, however genuine, do not allow for an inference of discrimination to be drawn when they are not supported by specific facts," Plaintiff has not met her prima facie burden to show that her termination occurred because of her sex. Chambers v. Heidelberg USA, Inc., No. 04-583, 2006 WL 1281308, at *4 (D.N.J. May 5, 2006). Therefore, the Court grants Defendants' motion for summary judgment as to Count I.[2]

### B. Hostile Work Environment Sexual Harassment (Count II)

Defendants argue that summary judgment is appropriate on Plaintiff's hostile work environment sexual harassment claim because: (1) Plaintiff has not established that the

---

[2] In her opposition, Plaintiff also argues that the close temporal proximity between her complaints and her termination is evidence of unlawful sex discrimination. See ECF No. 91 at 14-15. As Plaintiff principally relies on cases involving retaliation claims to support her position, this argument is more appropriately suited to Plaintiff's retaliation claim, which is a distinct cause of action separate from her sex discrimination claim. Thus, the Court will address Plaintiff's temporal proximity argument in its discussion of her retaliation claim infra.

complained-of conduct was severe or pervasive; (2) Plaintiff never reported certain alleged instances of sexual harassment; and (3) Pacira took prompt and effective remedial action in response to the Topgolf incident. See ECF No. 82.1 at 22-29. The Court agrees.

To state a claim for hostile work environment sexual harassment under the NJLAD, a plaintiff must demonstrate that "the complained-of conduct (1) would not have occurred but for the employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." Lehmann v. Toys R Us, Inc., 132 N.J. 587, 603-04 (1993) (emphasis in original). The latter three elements are "interdependent." Id. at 604. To determine whether a work environment is hostile or abusive, "[c]ourts must consider the frequency or severity of the conduct, whether the conduct was physically threatening or humiliating, or merely an offensive utterance and whether the conduct unreasonably interfered with plaintiff's work performance." Jackson v. Gannett Co., No. 08-6403, 2011 WL 3362154, at *5 (D.N.J. Aug. 3, 2011). An employer can be held "liable for a co-worker's harassing conduct only if management-level employees knew, or in the exercise of reasonable care should have known, about the campaign of harassment." Nuness v. Simon & Schuster, Inc, 221 F. Supp. 3d 596, 603-04 (D.N.J. 2016) (internal citation and quotation marks omitted). "[T]he plaintiff must show that the employer failed to provide a reasonable avenue for complaint or was aware of the alleged harassment and failed to take appropriate remedial action." Id. at 604.

Here, Plaintiff has not proffered sufficient evidence to sustain a hostile work environment claim. In her opposition, Plaintiff specifically identifies the following instances of sexual harassment: (1) Christensen allegedly touching her inappropriately and commenting on her appearance; (2) Sherrod allegedly touching her "too low" and joking that the reason Plaintiff was successful was because she was in sexual relationships with her clients; and (3) Rock's behavior during the Topgolf incident. See ECF No. 91 at 30; Pl. SMF ¶¶ 15-18. As an initial matter, it is undisputed that Plaintiff testified at her deposition that she never reported any instance of sexual harassment while at Pacira and that she is "not seeking compensation for people touching me or not reporting them." Defs. SMF ¶¶ 38, 40, 45 (internal quotation marks omitted); Pl. Resp. SMF ¶¶ 38, 40, 45. Thus, Plaintiff's claim, more focused, appears to rest on Christensen's and Sherrod's comments and the Topgolf incident. These remaining allegations, however, do not rise to the level of an actionable hostile work environment. Courts have repeatedly emphasized that the NJLAD "is not a general civility code," Beaman-Bates v. Acme Mkts., Inc., No. 17-5581, 2020 WL 3287128, at *6 (D.N.J. June 18, 2020) (internal citation and quotation marks omitted), and summary judgment has been granted in cases involving similar allegations. See Clayton v. City of Atl. City, 538 F. App'x 124, 127, 129 (3d Cir. 2013) (affirming grant of summary judgment on NJLAD hostile work environment claim where, "although rude and distasteful," no reasonable jury could find that grabbing of plaintiff's buttocks and "lewd remarks" about plaintiff, such as "'which one of those guys is hitting her in the ass tonight,'" was sufficiently "severe or pervasive [conduct] as to render [her] work environment hostile"); Stefanoni v. Bd. of Chosen Freeholders of Cnty. of Burlington, 65 F. App'x 783, 784, 786 (3d Cir. 2003) (finding two instances of physical contact and five compliments about plaintiff's hair and perfume over nearly two-year period insufficient to support NJLAD hostile work environment claim).

In addition, summary judgment is appropriate on Plaintiff's hostile work environment claim because there is insufficient evidence to hold Pacira liable for the complained-of conduct. As noted above, Plaintiff concedes that she never reported Christensen's or Sherrod's behavior

7

while at Pacira, despite having been aware of Pacira's sexual harassment reporting procedures. Defs. SMF ¶¶ 16, 19, 38, 40, 45; Pl. Resp. SMF ¶¶ 16, 19, 38, 40, 45. Although she claims that she did not report their conduct because her supervisors told her "if she wanted to stay employed and succeed at Pacira, she should not complain to HR about anything," ECF No. 91 at 31, this assertion is belied by the record. Indeed, Plaintiff admitted at her deposition that she had raised complaints about other issues, including compensation, to superiors at Pacira even though she feared being terminated. Pl. Dep. Tr. at 284:12-21. Moreover, Murphy—one of the supervisors that Plaintiff claims discouraged her from raising complaints—actually reported the Topgolf incident to Human Resources himself. Pl. SMF ¶ 30; Defs. SMF ¶ 65; Pl. Resp. SMF ¶ 65. Within days of receiving the reports about the Topgolf incident, Kahr launched an investigation, during which time he interviewed at least seven witnesses. Defs. SMF ¶ 72; Pl. Resp. SMF ¶ 72. Plaintiff does not identify with specificity any instances of harassment that occurred after Kahr began his investigation into the Topgolf incident. On this record, the Court finds that Plaintiff has not raised a triable issue of fact as to the existence of a hostile work environment. Therefore, the Court must grant summary judgment on Count II.

### C. Retaliation (Count III)

Defendants contend that they are entitled to summary judgment on Count III because Plaintiff cannot establish a prima facie case of retaliation or that the stated reason for her termination was pretextual. The Court disagrees.

"To survive summary judgment on a claim of retaliation under the NJLAD . . . the plaintiff must again look to the McDonnell Douglas burden-shifting framework." Ferren v. Foulke Mgmt. Corp., No. 15-3721, 2017 WL 634511, at *5 (D.N.J. Feb. 16, 2017). To state a prima facie case of retaliation, "an employee must show by a preponderance of the evidence that (1) he or she engaged in protected activity known to the employer; (2) he or she thereafter was subjected to an adverse employment decision by the employer[]; and (3) there was a [causal] link between the protected activity and adverse employment decision." Oji v. Gannett Fleming, Inc., No. 11-7206, 2015 WL 1137974, at *4 (D.N.J. Mar. 13, 2015) (quoting Joseph v. N.J. Transit Rail Operations, 586 F. App'x 890, 893 (3d Cir. 2014)). "Once a prima facie case for retaliation is established, the burden of production shifts to the employer to articulate a legitimate reason for the adverse employment action . . . Plaintiff must then show that a retaliatory intent, not the proffered reason, motivated defendant's actions." Velcko v. Saker Shoprites, Inc., No. 15-1217, 2016 WL 4728106, at *8 (D.N.J. Sept. 9, 2016) (internal citations and quotation marks omitted). "A showing of pretext requires that Plaintiff 'demonstrate weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions from which a reasonable juror could conclude that the Defendants' explanation is unworthy of credence, and hence infer that the employer did not act for the asserted [non-retaliatory] reasons.'" Andre v. Lourdes Cardiology Servs., No. 18-03183, 2021 WL 3879075, at *5 (D.N.J. Aug. 31, 2021) (quoting Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 262 (3d Cir. 2017)).

At this stage, Plaintiff has satisfied her prima facie burden. As to the first element, Defendants argue that Plaintiff did not engage in protected activity because Kahr did not perceive Plaintiff's statements regarding Rock's behavior to be a "gender-based" complaint. ECF No. 82.1 at 30. This argument is unpersuasive. At a minimum, Plaintiff has established a triable issue of fact as to whether her February 21, 2018 statements to Kahr amounted to a complaint of gender discrimination, particularly in view of the fact that she told Kahr: (1) Rock told her she could not attend the Topgolf event because "it was a boy's night out"; (2) "[s]he did not understand why she

8

was not welcomed at the golfing event, simply because she was a woman"; and (3) she questioned whether Rock's behavior toward her "was a guy thing or a Rob thing." ECF No. 82.5 at 2-3. Plaintiff has also met her burden as to the second element because it is undisputed that her termination qualifies as an adverse employment action.

As to the third element, the record contains sufficient evidence from which a jury could reasonably find a causal connection between the alleged protected activity and adverse employment action. Plaintiff was terminated on March 14, 2018—approximately three weeks after her statements to Kahr. Courts have found times periods of three to four weeks between a protected activity and a subsequent adverse employment action "suggestive" of retaliation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 285 (3d Cir. 2000) (finding three- to four-week period between protected activity and termination "suggestive" of retaliation under Title VII);[3] see also LaFranco v. Avaya Inc., 2009 WL 2850747, at *9 (N.J. Super. Ct. App. Div. Sept. 8, 2009) (noting that "[t]emporal proximity alone is sufficient to establish [a] causal link" under the NJLAD). Moreover, courts have allowed NJLAD retaliation claims to proceed to trial where, as here, "mere days passed after Plaintiff complained of harassment and before Defendants began to investigate Plaintiff's workplace conduct." Oji, 2015 WL 1137974, at *5. Here, shortly after Plaintiff's February 21, 2018 statements to Kahr, Kahr began investigating Plaintiff's own behavior at the National Sales Meeting concerning the Kama Sutra images. There is also evidence to suggest that Kahr's investigation into Plaintiff's conduct was deficient, as he admittedly did not even view the images or research their religious significance before deciding to terminate Plaintiff. See Kahr Dep. Tr. at 202:18-22, 203:19-22.

In addition, there are genuine issues of material fact as to whether Defendants' proffered reason for terminating Plaintiff was legitimate, nonretaliatory, and nonpretextual. According to Defendants, Plaintiff was terminated for "viewing sexually explicit material at the [National Sales Meeting] which three employees complained of." ECF No. 82.1 at 34. However, it is undisputed that the images at issue derive from the Kama Sutra, which Plaintiff asserts is a religious text. Pl. SMF ¶ 112; Defs. Resp. SMF ¶ 112. As explained above, Kahr concedes that he did not even view the images or conduct any due diligence into their religious significance before Plaintiff's termination. See Kahr Dep. Tr. at 202:18-22, 203:19-22. How can Defendants claim that they properly investigated and that Plaintiff's conduct warranted termination when Kahr admittedly failed to independently review the images at issue despite Plaintiff offering him an opportunity to do so? Such factual issues preclude summary judgment.

### D. Aiding and Abetting Liability

Defendants next contend that Plaintiff has failed to present sufficient evidence to hold Murphy, Reiser, or Kahr individually liable for any NJLAD violation under an aiding and abetting theory. See ECF No. 82.1 at 40-42. The Court agrees as to Murphy and Reiser but will permit the claim to proceed against Kahr.

As an initial matter, the Court notes that for an individual to be held liable for aiding and abetting, "the employer must first be found liable." White v. Smiths Detection, Inc., No. 10-4078, 2011 WL 1466160, at *5 (D.N.J. Apr. 15, 2011). Because the Court has dismissed Plaintiff's

---

[3] "[C]ourts generally apply the same basic principles to claims brought under Title VII and the NJLAD." Wilson v. New Jersey, No. 16-7915, 2019 WL 5485395, at *4 (D.N.J. Oct. 25, 2019); see also McKenna v. Pac. Rail Serv., 32 F.3d 820, 827 (3d Cir. 1994) ("The New Jersey Supreme Court has generally looked to standards developed under federal anti-discrimination law for guidance in construing the LAD.") (citing Lehmann, 132 N.J. at 600).

underlying sex discrimination claim, the only claim on which Murphy, Reiser, and Kahr could be potentially held liable under an aiding and abetting theory is the NJLAD retaliation claim.

Under the NJLAD, "an employee is liable as an aider or abettor if a plaintiff can show that "(1) the party whom the defendant aids perform[s] a wrongful act that causes an injury; (2) the defendant [is] generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance; [and] (3) the defendant knowingly and substantially assist[s] the principal violation." Conlon v. Rutgers, No. 18-15770, 2021 WL 2905744, at *9 (D.N.J. Mar. 26, 2021) (internal citation and quotation marks omitted). "[A] supervisor can be personally liable for his own conduct under the aiding and abetting provision of the LAD," Mann v. Est. of Meyers, 61 F. Supp. 3d 508, 529 (D.N.J. 2014). However, an individual is "not liable as aider and abettor merely because they had some role, or knowledge or involvement." Failla v. City of Passaic, 146 F.3d 149, 159 (3d Cir. 1998). Courts consider the following factors to determine whether a supervisor has substantially assisted the principal violation: "(1) the nature of the act encouraged, (2) the amount of assistance given by the supervisor, (3) whether the supervisor was present at the time of the asserted harassment, (4) the supervisor's relations to the others, and (5) the state of mind of the supervisor." Bowie v. Costco Wholesale Corp., No. 16-5808, 2017 WL 3168985, at *9 (D.N.J. July 26, 2017).

Defendants contend that Kahr cannot be held individually liable because he did not have supervisory authority over Plaintiff. ECF No. 82.1 at 42. "To determine whether an offending employee qualifies as a supervisor, the Court must consider whether the power the offending employee possessed was reasonably perceived by the victim, accurately or not, as giving that employee the power to adversely affect the victim's working life." Barroso v. Lidestri Foods, Inc., 937 F. Supp. 2d 620, 633 (D.N.J. 2013) (internal citation and quotation marks omitted). "Relevant factors" in determining an individual's supervisory status "include the power to fire or demote, the power to direct job functions, and any evidence that the alleged harasser possessed influence to control the workplace or restrict the alleged victim's freedom to ignore the complained-of conduct." Here, Plaintiff has raised a triable issue of fact as to whether Kahr was a supervisor. Defendants concede that Kahr was involved in making the decision to terminate Plaintiff. Kahr Dep. Tr. at 226:23-227:10. Moreover, the record contains sufficient evidence from which a jury could find that he substantially assisted the alleged retaliation because he conducted the internal investigation and helped decide to terminate Plaintiff. Thus, the aiding and abetting claim against Kahr may proceed.

The Court finds, however, that the record cannot support aiding and abetting claims against Murphy and Reiser. Neither Murphy nor Reiser was involved in the decision to terminate Plaintiff; Murphy was merely present on the telephone call when Kahr informed Plaintiff about the termination decision. Kahr Dep. Tr. at 226:23-227:10; ECF No. 82.5 at 17. Moreover, Plaintiff does not point to specific evidence in the record to show that Murphy or Reiser otherwise participated in any alleged retaliation. Thus, Defendants are entitled to summary judgment on the aiding and abetting claims against Murphy and Reiser.

### E. Punitive Damages

Finally, Defendants argue that summary judgment is appropriate on Plaintiff's punitive damages claim because Defendants' alleged conduct was not "especially egregious." ECF No. 82.1 at 43. The Court will defer ruling on this issue until the parties have had an opportunity to submit pre-trial motions in limine on the matter.

## IV.  CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment, ECF No. 82, is **GRANTED in part** and **DENIED in part**.  Count I for sex discrimination and Count II for hostile work environment are dismissed in their entirety.  Count III for retaliation may proceed against Pacira and Kahr and is dismissed against Murphy and Reiser.

SO ORDERED.

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**