John K. Bennett, Esq. (Bar ID: 024201980)
James J. Panzini, Esq. (Bar ID: 022101990)
Pooja Bhutani, Esq. (Bar ID: 169592016)
**JACKSON LEWIS P.C.**
766 Shrewsbury Avenue
East Tower, Suite 101
Tinton Falls, New Jersey 07724
T: 732-532-6148
F: 732-842-0301
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RESHMA ABELL,<br><br>Plaintiff,<br><br>v.<br><br>PACIRA PHARMACEUTICALS, INC., DAVE STACK, individually and in his capacity as Chief Executive Officer of PACIRA PHARMACEUTICALS, INC., and RICH KAHR, PETER MURPHY, DENNIS McLOUGHLIN, PAUL CIAVOLELLA, GLENN REISER, JOYCE DAVIS, and MATT LEHMANN, in their capacities as employees of PACIRA PHARMACEUTICALS, INC.,<br><br>Defendants. | Civil Action No.:<br>2:18-cv-16509 (MCA) (AME) |

# DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1 TO PRECLUDE DEFENDANTS FROM OFFERING DEFENDANTS' PROPOSED EXHIBITS 8-17, 34, AND 35 INTO EVIDENCE

Of Counsel:
John K. Bennett, Esq.
James J. Panzini, Esq.

On the Brief:
Pooja Bhutani, Esq.

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 2

LEGAL ARGUMENT ........ 6

PLAINTIFF'S MOTION NUMBER ONE TO PRECLUDE DEFENDANTS FROM DEFENDANTS FROM OFFERING DEFENDANTS' PROPOSED EXHIBITS 8-17, 34, AND 35 INTO EVIDENCE SHOULD BE DENIED ........ 6

A. Plaintiff's Motion To Preclude Defendants' Proposed Exhibits 8-17 And 5 Should Be Denied As Premature And Fully Denied If Plaintiff Is Permitted To Offer Testimony Regarding Any Dismissed Claims ........ 6

B. Plaintiff's Motion To Preclude Defendants' Proposed Exhibit 34 Should Be Denied As Defendants Do Not Plan To Use It To Prove The "Truth Of The Matter" and It is Not Hearsay ........ 8

CONCLUSION ........ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Attanasio v. Plainfield Country Club,
2009 N.J. Super. Unpub. LEXIS 1592 (App. Div. June 18, 2009) .......... 5

Brewer v. Quaker State Oil Ref. Corp.,
72 F.3d 326 (3d Cir. 1995) .......... 5

Hawkins v. PepsiCo, Inc.,
203 F.3d 274 (4th Cir. 2000) .......... 5

Koski v. Standex Int'l Corp.
307 F.3d 672 (7th Cir. 2002) .......... 5

Singer v. Central Railroad of New Jersey,
121 N.J. 121 (1938) .......... 7

**Other Authorities**

Federal Rules of Civil Procedure 26 .......... 2, 8

Federal Rules of Evidence 401 .......... 1

Federal Rules of Evidence 402 .......... 1

Federal Rules of Evidence 403 .......... 1

Federal Rules of Evidence 801 .......... 1

Federal Rules of Evidence 612 .......... 2

# PRELIMINARY STATEMENT

The remaining Defendants, Pacira Pharmaceuticals, Inc. ("Pacira"), and Rich Kahr (collectively, "Defendants"), respectfully submit this opposition to the motion in limine submitted by Plaintiff Reshma Abell ("Plaintiff") seeking to preclude Defendants from offering Defendants' proposed Exhibits 8-17, 34, and 35 into evidence ("Motion" or "Motion No. 1"). Plaintiff seeks to preclude proposed Exhibits 8-17 which contain several emails exchanged throughout Plaintiff's tenure addressing Plaintiff's words of thanks and appreciation to her managers and issues with her behavior and/or performance, Exhibit 34 which is an email between Plaintiff and her husband regarding finances sent from Plaintiff's work email, and Exhibit 35, a declaration from Seth Whaley concerning Plaintiff's behavior at the National Sales Meeting detailing the incident which led to Plaintiff's separation. Plaintiff argues such documents should be precluded on the basis of relevance and hearsay under Federal Rules of Evidence ("F.R.E.") 401-403 and 801. With respect to the various emails specifically, Plaintiff claims the documents are irrelevant because they predate the workplace occurrence which led to her termination "and the historical workplace occurrences bear absolutely no relationship to the conduct alleged by Defendant to be the basis for Plaintiff's discharge." With respect to the declaration of Seth Whaley, Plaintiff claims the document, if used to prove the truth of the matter asserted, is inadmissible hearsay.

Plaintiff's arguments that the various emails are too far removed from the incident which led to Plaintiff's termination to be relevant are ironic because it is Plaintiff who seeks to introduce years worth of the alleged "historical background" about Plaintiff's tenure. (See Plaintiff's Motion in Limine No. 3 [ECF No., 127-1]) p. 1, n. 1, stating that Plaintiff seeks to introduce "historical conduct which occurred at Pacira during her tenure," such as sexual harassment and sex discrimination (which are dismissed claims in this lawsuit), in order to "establish the culture which is the backdrop to the occurrences which give rise to Plaintiff's claims asserted in this lawsuit."). If Plaintiff is permitted to introduce her theories of historical conduct, including that of the summarily dismissed sexual harassment and sex discrimination claims, then it is Plaintiff that opens the door to the various emails detailing Plaintiff's

praise for management and prior issues with her behavior and performance, including instances where she behaved unprofessionally during her tenure. Notwithstanding this argument, as Plaintiff contends in this lawsuit that she consistently had stellar performance and Defendants retaliated against her, the emails relating to her positive views about management and examples of Plaintiff's behavioral issues during her employment are also relevant to rebut her allegations in this lawsuit.

Plaintiff's arguments that Whaley's declaration should be excluded on the basis of hearsay is also moot as Defendants do not plan to introduce the declaration for the "truth of the matter," but only as to Whaley's state of mind and to refresh his recollection under F.R.E. 612, as needed.

Therefore, Plaintiff's motion is premature until Defendants' motion in limine which seeks to exclude evidence of Plaintiff's dismissed sexual harassment and sex discrimination claims is decided. If the Court permits testimony by Plaintiff regarding her dismissed sexual harassment and sex discrimination claims, then Plaintiff's foregoing Motion should be denied as Defendants will also require proposed Exhibits 8-17 and 35 to rebut Plaintiff's allegations about her behavior and the work environment during her tenure. Plaintiff's motion should be denied as to proposed Exhibit 34 in either case as it will not be used to prove the "truth of the matter" and therefore is not considered hearsay.

Moreover, Defendants reserve the right to use these proposed exhibits to refresh recollection under F.R.E. 612 and as impeachment evidence under the Federal Rules of Civil Procedure 26(a)(3).

## BACKGROUND

Nearly three full pages of Plaintiff's ten-page Motion is dedicated to providing a one-sided, exaggerative "history" of Plaintiff's sole-remaining retaliation claim. The alleged "history" is neither related to the retaliation claim, nor accurate.

Specifically, Plaintiff details that she had been subjected to workplace harassment and illegal gender discrimination including when she was "accosted" by a male colleague, Rob Rock, at a TopGolf event during Pacira's National Sales Meeting ("NSM") in February 2018 and fired three weeks later "as

a direct result of the investigation into her complaints." (See Plaintiff's moving papers ("Pl. Br.") [ECF No. 125-3], Pl. Br., p. 1). Plaintiff also alleges the Human Resources investigation led by Kahr which commenced as a result "was a classic case of workplace retaliation" as it "ignored and downplayed Rob Rock's inappropriate conduct towards the Plaintiff and instead turns its focus from Rock, the abuser, to Plaintiff Reshma Abell, his accuser." (Id. at 2).

To be clear, there is no evidence suggesting that Plaintiff ever "complained" about being accosted by Rock at TopGolf or that she was an "accuser." (Id.). To the contrary, Plaintiff admitted getting into a "yelling match" with Rock at TopGolf, and it was Rock and other members of management who reported the TopGolf incident to Human Resources. (See Plaintiff's Complaint [ECF No.1], ¶¶ 44-45, 48). When Kahr interviewed Plaintiff during the resulting investigation, he did not understand Plaintiff to be complaining about gender or sex discrimination, and his notes from the meeting seemingly support his understanding as they indicate Plaintiff stated she never played the "woman card." (See relevant excerpts of Kahr's deposition testimony at Kahr Dep., at 190:15-191:13, and Kahr's investigation notes demarcated Pacira 000071-73, attached as Exhibits A and B to the accompanying Declaration of James J. Panzini ("Panzini Decl.")). Such theory has changed in this lawsuit. Moreover, it is patently untrue that Rock's conduct was "ignored and downplayed" as Plaintiff fails to acknowledge that during the course of the investigation, Kahr also investigated Rock's conduct, and Defendants made the decision to terminate Rock based on his actions surrounding the TopGolf incident. (See relevant excerpts of Kahr's deposition testimony at Kahr Dep., at 240:7-18, and Kahr's termination notes demarcated Pacira 000083, attached as Exhibits A and C, respectively, to the Panzini Decl.).

Additionally during the investigation, other employees reported being made uncomfortable by Plaintiff because Plaintiff viewed and displayed sexual graphics depicting various sexual positions derived from the Kama Sutra to other employees at the NSM. (See relevant excerpts of Whaley's deposition testimony at Whaley Dep., at 28:12-34:5, 34:21-35:2, 37:2-38:5, 41:9-25, 42:22-43:23), and

Kahr's interview notes demarcated Pacira 000081-82, attached as Exhibits D and E, respectively, to the Panzini Decl.). Plaintiff also announced this was how she "gets through meetings" and "Indians invented sex." (Id., at Ex. D). Plaintiff may disagree that this conduct warranted a separate investigation, but in the face of reports by more than one employee, Defendants were required to also address these concerns. In doing so, Kahr advised Plaintiff of the allegations against her, and Plaintiff admitted the conduct. (See Kahr's interview notes demarcated Pacira 000084-85 and relevant excerpts of Abell's deposition testimony at Abell Dep., at 14:8-10, 16:22-25, 219:3-6, attached as Exhibits F and G, respectively, to the Panzini Decl.).

Plaintiff now theorizes that she only admitted to personally looking at the Kama Sutra while at the NSM, and that it was not she, but rather two male, colleagues who grabbed her phone to display the sexual images to others. This "theory" of the "two males, not Plaintiff, displaying the images," like many other changing theories asserted by Plaintiff in this case, was alleged for the first time during Plaintiff's deposition. Plaintiff admitted that "she showed her phone to "Mike and Dave," and she did not report the two males' conduct to Kahr at the time of the investigation. (See relevant excerpts of Abell's deposition testimony at Abell Dep., at 223:2 and 236:16-18, attached as Exhibit G to the Panzini Decl.). **Thus, such allegations were not disclosed to Kahr during the investigation by Plaintiff or any other employee and were therefore not part of the decision-making process in terminating Plaintiff**.[1]

---

[1] Plaintiff chose not to depose the two men who were allegedly responsible for this conduct during the litigation.

Another of Plaintiff's theories concocted in this litigation are her attempts to minimize her own conduct as she argues: one, that the Kama Sutra images she viewed were merely "cartoons," and; two, that as Plaintiff is of Indian descent, and the Kama Sutra is an ancient Indian text, the Kama Sutra is religious and/or culturally significant to Plaintiff. Such arguments are gross understatements because graphic images of sexual positions, regardless of whether they are religious or culturally significant to Plaintiff personally, cannot be equated to the average Saturday morning "cartoon" and are not appropriate for the workplace.

Another of Plaintiff's theories is that she has been victim-shamed and subject to a faulty and/or discriminatory investigation as she claims her statements to Human Resources were ignored, while statements made by males were credited. She also seeks to assert a theory (also based on pure speculation alone and with no supporting documents), that Pacira and/or Kahr have a history of favoring male employees. Contrary to Plaintiff's claims, Kahr has consistently maintained that while he may have considered the report of Plaintiff's alleged comment to Noble as part of his investigation, he did not rely on this for the basis of his decision to terminate Plaintiff. Rather Kahr, as Plaintiff acknowledges in her Motion, admitted he had reason to believe that the document wherein the alleged statement by Plaintiff to Noble is referenced was not fully accurate. (See Pl. Br., p. 5, stating "Kahr, to his credit went on to say that he "had every reason to believe that not everything Rob said was accurate."). Thus, Plaintiff's

---

This is especially so when considering that the surrounding comments allegedly made by Plaintiff regarding the images were not based in any devout, religious observation. Indeed, the alleged comments were boastful and inappropriate, i.e., that "Indians invented sex," and viewing these images is how Plaintiff "gets through meetings." (See Ex. D to Panzini Decl.). Plaintiff, in her deposition, also admitted some variation of the "Indians invented sex" comment being made at the time. (See relevant excerpts of Abell's deposition testimony at Abell Dep., at 231:24-232:15, attached as Ex. F to the Panzini Decl.). That Plaintiff may now deny making such comments is immaterial as the decisionmaker considered these corroborated reports at the time he made the decision to separate Plaintiff's employment. The relevant perception in a discrimination case is that of the *decisionmaker* and the inquiry involves what was known to the decisionmaker at the time of making the decision. Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 331 (3d Cir. 1995) (finding that the only relevant perception in discrimination case is that of the decisionmaker) (emphasis added); Koski v. Standex Int'l Corp. 307 F.3d 672, 677 (7th Cir. 2002) (finding that the relevant inquiry is the viewpoint of the decisionmakers at the time of making the employment decision). Plaintiff's personal disagreement with decision or her opinion of her performance is immaterial. Attanasio v. Plainfield Country Club, 2009 N.J. Super. Unpub. LEXIS 1592, *17 (App. Div. June 18, 2009) ("It is important to note that the employee's personal disagreement with the employer's decision to terminate plaintiff is insufficient to prove pretext, as is the employee's subjective disagreement (or conclusory statement) in raising an issue regarding the employer's credibility."); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000) (disregarding plaintiff's opinions of her own performance and finding opinions of her co-workers similarly irrelevant). A copy of the unpublished Attanasio case is attached as Exhibit H to the Panzini Decl.

Moreover, the religious/national origin angle Plaintiff attempts to veil the Court with at the brink of trial is simply a red herring intended to distract the Court and jury **as there has never been any such cause of action asserted in this lawsuit.** Plaintiff's attempted excuse of "religious and/or cultural significance" is also the subject of one of Defendants' motions in limine.

claims that the statements of men were credited while hers was not, is patently untrue.

Despite Plaintiff's claimed theories and/or attempts to minimize her conduct, Defendants' decision to terminate Plaintiff was due to her behavior in sharing an inappropriate website which made others uncomfortable which was not something Pacira could support. This constituted an egregious violation of Pacira's values and anti-harassment policies, and a legitimate business reason for Plaintiff's separation. (See relevant excerpts of Kahr's deposition testimony at Kahr Dep., at 230:13-231:2, and Kahr's termination notes demarcated Pacira 000086, attached as Exhibits A and I, respectively, to the Panzini Decl.). While Plaintiff may personally disagree with this decision, she is unable to rebut same.

## LEGAL ARGUMENT

### I. PLAINTIFF'S MOTION NUMBER ONE TO PRECLUDE DEFENDANTS FROM OFFERING DEFENDANTS' PROPOSED EXHIBITS 8-17, 34, AND 35 INTO EVIDENCE SHOULD BE DENIED

#### A. Plaintiff's Motion To Preclude Defendants' Proposed Exhibits 8-17 And 35 Should Be Denied As Premature And Fully Denied If Plaintiff Is Permitted To Offer Testimony Regarding Any Dismissed Claims

Generally, Defendants' proposed Exhibits 8-17 and 35 are emails from 2014 to 2017 pertaining to the following: instances where Plaintiff had been subjected to coaching; details of interpersonal issues between Plaintiff and multiple colleagues, described by one colleague as a "drama vortex;" Plaintiff's professionalism during meetings; Plaintiff's communications with a colleague about partying and "sexting"; Plaintiff's handwritten note to Murphy (a second-level supervisor to Plaintiff who is a dismissed, named Defendant in this lawsuit) thanking him for "putting up" with Plaintiff and being "one of the best managers [she] ever had the privilege to work for;" Plaintiff's request to work in a pilot position, noting that she is "not looking for a raise nor a cut in my quota" (despite claiming in this lawsuit she was expected to work in a pilot position without additional compensation); emails from Plaintiff expressing thanks for her raises and equity grant awards; emails from Plaintiff expressing frustration with a particular equity grant award; a notice to Plaintiff regarding Plaintiff's failure to enter timely

reports on Pacira's databases; emails detailing Plaintiff having "irrational behavior" and "volatility," and; an email between Plaintiff and her husband via Plaintiff's Pacira email account discussing their outstanding debt.

Plaintiff seeks to categorically preclude these various emails arguing that they predate the incident which led to her termination in 2018. However, Defendants plan to introduce these various emails concerning Plaintiff's behavior and performance during her employment with Pacira if Plaintiff is permitted to introduce her theories of "historical conduct" at Pacira, including that of the sexual harassment and sex discrimination claims that this Court summarily dismissed. Plaintiff's allegations in support of these claims are her personal beliefs that she was a stellar performer, even though Pacira allegedly encouraged a culture which favored men and was discriminatory towards women, and that she was subjected to sexual harassment, sex discrimination, and retaliation during her employ. Defendants have filed a separate motion in limine to preclude Plaintiff from introducing evidence as to her dismissed sexual harassment and sex discrimination claims in light of the Court's summary dismissal of these claims to narrow the claims to be tried. If Plaintiff is permitted to introduce background concerning these dismissed claims and dismissed individually-named managers and testify as to her self-serving beliefs regarding her performance and the alleged culture, it is Plaintiff that opens the door to the Defendants' various emails which rebut Plaintiff's allegations about her behavior, the work environment, and management during her tenure. See Singer v. Central Railroad of New Jersey, 121 N.J. 121, 123 (1938) ("Either party is entitled to introduce evidence to rebut that of his adversary, and for this purpose any competent evidence to explain, repel, counteract, or disprove the adversary's proof is admissible, although it tends to support his case in chief.").

Notwithstanding this argument, the exhibits in question are also relevant as they disprove Plaintiff's claims that she had an unblemished employment history with the company and speak to her credibility in general. For example, in Plaintiff's Complaint, she alleged Pacira required Plaintiff to "do

the work of two separate jobs, without additional compensation… because she was required to be an accommodating female who was first and foremost a "team player,"' but Defendants' proposed exhibit no. 13 (bearing bates number Pacira - 000763) clearly shows Plaintiff's express request to create this position specifically for Plaintiff and her interest to work in the role without any additional compensation; contra Complaint [ECF No. 1], at ¶ 21)[2]. Therefore, Defendants respectfully reserve the right to use these exhibits solely for impeachment evidence. See Federal Rules of Civil Procedure 26(a)(3).

### B. Plaintiff's Motion To Preclude Defendants' Proposed Exhibit 34 Should Be Denied As Defendants Do Not Plan To Use It To Prove The "Truth Of The Matter" and It Is Not Hearsay

As addressed supra, Plaintiff's motion seeking to preclude Defendants from offering proposed Exhibit 34, Seth Whaley's Declaration, on the basis of "hearsay" should be denied as moot as Defendants do not intend to offer the notes in evidence to prove "the truth of the matter." (See Pl. Br., p. 6 (citing F.R.E. 801(c)).

Here, Defendants plan to use proposed Exhibit 34, Seth Whaley's Declaration, to show his state of mind and/or to refresh his recollection as needed. As these do not constitute "hearsay", Plaintiff's motion seeking to preclude the declaration should be denied as moot.

[2] For purposes of brevity, this is merely one example as to why each of Defendants' proposed exhibits represent helpful, impeachment evidence as to Plaintiff's credibility.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's Motion in limine No. 1 to preclude Defendants from introducing Defendants' Proposed Exhibits 8-17 and 35 as premature until the Court rules on Defendants' pending motion in limine concerning the admissibility of Plaintiff's dismissed claims. In the alternative, if Plaintiff is permitted to introduce evidence pertaining to her dismissed claims and dismissed individual defendants, Defendants respectfully request that Plaintiff's foregoing Motion be denied in its entirety so that Defendants have opportunity to question Plaintiff or others about evidence that may be contrary to Plaintiff's position.

Defendants respectfully request that this Court deny Plaintiff's Motion in limine No. 1 to preclude Defendants from introducing Defendants' Proposed Exhibits 34 in its entirety as the document (Seth Whaley's Declaration) will not be used to prove the "truth of the matter" and is therefore admissible.

Respectfully submitted,

**JACKSON LEWIS P.C.**
766 Shrewsbury Avenue
Tinton Falls, New Jersey 07724
T: 732-532-6148

By: */s/ James J. Panzini*
James J. Panzini
*Attorneys for Defendants*

Dated: June 6, 2023

4881-1780-9768, v. 5