John K. Bennett, Esq. (Bar ID: 024201980)
James J. Panzini, Esq. (Bar ID: 022101990)
Pooja Bhutani, Esq. (Bar ID: 169592016)
**JACKSON LEWIS P.C.**
766 Shrewsbury Avenue
East Tower, Suite 101
Tinton Falls, New Jersey 07724
T: 732-532-6148
F: 732-842-0301
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RESHMA ABELL,<br><br>Plaintiff,<br><br>v.<br><br>PACIRA PHARMACEUTICALS, INC., DAVE STACK, individually and in his capacity as Chief Executive Officer of PACIRA PHARMACEUTICALS, INC., and RICH KAHR, PETER MURPHY, DENNIS McLOUGHLIN, PAUL CIAVOLELLA, GLENN REISER, JOYCE DAVIS, and MATT LEHMANN, in their capacities as employees of PACIRA PHARMACEUTICALS, INC.,<br><br>Defendants. | Civil Action No.:<br>2:18-cv-16509 (MCA) (AME) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 3 TO PRECLUDE DEFENDANTS FROM PROVIDING ANY EVIDENCE OR TESTIMONY CONCERNING STATEMENTS ALLEGEDLY MADE TO OR ABOUT LANCE NOBLE**

Of Counsel:
John K. Bennett, Esq.
James J. Panzini, Esq.

On the Brief:
Pooja Bhutani, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................ 1

BACKGROUND ........................................................ 3

LEGAL ARGUMENT ........................................................ 7

PLAINTIFF'S MOTION NUMBER THREE TO PRECLUDE DEFENDANTS FROM PROVIDING ANY EVIDENCE OR TESTIMONY CONCERNING STATEMENTS ALLEGEDLY MADE TO OR ABOUT LANCE NOBLE SHOULD BE DENIED IF PLAINTIFF IS PERMITTED TO OFFER TESTIMONY REGARDING ANY DISMISSED CLAIMS ........................................................ 7

CONCLUSION ........................................................ 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Attanasio v. Plainfield Country Club,
2009 N.J. Super. Unpub. LEXIS 1592 .......... 5

Brewer v. Quaker State Oil Ref. Corp.,
72 F.3d 326 (3d Cir. 1995) .......... 5

Hawkins v. PepsiCo, Inc.,
203 F.3d 274 (4th Cir. 2000) .......... 5

Koski v. Standex Int'l Corp.
307 F.3d 672 (7th Cir. 2002) .......... 5

Singer v. Central Railroad of New Jersey,
121 N.J. 121 (1938) .......... 8

**Other Authorities**

Federal Rules of Civil Procedure 26 .......... 2

## PRELIMINARY STATEMENT

The remaining Defendants, Pacira Pharmaceuticals, Inc. ("Pacira"), and Rich Kahr (collectively, "Defendants"), respectfully submit this opposition to the motion in limine submitted by Plaintiff Reshma Abell ("Plaintiff") seeking to preclude Defendants from providing any evidence or testimony concerning statements allegedly made by Plaintiff to or about Lance Noble ("Motion" or "Motion No. 4").

Lance Noble's anticipated testimony at issue pertains to his personal knowledge that during Pacira's National Sales Meeting in February 2018, Plaintiff informed him: "I want you to fuck me with that big Midwestern cock." Plaintiff further seeks to preclude an email communication to Human Resources which references this comment. In support of Plaintiff's motion to preclude, Plaintiff argues that she denies informing Noble "I want you fuck me with that big Midwestern cock," and that his name only appears on one document produced in this litigation. (See Plaintiff's moving brief ("Pl. Br.") [ECF No. 127-1], p. 6). According to Plaintiff, "whether or not the Plaintiff allegedly made an ad hoc crude comment to Noble" is not relevant to any issue in this case and constitutes hearsay. (See Pl. Br., p. 5).

However, it is Plaintiff that opens the door to the Noble testimony and email at issue. Plaintiff's motion states she intends to introduce evidence of her theory that there is relevant "historical conduct which occurred at Pacira during her tenure," such as sexual harassment and sex discrimination (which are dismissed claims in this lawsuit), in order to "establish the culture which is the backdrop to the occurrences which give rise to Plaintiff's claims asserted in this lawsuit." (See Pl. Br., p. 1, n. 1). While Defendants assert such evidence should be precluded, if it is allowed, Plaintiff cannot avoid the introduction of the Noble testimony and email communication. Indeed, it is Plaintiff's theories in this case which make her alleged sexual

comment to Noble potentially relevant. This is so regardless of whether Plaintiff disputes making a sexually inappropriate comment to Noble or not. Rather, the fact that she disputes having made the comment speaks to her credibility, which is a relevant issue in this lawsuit.

Defendants have at all times maintained that Plaintiff's sexual harassment and sex discrimination claims were based solely on Plaintiff's beliefs, not any concrete evidence. This Court agreed as it summarily dismissed Plaintiff's causes of action for sexual harassment and sex discrimination to narrow the claims for trial. Defendants have filed a motion in limine seeking to exclude any evidence of these dismissed claims which bear no relevance to the remaining retaliation claim. However, if Plaintiff is permitted to introduce evidence on these dismissed claims, then Lance Noble's testimony responding as to his personal knowledge and experiences with Plaintiff engaging in other acts of sexually inappropriate conduct are relevant and admissible.

Therefore, Plaintiff's motion is premature until Defendants' motion in limine which seeks to exclude evidence of Plaintiff's dismissed sexual harassment and sex discrimination claims is decided. If the Court permits testimony by Plaintiff regarding her dismissed sexual harassment and sex discrimination claims, then Plaintiff's foregoing Motion should be denied as Defendants will also require Lance Noble as a witness to offer context to Plaintiff's assertions, and for Kahr to address, what role, if any, such statements played in Kahr's investigation and decision to separate Plaintiff. Moreover, Defendants reserve the right to uses these exhibits solely for impeachment evidence. See Federal Rules of Civil Procedure 26(a)(3).

## BACKGROUND

Nearly three full pages of Plaintiff's ten-page Motion is dedicated to providing a one-sided, exaggerative "history" of Plaintiff's sole-remaining retaliation claim. The alleged "history" is neither related to the retaliation claim, nor accurate.

Specifically, Plaintiff details that she had been subjected to workplace harassment and illegal gender discrimination including when she was "accosted" by a male colleague, Rob Rock, at a TopGolf event during Pacira's National Sales Meeting ("NSM") in February 2018 and fired three weeks later "as a direct result of the investigation into her complaints." (See Pl. Br., p. 1). Plaintiff also alleges the Human Resources investigation led by Kahr which commenced as a result "was a classic case of workplace retaliation" as it "ignored and downplayed Rob Rock's inappropriate conduct towards the Plaintiff and instead turns its focus from Rock, the abuser, to Plaintiff Reshma Abell, his accuser." (Id. at 2).

To be clear, there is no evidence suggesting that Plaintiff ever "complained" about being accosted by Rock at TopGolf or that she was an "accuser." (Id.). To the contrary, Plaintiff admitted getting into a "yelling match" with Rock at TopGolf, and it was Rock and other members of management who reported the TopGolf incident to Human Resources. (See Plaintiff's Complaint [ECF No.1], ¶¶ 44-45, 48). When Kahr interviewed Plaintiff during the resulting investigation, he did not understand Plaintiff to be complaining about gender or sex discrimination, and his notes from the meeting seemingly support his understanding as they indicate Plaintiff stated she never played the "woman card." (See relevant excerpts of Kahr's deposition testimony at Kahr Dep., at 190:15-191:13, and Kahr's investigation notes demarcated Pacira 000071-73, attached as Exhibits A and B to the accompanying Declaration of James J. Panzini ("Panzini Decl.")). Such theory has changed in this lawsuit. Moreover, it is patently untrue that Rock's conduct was "ignored and

downplayed" as Plaintiff fails to acknowledge that during the course of the investigation, Kahr also investigated Rock's conduct, and Defendants made the decision to terminate Rock based on his actions surrounding the TopGolf incident. (See relevant excerpts of Kahr's deposition testimony at Kahr Dep., at 240:7-18, and Kahr's termination notes demarcated Pacira 000083, attached as Exhibits A and C, respectively, to the Panzini Decl.).

Additionally during the investigation, other employees reported being made uncomfortable by Plaintiff because Plaintiff viewed and displayed sexual graphics depicting various sexual positions derived from the Kama Sutra to other employees at the NSM. (See relevant excerpts of Whaley's deposition testimony at Whaley Dep., at 28:12-34:5, 34:21-35:2, 37:2-38:5, 41:9-25, 42:22-43:23), and Kahr's interview notes demarcated Pacira 000081-82, attached as Exhibits D and E, respectively, to the Panzini Decl.). Plaintiff also announced this was how she "gets through meetings" and "Indians invented sex." (Id., at Ex. D). Plaintiff may disagree that this conduct warranted a separate investigation, but in the face of reports by more than one employee, Defendants were required to also address these concerns. In doing so, Kahr advised Plaintiff of the allegations against her, and Plaintiff admitted the conduct. (See Kahr's interview notes demarcated Pacira 000084-85 and relevant excerpts of Abell's deposition testimony at Abell Dep., at 14:8-10, 16:22-25, 219:3-6, attached as Exhibits F and G, respectively, to the Panzini Decl.).

Plaintiff now theorizes that she only admitted to personally looking at the Kama Sutra while at the NSM, and that it was not she, but rather two male, colleagues who grabbed her phone to display the sexual images to others. This "theory" of the "two males, not Plaintiff, displaying the images," like many other changing theories asserted by Plaintiff in this case, was alleged for the first time during Plaintiff's deposition. Plaintiff admitted that "she showed her phone to "Mike and Dave," and she did not report the two males' conduct to Kahr at the time of the investigation.

(See relevant excerpts of Abell's deposition testimony at Abell Dep., at 223:2 and 236:16-18, attached as Exhibit G to the Panzini Decl.). **Thus, such allegations were not disclosed to Kahr during the investigation by Plaintiff or any other employee and were therefore not part of the decision-making process in terminating Plaintiff**.[1]

[1] Plaintiff chose not to depose the two men who were allegedly responsible for this conduct during the litigation.

Another of Plaintiff's theories concocted in this litigation are her attempts to minimize her own conduct as she argues: one, that the Kama Sutra images she viewed were merely "cartoons," and; two, that as Plaintiff is of Indian descent, and the Kama Sutra is an ancient Indian text, the Kama Sutra is religious and/or culturally significant to Plaintiff. Such arguments are gross understatements because graphic images of sexual positions, regardless of whether they are religious or culturally significant to Plaintiff personally, cannot be equated to the average Saturday morning "cartoon" and are not appropriate for the workplace.

This is especially so when considering that the surrounding comments alleged made by Plaintiff regarding the images were not based in any devout, religious observation. Indeed, the alleged comments were boastful and inappropriate, i.e., that "Indians invented sex" and viewing these images is how Plaintiff "gets through meetings." (See Ex. D to Panzini Decl.). Plaintiff, in her deposition, also admitted some variation of the "Indians invented sex" comment being made at the time. (See relevant excerpts of Abell's deposition testimony at Abell Dep., at 231:24-232:15, attached as Ex. F to the Panzini Decl.). That Plaintiff may now deny making such comments is immaterial as the decisionmaker considered these corroborated reports at the time he made the decision to separate Plaintiff's employment. The relevant perception in a discrimination case is that of the *decisionmaker* and the inquiry involves what was known to the decisionmaker at the time of making the decision. Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 331 (3d Cir. 1995) (finding that the only relevant perception in discrimination case is that of the decisionmaker) (emphasis added); Koski v. Standex Int'l Corp. 307 F.3d 672, 677 (7th Cir. 2002) (finding that the relevant inquiry is the viewpoint of the decisionmakers at the time of making the employment decision). Plaintiff's personal disagreement with decision or her opinion of her performance is immaterial. Attanasio v. Plainfield Country Club, 2009 N.J. Super. Unpub. LEXIS 1592, *17 (App. Div. June 18, 2009) ("It is important to note that the employee's personal disagreement with the employer's decision to terminate plaintiff is insufficient to prove pretext, as is the employee's subjective disagreement (or conclusory statement) in raising an issue regarding the employer's credibility."); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000) (disregarding plaintiff's opinions of her own performance and finding opinions of her co-workers similarly irrelevant). A copy of the unpublished Attanasio case is attached as Exhibit H to the Panzini Decl.

Moreover, the religious/national origin angle Plaintiff attempts to veil the Court with at the brink of trial is simply a red herring intended to distract the Court and jury **as there has never been any**

Another of Plaintiff's theories is that she has been victim-shamed and subject to a faulty and/or discriminatory investigation as she claims her statements to Human Resources were ignored, while statements made by males were credited. She also seeks to assert a theory (also based on pure speculation alone and with no supporting documents), that Pacira and/or Kahr have a history of favoring male employees. Contrary to Plaintiff's claims, Kahr has consistently maintained that while he may have considered the report of Plaintiff's alleged comment to Noble as part of his investigation, he did not rely on this for the basis of his decision to terminate Plaintiff. Rather Kahr, as Plaintiff acknowledges in her Motion, admitted he had reason to believe that the document wherein the alleged statement by Plaintiff to Noble is referenced was not fully accurate. (<u>See</u> Pl. Br., p. 5, stating "Kahr, to his credit went on to say that he "had every reason to belief that not everything Rob said was accurate."). Thus, Plaintiff's claims that the statements of men were credited while hers was not, is patently untrue.

Despite Plaintiff's claimed theories and/or attempts to minimize her conduct, Defendants' decision to terminate Plaintiff was due to her behavior in sharing an inappropriate website which made others uncomfortable which was not something Pacira could support. This constituted an egregious violation of Pacira's values and anti-harassment policies, and a legitimate business reason for Plaintiff's separation. (<u>See</u> relevant excerpts of Kahr's deposition testimony at Kahr Dep., at 230:13-231:2, and Kahr's termination notes demarcated Pacira 000086, attached as Exhibits A and I, respectively, to the Panzini Decl.). While Plaintiff may personally disagree with this decision, she is unable to rebut same.

---

**<u>such cause of action asserted in this lawsuit</u>.** Plaintiff's attempted excuse of "religious and/or cultural significance" is also the subject of one of Defendants' motions <u>in</u> <u>limine</u>.

## LEGAL ARGUMENT

### I. PLAINTIFF'S MOTION NUMBER THREE TO PRECLUDE DEFENDANTS FROM PROVIDING ANY EVIDENCE OR TESTIMONY CONCERNING STATEMENTS ALLEGEDLY MADE TO OR ABOUT LANCE NOBLE SHOULD BE DENIED IF PLAINTIFF IS PERMITTED TO OFFER TESTIMONY REGARDING ANY DISMISSED CLAIMS

The potential introduction of all of Plaintiff's theories, which are based solely on Plaintiff's self-serving, personal suppositions and are the basis of her previously dismissed and/or unasserted claims of sexual harassment, sex discrimination, race, national origin, or religious discrimination, will only serve to lengthen the trial and conflate the very simple issue that is remaining: whether or not Plaintiff can prove that Defendants retaliated against her under the LAD for terminating her after corroborating Plaintiff's sexually inappropriate conduct.

As the Court has already determined that Plaintiff's previously asserted sexual harassment and sex discrimination claims were subject to dismissal as a matter of law, and as Defendants have already argued the introduction of these claims as background should be precluded in a pending motion in limine, Defendants reiterate that Plaintiff should be barred from introducing evidence as to these dismissed claims. The very purpose of summary judgment is to limit the issues to be tried. The Court efficiently did so. If Plaintiff is permitted to set forth her personal beliefs about the basis of her dismissed claims, Defendants will then be required to defend these claims and introduce evidence or testimony regarding other instances of Plaintiff's sexual behavior in the workplace, including but not limited to, Noble's personal knowledge of Plaintiff's inappropriate sexual conduct during the same weekend as the incident which led to her termination. Such conduct was reported to Human Resources prior to the decision to separate Plaintiff. If Plaintiff introduces testimony that she had been sexually harassed and subjected to sex discrimination in the workplace, then Noble's testimony that Plaintiff made a sexualized statement to him during

the NSM is directly relevant to Plaintiff's suppositions that males constantly harassed her, and she is being victim-shamed. This testimony will provide further credibility as to Defendants' reasons for terminating Plaintiff. Additionally, this testimony would be used put Plaintiff's allegations of harassment or discrimination in a larger context. Plaintiff simply cannot seek introduction of such broad and unlimited testimony while at the same time foreclosing Defendants ability to question her or others about evidence that may be contrary to this position. See Singer v. Central Railroad of New Jersey, 121 N.J. 121, 123 (1938) ("Either party is entitled to introduce evidence to rebut that of his adversary, and for this purpose any competent evidence to explain, repel, counteract, or disprove the adversary's proof is admissible, although it tends to support his case in chief."). Further, Noble's testimony regarding his personal interactions with Plaintiff would not be considered hearsay.

Additionally with respect to the document which references Plaintiff's alleged comment to Noble, Kahr acknowledged that he considered this document as part of his investigation. However, he did not rely on this report as the basis of his decision to terminate Plaintiff. Further, he admitted he believed that Rock, the person who advised him of Plaintiff's alleged "Midwestern cock" comment, may not have been a fully trustworthy source in reporting an issue about Plaintiff. Thus, the document pertaining to the report of Plaintiff's alleged sexual comment to Noble is relevant to show Kahr's state of mind as a decisionmaker for Plaintiff's separation and to disprove Plaintiff's theory that Kahr simply credited the statements made by male employees.

As Defendants' motion in limine to preclude evidence as to Plaintiff's dismissed and/or unasserted claims has not yet been decided, Plaintiff's foregoing Motion is premature. However, if the Court permits testimony by Plaintiff regarding her dismissed sexual harassment and sex discrimination claims, then Plaintiff's foregoing Motion should be denied as Defendants will also

require Noble as a witness, any documents addressing sexual comments made by Plaintiff to Noble, and Kahr's testimony to address, what role, if any, such statements played in Kahr's investigation and the decision to separate Plaintiff. This testimony and documents will be used to offer larger context as to Plaintiff's claimed theories, and for Defendants to defend such theories.[2]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's Motion in limine No. 3 to preclude Defendants from providing any evidence or testimony concerning statements allegedly made to or about Lance Noble as premature until the Court rules on Defendants' pending motion in limine concerning the admissibility of Plaintiff's dismissed and/or unasserted claims. In the alternative, if Plaintiff is permitted to introduce evidence pertaining to her dismissed and/or asserted claims, Defendants respectfully request that Plaintiff's foregoing Motion be denied in its entirety so that Defendants have opportunity to question Plaintiff or others about evidence that may be contrary to Plaintiff's position.

Respectfully submitted,

**JACKSON LEWIS P.C.**
766 Shrewsbury Avenue
Tinton Falls, New Jersey 07724
T: 732-532-6148

By: */s/ James J. Panzini*
James J. Panzini
*Attorneys for Defendants*

Dated: June 6, 2023

4875-7950-4999, v. 4

[2] Defendants reserve the right to call Lance Noble as an impeachment witness as trial as necessary.