Jason A. Stewart, Esq. (BAR ID # 324322019)
Neal Brickman, Esq. (*Pro Hac Vice*)
The Law Offices of Neal Brickman, P.C.
420 Lexington Avenue, Suite 2811
New York, New York 10170
(212) 986-6840
Jason@Brickmanlaw.com
Neal@Brickmanlaw.com
*Attorneys for Plaintiff Reshma Abell*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

-----------------------------------------------------X

RESHMA ABELL,

Plaintiff,

-against-

Civ. Action No.
**2:18-cv-16509-MCA-AME**

PACIRA PHARMACEUTICALS, INC., DAVE STACK, individually and in his capacity as Chief Executive Officer of PACIRA PHARMACEUTICALS, INC., and RICH KAHR, PETER MURPHY, DENNIS McLOUGHLIN, PAUL CIAVOLELLA, GLENN REISER, JOYCE DAVIS, and MATT LEHMANN, in their capacities as employees of PACIRA PHARMACEUTICALS, INC.

Defendants.

-----------------------------------------------------X

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF KRISTEN K. KUCSMA, M.A.

Of Counsel:
Jason A. Stewart, Esq.
Neal Brickman, Esq.

On the Brief:
Jason A. Stewart, Esq.
Neal Brickman, Esq.

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................ iii, iv

PRELIMINARY STATEMENT ........................................ 1

LEGAL ARGUMENT ........................................ 4

1. The F.R.E. 702 and Daubert Admissibility Standard........................................ 4

2. Expert Kucsma's Analysis is Based on Reliable Methods and Procedures of Science and Is Clearly Admissible........................................ 6

CONCLUSION…………………………………………........................ 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

Daubert v. Merrell Dow Pharmaceuticals, Inc.
509 U.S. 579 (1993) .......... 3, 4, 5, 6, 7

DeLuca by DeLuca v. Merrell Dow Pharmaceuticals, Inc.
911 F.2d 941 (3d Cir. 1990) .......... 6

Dorman Products, Inc. v. Paccar, Inc.
201 F.Supp.3d 663 (E.D. Pa. 2016) .......... 3

Elcock v. Kmart Corp.
233 F.3d 734 (3d Cir. 2000) .......... 6

Holbrook v. Lykes Bros. S.S. Co., Inc.
80 F.3d 777 (3d. Cir. 1996) .......... 4, 5

In re Japanese Electronic Products Antitrust Litigation
723 F.2d 238 (3d. Cir. 1983) .......... 6

In re Niaspan Antitrust Litigation
464 F.Supp.3d 678 (E.D. Pa. 2020) .......... 2, 3, 4, 6, 7

In re Paoli R.R. Yard PCB Litigation
35 F.3d 717 (3d. Cir. 1994) .......... 4, 5, 6, 7

In re Paoli R.R. Yard PCB Litigation
916 F.2d 829 (3d Cir. 1990) .......... 6

In re TMI Litigation
193 F.3d 613 (3d. Cir. 1999) .......... 6

Jones & Laughlin Steel Corp. v. Pfeifer
462 U.S. 523 (1983) .......... 7

Kannankeril v. Terminix Intern., Inc.
128 F.3d 802 (3d. Cir. 1997) .......... 4

Pineda v. Ford Motor Co.
520 F.3d 237 (3d. Cir. 2008) .......... 2

Schneider ex rel. Estate of Schneider v. Fried
320 F.3d 396 (3d. Cir. 2003) .......... 6

**Statutes** **Page(s)**

N.J.S.A. §§ 10:5-12.......... 1

Federal Rule of Evidence 702.......... 4, 6, 7

Federal Rule of Evidence 703.......... 6

Plaintiff Reshma Abel ("Abell" or "the Plaintiff"), by and through her attorneys, The Law Offices of Neal Brickman, P.C., respectfully submits this Memorandum of Law in Opposition to Defendants' motion *in limine* which seeks to exclude the expert report and testimony of Kristin K. Kucsma, M.A. (ECF 130), along with the accompanying Declaration of Jason A. Stewart.

## PRELIMINARY STATEMENT

This is an action for damages arising from Defendants' illegal retaliation against, and wrongful termination of, Plaintiff, in violation of the New Jersey Laws Against Discrimination ("NJLAD," N.J.S.A. §§ 10:5-12, et al.). The Plaintiff, a now 49-year-old female of Indian descent, was subjected to workplace harassment and illegal gender discrimination when she was accosted by a male co-worker, Rob Rock ("Rock") on the evening of February 13, 2018 (the "TopGolf Occurrence"). She was then retaliated against when she was fired approximately three weeks later as a direct result of the investigation stemming from the TopGolf Occurrence.

Defendants' primary litigation strategy has sought to tarnish and defame the Plaintiff so as to justify her retaliatory termination. In that regard, Defendants brazenly maintain that Plaintiff's termination was justified due to Defendants'—admittedly incomplete—"investigation" of alleged harassment against her. Defendants have the temerity to argue that it was proper, and not retaliatory, to terminate the victim of the alleged harassment. Defendants now seek to improperly limit the Plaintiff's presentation of evidence in a further effort to distort the facts, present only a small fraction of the relevant facts, and limit the jury's ability to understand what actually transpired vis-à-vis Plaintiff's unlawful termination. To that end Defendants here seek to bar Plaintiff's evidence in support of her damages by asking the Court to exclude the expert report and testimony of Plaintiff's designated expert economist Kristin K. Kucsma, M.A.

Defendants incorrectly argue that Plaintiff should not be permitted to present the expert report and or/opinion of Plaintiff's expert Kristin Kuscma, M.A. on the basis that Kuscma's report 1) fails to invoke scientific, technical, or other specialized knowledge; 2) is too speculative and 3) will not assist the jury and will confuse the issues. However, Defendants fail to acknowledge that Ms. Kucsma, of the Sobel Tinari Economics Group, is a well-established expert who has testified in at least 330 to 340 federal and state court matters as an expert economist. Ms. Kucsma was retained to prepare a report evaluating the economic losses suffered by Reshma Abell resulting from alleged wrongdoing in employment. Ms. Kucsma relied on documents, facts and publicly available documents in developing her appraisal and each respective document used as a source is duly noted at each point of use in the report. The purpose of the report is to provide a written appraisal of the economic loss in the case of Reshma Abell. The methods employed were reasonable and reliable and the expert's opinion is fully qualified, reliable and appropriate for the jury to consider.

As set forth herein, Defendants' motion to preclude expert testimony fails to make any legally or factually sufficient argument in accordance with Third Circuit precedent which would result in preclusion of Expert Kucsma's testimony or his report. Defendants are simply asking that this Honorable Court pick their rebuttal expert report's conclusions over Plaintiff's without hearing or reviewing any expert testimony beforehand. Likewise, Defendants cannot credibly claim that the report would not be helpful to any jury in this matter or that the report is scientifically inaccurate. Again, Defendants simply ask that this Court pick their own self-serving report and interpretations over Expert Kucsma's. That would be impermissible under Third Circuit precedent given that "Courts have adopted a "liberal policy of admissibility" with respect to Rule 702." In re Niaspan Antitrust Litig., 464 F. Supp. 3d 678, 692 (E.D. Pa. 2020)(citing Pineda v. Ford Motor

Co., 520 F.3d 237, 243 (3d Cir. 2008). Therefore, Defendants' Motion must be denied in its entirety. The "rejection of expert testimony is the exception and not the rule." Niaspan, 464 F. Supp. 3d at 692 (E.D. Pa. 2020)(citing Dorman Prods. v. PACCAR, Inc., 201 F. Supp. 3d 663, 686 (E.D. Pa 2016).

Ms. Kucsma's report, along with the testimony offered during her deposition, shows that Ms. Kucsma employed a well-accepted methodology to develop a framework to aid the jury in rendering a damages award, if the jury believes one is appropriate. The methodology employed by Plaintiff's expert consisted of calculating damages using available data points and aside from the certain of the assumptions considered, is a near identical methodology as that employed by Defendants own disclosed expert economist who was offered in rebuttal. It is, therefore, a dramatic leap for Defendants to argue that Ms. Kucsma failed to invoke scientific, technical, or other specialized knowledge.

Defendants' primary objection to the report seems to derive from Plaintiff's expert's providing a framework for the jury to consider which references multiple of damages models and which permits the trier of fact to take into account a number of considerations in rendering a damages award. In Defendants' expressed view, Ms. Kucsma's damages frameworks could result in the jury arriving at a damages calculation which Defendants contend to be too speculative. This argument is not a sufficient basis to preclude Ms. Kucsma' testimony and report.

The appropriate remedy for Defendants to pursue is not preclusion as was requested, but rather cross-examination—which they will be entitled to conduct at trial and to present their own competing rebuttal damages expert, which Defendants have identified as an anticipated witness at trial. Accordingly, as Plaintiff's expert is squarely qualified and offers a reliable, even if disputed, opinion, the Court need not apply any *Daubert* gatekeeping function and should deny Defendants'

motion. Assuming *arguendo* that the Court wishes to further consider the issues raised by Defendants, it is respectfully requested that Plaintiff be afforded the opportunity to offer testimony from Plaintiff's expert at a *Daubert* evidentiary hearing on this issue.

## LEGAL ARGUMENT

### A. The F.R.E 702 and *Daubert* Admissibility Standard

Admissibility of expert testimony or evidence is guided by Federal Rule of Evidence 702, which requires "the trial judge to act as a 'gatekeeper' to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *Kannankeril v. Terminix Int'l*, 128 F.3d 802, 806 (3d Cir. 1997)(citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 125 L. Ed. 2d 469, 113 S. Ct. 2786. (1993). Federal Rule of Evidence 702 requires expert testimony or evidence to meet the following:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

F.R.E. 702. "The Rules of Evidence embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact." *Kannankeril*, 128 F.3d at 806 (3d Cir. 1997)(citing *Holbrook v. Lykes Bros. S.S. Co*., 80 F.3d 777, 780 (3d Cir. 1996). "**Rule 702,** which governs the admissibility of expert testimony, **has a liberal policy of admissibility**." *Ibid.* (internal citations omitted)(emphasis added). Admissibility decisions focus on the expert's methods and reasoning; credibility decisions arise after admissibility has been determined. *Kannankeril*, 128 F.3d at 806 (3d Cir. 1997)(citing *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 743-746 (3d Cir. 1994)). "In order for the expert testimony to be "reliable," we have required that the testimony be based on the "methods and procedures of

science," rather than on "subjective belief or unsupported speculation."" *Kannankeril*, 128 F.3d at 806 (3d Cir. 1997)(citing *Paoli*, 35 F.3d at 744 (3d Cir. 1994)). Factors to be reviewed when determining admissibility are:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Paoli*, 35 F.3d at 742 n.8 (3d Cir. 1994).

Instructive, "[t]he Federal Rules of Evidence are meant to instruct the district courts in the sound exercise of their discretion in making admissibility determinations **and should not be interpreted as exclusionary rules**." *Holbrook*, 80 F.3d 777, 782 (3d Cir. 1996)(emphasis added). "If the expert has "good grounds" for the testimony, the scientific evidence is deemed sufficiently reliable. A determination that the expert has good grounds assures that the expert's opinions are based on science rather than "subjective belief or unsupported speculation."" *Holbrook*, 80 F.3d 777, 78 (3d Cir. 1996) (citing *Daubert*, 113 S. Ct. at 2795.) "A judge frequently should find an expert's methodology helpful even when the judge thinks that the expert's technique has flaws sufficient to render the conclusions inaccurate." *Paoli*, 35 F.3d at 744-45 (3d Cir. 1994). "He or she will often still believe that hearing the expert's testimony and assessing its flaws was an important part of assessing what conclusion was correct and may certainly still believe that a jury attempting to reach an accurate result should consider the evidence." *Ibid. See also Paoli*, 35 F.3d at 747 (3d Cir. 1994):

> Under our case law on Rule 703, "the proper inquiry is not what the court deems reliable, **but what experts in the relevant discipline deem it to be."** *In re Japanese Elec. Prod.*, 723 F.2d at 277. *See also De Luca*, 911 F.2d at 952; *Paoli I*, 916 F.2d at 853. We have held that the district judge must make a factual finding as to **what data experts find reliable**, *see id.* at 853, and that if an expert avers that his testimony is based on a type of data on which experts reasonably rely, that is generally enough to survive the Rule 703 inquiry. *See De Luca*, 911 F.2d at 952. (emphasis added).

As the Third Circuit has held, **"[t}he evidentiary requirement of reliability is lower than the merits standard of correctness**. *Paoli,* 35 F.3d at 744 (3d Cir. 1994)(emphasis added). "*Daubert* states that a judge should find an expert opinion reliable under Rule 702 if it is based on "**good grounds**," i.e., if it is based on the methods and procedures of science. A judge will often think that an expert has good grounds to hold the opinion that he or she does *even though the judge thinks that the opinion is incorrect*. *Ibid.* (emphasis added). "As Daubert indicates, "the focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Ibid.*

**2. Expert Kucsma's Analysis Is Based On Reliable Methods And Procedures Of Science and Is Clearly Admissible**

Courts must address a "trilogy of restrictions" before permitting the admission of expert testimony: qualification, reliability and fit. *In re Niaspan Antitrust Litig.*, 464 F. Supp. 3d 678, 692 (E.D. Pa. 2020)(citing *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003); *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). The party offering the expert must establish each requirement by a preponderance of the evidence. *Id. (citing In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999). Here, Defendants do not credibly challenge any of Expert Kucsma's "scientific, technical, or other specialized knowledge" that "will help the trier of fact to understand the evidence or to determine a fact in issue." Likewise, Defendants do not challenge Expert Kucsma's qualifications. Instead, Defendants seem to challenge only particular pieces of

Expert Kucsma's conclusions (i.e. the reliability prong) that contradict their defenses and self-serving arguments. In doing so, Defendants largely cite to factual disputes regarding the permissible scope of Plaintiff's damages and the reasonableness of the assumptions relied upon by Plaintiff's expert instead of offering any real legal disqualifying reason why Expert Kucsma should be precluded from introducing expert testimony and opinion. In fact, Defendants presumably agree, or at least do not take any issue, with the majority of the report aside from the fact that it permits a jury the apply a framework to arrive at a damages calculation that correlates with Plaintiff's damages theory in this case. Thus, even if this Honorable Court finds any portion of Expert Kucsma's conclusions not reliable under F.R.E. 702 (which they are not), such findings then do not preclude the remainder of the report which Defendants have accepted as admissible. It is well established that pecuniary losses are an approximation and are provided by the economic expert as a guide to the trier-of-fact. *Jones and Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 545-47 (1983). Indeed, Expert Kucsma's report serves its intended purpose of serving as a guide to the trier of fact and as such, cannot and should not be precluded.

Defendants claim that Expert Kucsma's report is based upon a "subjective belief or unsupported speculation". However, "the reliability requirement of Daubert "means that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief."" In re Niaspan Antitrust Litig., 464 F. Supp. 3d 678, 692 (E.D. Pa. 2020)(citing Paoli, 35 F.3d at 742 (3d Cir. 1994)). It is submitted that Defendants' contention is simply a point of dispute in this case, and is respectfully best left for the jury to decide. Plaintiff can and will offer evidence in support of her damages. Plaintiff's expert, for her part employed mathematical calculations based upon specific data provided to and gathered by the expert and which was specifically identified within the report, including but

not limited highly reliable source information coming from Defendants' pay grade scales disclosed in discovery, Defendants' publicly traded stock price(s) and Defendants' publicly SEC filings.

Moreover, Expert Kucsma testified during her deposition that her "report simply calculates what Ms. Abell would have continued to earn if she had continued her employment in this case with Pacira and received those promotions" as alleged in Plaintiff's Complaint and as discussed during her deposition. Expert Kucsma went on to testify that her "analysis remains intact regardless of what the trier of fact may determine in terms of liability...my analysis simply, again, calculates what Ms. Abell's compensation would have been if she had continued her employment with Pacira and received the imminent promotion" that the Plaintiff had been promised. Defense counsel candidly admitted during Expert Kucsma's deposition that her report has "a lot of calculations and backup regarding the numbers here," before asking if Expert Kucsma, in part, relied on the assumption that Ms. Abell would have received the position as Director of Post-Op Pain Management and worked in that position for a period -- a number of years. Which Expert Kucsma readily confirmed to be the case. (See Stewart Decl. Exhibit A. Kucsma Dep. 55:3–57:13). It is clear, and we would submit wholly beyond dispute, that Expert Kucsma relied upon data points in performing mathematical calculations in preparing her appraisal of Plaintiff's damages. Expert Kucsma's report is in no way subjective belief or unsupported speculation, at most, Expert Kucsma relied upon contested and disputed facts, which it will be for the jury to act as the tier of those facts and to determine if the assumptions relied upon by the Plaintiff's expert were reasonably and what evidentiary weight, if any, her report and testimony should be given.

As part of Plaintiff's damages presentation, Plaintiff can and will offer evidence of her impending promotion, as well as the benefits which would have reasonably flown from that

promotion, again this is evidence which the jury can give whatever evidentiary weight it deems appropriate.[1] It is important to note, Defendants will have the opportunity to cross-examine not only the Plaintiff regarding the Plaintiff's reasonableness of her beliefs, but will also be permitted to cross-examine Expert Kucsma as well as present a competing rebuttal expert, all of which are the appropriate and proper methods of challenging a witness and in this case, the expert witness, not simply relying upon a self-serving and misguided efforts to exclude Plaintiff's expert through motion practice.

Accordingly, it is respectfully submitted that Defendants motion is unavailing and no order of preclusion with respect to Plaintiff's expert testimony is warranted. To the extent that the Court deems further inquiry of this topic as necessary, it is respectfully requested that Plaintiff be entitled an evidentiary hearing to be afforded the opportunity to offer additional testimony in support of Expert Kucsma's qualifications, the reliability of her opinion and the reasonableness of the assumptions upon which she relied.

Notwithstanding the foregoing, Plaintiff specifically reserves its right to argue the admissibility of Plaintiff's expert report and her testimony either at oral argument, if any, at an evidentiary hearing, and/or at the time of trial.

---

[1] Defendants have sought to limit testimony regarding Plaintiff's past sales performance and regarding her impending promotion through motion *in limine* filed as ECF 133, which further demonstrates the contested nature of the facts that Defendants argue to be too speculative to have been relied upon. These facts about an impending promotion and a track of upward ascendancy are not unreliable, but rather are at best contested, and more practically are inconvenient and unhelpful to the Defendants—which is why they seek to preclude them and the Plaintiff's damages evidence which relies, in part, on those facts.

## CONCLUSION

For all the foregoing reasons, Defendants' Motion *in limine* filed as ECF 130 should be denied in its entirety along with such other and further relief as the Court deems just and proper.

Respectfully submitted,

THE LAW OFFICE OF NEAL BRICKMAN, P.C.

By: /s/ *Jason A. Stewart*
Jason A. Stewart
Neal Brickman

Dated: June 6, 2023