Jason A. Stewart, Esq. (BAR ID # 324322019)
Neal Brickman, Esq. (*Pro Hac Vice*)
The Law Offices of Neal Brickman, P.C.
420 Lexington Avenue, Suite 2811
New York, New York 10170
(212) 986-6840
Jason@Brickmanlaw.com
Neal@Brickmanlaw.com
*Attorneys for Plaintiff Reshma Abell*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

-----------------------------------------------------X

RESHMA ABELL,

Plaintiff,

-against-

Civ. Action No.
**2:18-cv-16509-MCA-AME**

PACIRA PHARMACEUTICALS, INC., DAVE STACK, individually and in his capacity as Chief Executive Officer of PACIRA PHARMACEUTICALS, INC., and RICH KAHR, PETER MURPHY, DENNIS McLOUGHLIN, PAUL CIAVOLELLA, GLENN REISER, JOYCE DAVIS, and MATT LEHMANN, in their capacities as employees of PACIRA PHARMACEUTICALS, INC.

Defendants.

-----------------------------------------------------X

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO BAR RECOVERY OF PUNITIVE DAMAGES, OR IN THE ALTERNATIVE, BIFURCATE THE LIABILITY AND COMPENSATORY DAMAGES PHASE OF TRIAL FROM THE PUNITIVE DAMAGES PHASE OF TRIAL

Of Counsel:
Jason A. Stewart, Esq.
Neal Brickman, Esq.

On the Brief:
Jason A. Stewart, Esq.
Neal Brickman, Esq.

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................... iii, iv

PRELIMINARY STATEMENT ........................................................................................... 1

LEGAL ARGUMENT ........................................................................................................ 3

1. IT IS WHOLLY UNWARRANTED AND PREMATURE TO PRECLUDE PLAINTIFF FROM SEEKING PUNITIVE DAMAGES FROM THE JURY AS THE PLAINTIFF'S ALLEGATIONS--ON THEIR FACE--SUPPORT AN AWARD OF PUNITIVE DAMAGES ........................................................................... 3

CONCLUSION……………………………………………………………………....................... 7

# TABLE OF AUTHORITIES


**Cases** **Page(s)**

Andersen v. Exxon Co., U.S.A.
89 N.J. 483 (1982) ........ 4

Bergen Commercial Bank v. Sisler
157 N.J. 188 (1999) ........ 4

Cavuoti v. New Jersey Transit Corp.
161 N.J. 107 (1999) ........ 4, 5

Craig v. Suburban Cablevision, Inc.
274 N.J.Super. 303 (App. Div. 1994) ........ 4

Craig v. Suburban Cablevision, Inc.
140 N.J. 623 (1995) ........ 4

Domm v. Jersey Printing Co., Inc.
871 F.Supp. 732 (D.N.J. 1994) ........ 6

Fuchilla v. Layman
109 N.J. 319 (1988) ........ 3, 4

Hargrave v. County of Atlantic
262 F.Supp.2d 393 (D.N.J. 2003)........ 5

Herman v. Sunshine Chemical Specialties, Inc.
133 N.J. 329 (1993) ........ 4

Kluczyk v. Tropicana Products, Inc.
368 N.J.Super. 479 (App. Div. 2004) ........ 7

Lehmann v. Toys R Us, Inc.
132 N.J. 587 (1993) ........ 4

Leimgruber v. Claridge Associates, Ltd.
73 N.J. 450 (1997) ........ 4

Lockley v. State of New Jersey Dept. Of Corrections
177 N.J. 413 (2003) ........ 7

Lockley v. Turner
344 N.J.Super. 177 (App. Div. 2001) .......... 5

Nappe v. Anschelewitz, Barr, Ansell & Bonello
97 N.J. 374 (1984) .......... 5

Quinlan v. Curtiss-Wright Corp.
204 N.J. 239 (2010) .......... 2, 3, 4, 5, 6

Rendine v. Pantzer
141 N.J. 292 (1995) .......... 4, 5, 6

Santiago v. City of Vineland
107 F.Supp.2d 512 (D.N.J. 2000) .......... 5, 6

Spragg v. Shore Care
293 N.J.Super. 336 (App. Div. 1996) .......... 5

Weiss v. Parker Hannifan Corp.
747 F.Supp. 111 (D.N.J. 1990) .......... 6

**Statutes** **Page(s)**

N.J.S.A. §§ 10:5-12.......... 1

Plaintiff Reshma Abel ("Abell" or "the Plaintiff"), by and through her attorneys, The Law Offices of Neal Brickman, P.C., respectfully submits this Memorandum of Law in Opposition to Defendants' motion *in limine* which seeks to bar recovery of punitive damages, or in the alternative, bifurcate the liability and compensatory damages phases of trial from the punitive damages phase of trial (ECF 131).

**PRELIMINARY STATEMENT**

This is an action for damages arising from Defendants' illegal retaliation against, and wrongful termination of, Plaintiff, in violation of the New Jersey Laws Against Discrimination ("NJLAD," N.J.S.A. §§ 10:5-12, et al.). The Plaintiff, a now 49-year-old female of Indian descent, was subjected to workplace harassment and illegal gender discrimination when she was accosted by a male co-worker, Rob Rock ("Rock"), on the evening of February 13, 2018 (the "TopGolf Occurrence"). She was then retaliated against when she was fired approximately three weeks later as a direct result of the investigation stemming from the TopGolf Occurrence.

Defendants' primary litigation strategy has sought to tarnish and defame the Plaintiff so as to justify her retaliatory termination. In that regard, Defendants brazenly maintain that Plaintiff's termination was justified due to Defendants'—admittedly incomplete—"investigation" of alleged harassment against her. Defendants have the temerity to argue that it was proper, and not retaliatory, to terminate the victim of the alleged harassment. Defendants now seek to improperly limit the Plaintiff's presentation of evidence in a further effort to distort the facts, present only a small fraction of the relevant facts, and limit the jury's ability to understand what actually transpired vis-à-vis Plaintiff's unlawful termination. To that end Defendants here seek to bar the recovery of punitive damages.

Defendants incorrectly argue that Plaintiff should not be permitted to ask the jury to award punitive damages because Plaintiff cannot establish the requisite standard for her punitive damages claim. Defendants are, in fact, asking the Court to prevent the jury from otherwise rendering a decision which is squarely within the jury's provenance. At a bare minimum, it is premature for this Court to play a gate keeping role on this category of damages. At minimum, the Court should permit Plaintiff to present its case in chief, and render a decision based upon an established record of all admissible testimony and evidence before rendering a decision as to whether punitive damages are available to the Plaintiff. It is respectfully submitted that, Plaintiff's case, if the jury finds it credible, is, on its face, the very type of case for which punitive damages are intended.

Specifically, Plaintiff has alleged that a senior member of upper management, intentionally and willfully engaged in a series of sham investigations to downplay and sweep under the rug an allegation of gender-based discrimination and then immediately thereafter developed a pretext to retaliate against the individual who complained of being a victim of gender-based discrimination. Plaintiff further maintains that she would not have been subjected to this wrongful and retaliatory conduct if she was a similarly situated man. Lastly, the Plaintiff alleges that she has sustained significant economic damages, along with accompanying emotional damages which damages, by their very nature establish Defendants' "egregious conduct."

Therefore, the allegations, on their face, if believed by the jury, fully support a finding that Defendants "actually participated in or [were] willful[ly] indifferent to the wrongful conduct on the part of upper management" <u>and</u> that the offending conduct was "especially egregious." *Quinlan v. Curtiss-Wright Corp.,* 204 N.J. 239 (2010). Precluding the Plaintiff, at this pre-trial stage, before Plaintiff has presented its evidence, from being able to seek punitive damages is wholly inappropriate and is unsupported both by equity and law. At most, this Court should reserve

judgment on the motion *in limine* pending the evidence presented at trial and allow the jury to answer a narrowly framed question on the jury verdict sheet as to Plaintiff's entitlement to punitive damages based upon the evidence presented at trial and/or otherwise bifurcate the question of punitive damages, pending the jury's determination as to Plaintiff's entitlement to recover compensatory damages under her NJLAD claim of retaliation.

## LEGAL ARGUMENT

### IT IS WHOLLY UNWARRANTED AND PREMATURE TO PRECLUDE PLAINTIFF FROM SEEKING PUNITIVE DAMAGES FROM THE JURY AS THE PLAINTIFF'S ALLEGATIONS--ON THEIR FACE--SUPPORT AN AWARD OF PUNITIVE DAMAGES

Just as Defendants have systematically ignored material facts which are contrary to their narrative in their various motions *in limine*, herein they ignore that the clear and long-recognized "essential purpose of the LAD is the 'eradications of the cancer of discrimination." *Quinlan v. Curtiss-Wright Corp.,* 204 N.J. 239 (2010) (*quoting, Fuchilla v. Layman*, 109 N.J. 319, 334 537 A.2d 652 (1988).[1] As the New Jersey Supreme Court has steadfastly maintained, the broad remedial purpose of the LAD mandates that:

> that the protection against retaliation embodied in the LAD is broad and pervasive, and must be seen as necessarily designed to promote the integrity of the underlying antidiscrimination policies of the Act by protecting against reprisals "any person" who has sought to protect his or her own rights not to be discriminated against or who has acted to support such conduct.

[1] The portion of this motion seeking to preclude punitive damages should have been brought by Defendants on summary judgment and is singularly improper at this stage based not only on the clear remedial purposes of the LAD, but the strong preference and legal precedent for allowing such claims to be determined by a jury based on their fact sensitive elements.

*Id.,* at 259; see also *Craig v. Suburban Cablevision, Inc.,* 274 N.J.Super. 303, 310, 644 A.2d 112 (App.Div.1994), aff'd, 140 N.J. 623, 660 A.2d 505 (1995); *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 216, 723 A.2d 944 (1999) (*citing Andersen v. Exxon Co. U.S.A*., 89 N.J. 483, 495, 446 A.2d 486 (1982)); *Fuchilla*, 109 N.J. at 221. Punitive damages are essential to these protections and this remedial purpose as they serve as "the deterrence of egregious misconduct and the punishment of the offender." *Herman v. Sunshine Chem. Specialties, Inc*., 133 N.J. 329, 337–38, 627 A.2d 1081 (1993) (*citing Leimgruber v. Claridge Assocs., Ltd*., 73 N.J. 450, 454, 375 A.2d 652 (1977)).

Under the LAD, a plaintiff must demonstrate two circumstances to warrant imposition of punitive damages: (1) "actual participation by upper management or willful indifference;" and (2) proof that the conduct was "especially egregious." *Quinlan*, 204 N.J. at 274 (2010); *Cavuoti v. N.J. Transit Corp.*, 161 N.J. 107, 113 (1999); *Rendine v. Pantzer*, 141 N.J. 292, 313–14 (1995); *Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587, 624-25 (1993). Plaintiff has clearly demonstrated these requisite circumstances and even more assuredly demonstrated the possibility of proving the same at trial.

As an initial matter, whether an offending employee is part of "upper management" is highly fact-sensitive and, as such, normally left for the jury. However, in this case, it is beyond dispute that Defendant Kahr, the heard of the HR department, acting on behalf of his corporate employer, falls squarely within "upper management." Specifically, "upper management" certainly include the individuals "who formulate the organization's anti-discrimination policies, provide compliance programs and insist on performance (its governing body, its executive officers) and those to whom the organization has delegated the responsibility to execute its policies in the workplace, who set the atmosphere or control the day to day operations of the unit (such as heads

of departments, regional managers, or compliance officers)" (see, *Cavuoti*, 161 N.J. at 128–29, 735 A.2d 548). "Upper management" also includes "individuals who have 'significant power, discretion and influence within their own departments.' " *Lockley v. Turner*, 344 N.J.Super. 1, 20; 779 A.2d 1092 (*quoting Cavuoti*, 161 N.J. at 123, 735 A.2d 548). Similarly, employees who have "(1) broad supervisory powers over the involved employees, including the power to hire, fire, promote and discipline; or (2) the delegated responsibility to execute the employer's policies to ensure a safe, productive and discrimination free workplace" constitute "upper management." *Cavuoti*, 161 N.J. at 129, 735 A.2d 548. Again, Kahr clearly qualifies as part of upper management. This is not even a close call.

In the employment context, "egregiousness" is satisfied once a Plaintiff has proffered (and demonstrated at trial) "an intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and willful disregard for the rights of [plaintiff]" (*Rendine*, 141 N.J. at 314, 661 A.2d 1202 (*quoting Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 49–50, 477 A.2d 1224 (1984)); see also, *Quinlan*, 204 N.J. 239) or that defendant acted with "actual malice" (*Herman*, *supra*, 133 N.J. at 329) or with "a wanton and wilfull disregard of the rights of another." *Cavuoti*, 161 N.J. at 120 n. 2, 735 A.2d 548; see also *Santiago v. City of Vineland*, 107 F.Supp.2d 512, 570 (D.N.J. 2000); *Hargrave v. County of Atlantic*, 262 F.Supp.2d 393, 435 (D.N.J. 2003). Additional factors to consider in evaluating "egregiousness" are the likelihood of harm from the conduct, the actor's awareness of the likelihood of harm, the behavior of the bad actor with knowledge of the potential harm, and efforts taken to conceal the harm. See *e.g., Quinlan*, 204 N.J. at 239. Each of these factors mandate denial of Defendants' instant *in limine* motion.

Moreover, the existence of the requisite "egregiousness" also must ordinarily be resolved by a jury. See, *e.g., Hargrave v. County of Atlantic*, 262 F.Supp.2d at 393; *Spragg v. Shore Care*,

293 N.J.Super. 33, 59, 679 A.2d 685 (App.Div.1996) (summary judgment is "particularly inappropriate" on the question of the availability of punitive damages "where subjective elements such as intent and motivation are involved"); *Weiss v. Parker Hannifan Corp.,* 747 F.Supp. 1118, 1135 (D.N.J.1990) ("Under New Jersey law, the exceptional nature of a given case and the wanton or malicious nature of the defendant's conduct are questions for the finder of fact."); see also *Santiago*, 107 F.Supp.2d at 570 (noting that "the issue of punitive damages is [typically] a fact question which should be decided by a jury"); *Domm v. Jersey Printing Co., Inc.,* 871 F.Supp. 732, 739 (D.N.J.1994).

As supported by the general standards above, Courts have routinely submitted questions of punitive damages to juries under far less egregious circumstances than those at bar. In *Redline*, the Court upheld a punitive award finding that the jury could have determined that (just as herein) that the defendant created, vis-à-vis Plaintiff, a "strategy designed to facilitate discharge without consequence to defendant" *Rendine*, 141 N.J. at 316. Similarly, in *Quinlan*, the Court – while recognizing the existence of contrary evidence, including that the Plaintiff remained employed and was given a bonus after the complained of act of discrimination – found that the allegations that the CEO excluded females from golf outings; that the Company failed to consider plaintiff for a role for which she had superior qualification (especially as compared to male candidates); and that in terminating plaintiff, the Company prevented her from benefitting from her successes and achievements at the Company by denigrating her were sufficient to present her claims for punitive damages to the jury. *Quinlan*, 204 N.J. at 239. The Supreme Court went on to caution that the court's analysis should not focus on contrary evidence, but whether, when viewed in a light most favorable to Plaintiff, she had presented any evidence of "egregiousness." *Id.*

Similarly, in *Rusak v. Ryan Automotive*, L.L.C., 418 N.J.Super 107, 12 A.D.3d 239 (2011), the Court even while recognizing that there was disputed evidence as to whether the manager could actually fire Plaintiff as he threatened for complaining about being sent pornographic materials by a co-worker, she still should have been allowed to submit her claim for punitive damages to the jury. See also, *Lockley v. Dep't of Corr.,* 177 N.J. 413, 417, 828 A.2d 869 (2003) (vulgar language to describe plaintiff's purported sexual orientation sufficient to satisfy "egregious" standard for punitive damages); *Kluczyk v. Tropicana Prods. Inc.,* 368 N.J.Super. 479, 497, 847 A.2d 23 (App.Div.2004) (threat of retaliation and disparate treatment concerning complaints sufficient to satisfy "egregious" standard for punitive damages).

At this pre-trial stage, it is respectfully submitted that the question as to whether the jury should be permitted to consider awarding punitive damages is entirely inappropriate. Any question as to Plaintiff's ability to recover punitive damages is more appropriately addressed by the jury, as in the event that Plaintiff prevails on her NJLAD claim, she might also be entitled to punitive damages.

Notwithstanding the foregoing, Plaintiff specifically reserves its right to further argue in favor of her entitlement to punitive damages either at oral argument of this motion, if any, and/or at the time of trial.

## **CONCLUSION**

For all the foregoing reasons, Defendant's Motion *in limine* filed as ECF 131 should be denied in its entirety along with such other and further relief as the Court deems just and proper.

Respectfully submitted,

THE LAW OFFICE OF NEAL BRICKMAN, P.C.

By: /s/ *Jason A. Stewart*
Jason A. Stewart
Neal Brickman

Dated: June 6, 2023