Jason A. Stewart, Esq. (BAR ID # 324322019)
Neal Brickman, Esq. (*Pro Hac Vice*)
The Law Offices of Neal Brickman, P.C.
420 Lexington Avenue, Suite 2811
New York, New York 10170
(212) 986-6840
Jason@Brickmanlaw.com
Neal@Brickmanlaw.com
*Attorneys for Plaintiff Reshma Abell*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

-----------------------------------------------------X

RESHMA ABELL,

Plaintiff,

-against-

Civ. Action No.
**2:18-cv-16509-MCA-AME**

PACIRA PHARMACEUTICALS, INC., DAVE STACK, individually and in his capacity as Chief Executive Officer of PACIRA PHARMACEUTICALS, INC., and RICH KAHR, PETER MURPHY, DENNIS McLOUGHLIN, PAUL CIAVOLELLA, GLENN REISER, JOYCE DAVIS, and MATT LEHMANN, in their capacities as employees of PACIRA PHARMACEUTICALS, INC.

Defendants.

-----------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO PRECLUDE FROM EVIDENCE THE DOCUMENTS AND TESTIMONY REGARDING PLAINTIFF'S DISMISSED AND/OR UNASSERTED CLAIMS**

Of Counsel:
Jason A. Stewart, Esq.
Neal Brickman, Esq.

On the Brief:
Jason A. Stewart, Esq.
Neal Brickman, Esq.

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................ 1

LEGAL ARGUMENT ........................................................................................................ 3

1. PLAINTIFF SHOULD BE PERMITTED TO OFFER ALL ADMISSIBLE EVIDENCE AS TO WORKPLACE CULTURE, PLAINTIFF'S DAMAGES AND THE RELIGIOUS CONTEXT EXISTING AROUND THE ALLEGEDLY "OFFENSIVE" IMAGE..........................................................................3

CONCLUSION………………………….……………………………………….......................... 7

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abrams v. Lightolier, Inc.*,
50 F.3d 1204, 1213 (3d Cir. 1995)........................................................................ 4

*Bhaya v. Westinghouse Elec. Corp.*,
922 F.2d 184, 187 (3d Cir. 1990).......................................................................... 4

*Spain v. Gallegos*,
26 F.3d 439, 452 (3d Cir. 1994) ........................................................................... 3

**Rule and Statutes** **Page(s)**

Federal Rule of Evidence 401 .......................................................................................... 3, 4

Federal Rule of Evidence 401 (a) and (b)............................................................................ 3, 4

Federal Rule of Evidence 402 ............................................................................................ 3

Federal Rule of Evidence 403 ............................................................................................ 3

N.J.S.A. §§ 10:5-12.................................................................................................................. 1

Plaintiff Reshma Abel ("Abell" or "the Plaintiff"), by and through her attorneys, The Law Offices of Neal Brickman, P.C., respectfully submits this Memorandum of Law in Opposition to Defendants' motion *in limine* which seeks to preclude the Plaintiff from offering a variety of evidentiary offerings loosely lumped together and mischaracterized by Defendants as "the documents and testimony regarding Plaintiff's dismissed and/or unasserted claims." (ECF 135).

**PRELIMINARY STATEMENT**

This is an action for damages arising from Defendants' illegal retaliation against, and wrongful termination of, Plaintiff, in violation of the New Jersey Laws Against Discrimination ("NJLAD," N.J.S.A. §§ 10:5-12, et al.). The Plaintiff, a now 49-year-old female of Indian descent, was subjected to workplace harassment and illegal gender discrimination when she was accosted by a male co-worker, Rob Rock ("Rock") on the evening of February 13, 2018 (the "TopGolf Occurrence"). She was then retaliated against when she was fired approximately three weeks later as a direct result of the investigation stemming from the TopGolf Occurrence.

Defendants' primary litigation strategy has sought to tarnish and defame the Plaintiff so as to justify her retaliatory termination. In that regard, Defendants brazenly maintain that Plaintiff's termination was justified due to Defendants'—admittedly incomplete—"investigation" of alleged harassment against her. Defendants have the temerity to argue that it was proper, and not retaliatory, to terminate the victim of the alleged harassment. Defendants now seek to improperly limit the Plaintiff's presentation of evidence in a further effort to distort the facts, present only a small fraction of the relevant facts, and limit the jury's ability to understand what actually transpired vis-à-vis Plaintiff's unlawful termination. To that end Defendants here seek to preclude the Plaintiff from offering evidence in document and/or testimony regarding what Defendants generically refer to as Plaintiff's "dismissed and/or unasserted claims."

It is respectfully submitted that what Defendants are really trying to do is to keep out admissible evidence that is harmful to the Defendants under the guise that Plaintiff's evidence speaks to claims that are not, or are no longer, part of the case going to trial. Defendants conveniently failed to acknowledge that the evidence which Defendants seek to preclude is wholly relevant to the claims at issue in this trial. For example, if the Court were to grant Defendants' motion as drafted, it would preclude evidence of Pacria Pharmaceutical, Inc. ("Pacira")'s misogynistic, toxic and retaliatory culture, evidence of Pacira's interference with Plaintiff's ability to mitigate damages, and evidence of Kahr's incompetent investigation. All of these proffers of evidence speak directly to Plaintiff's surviving retaliation claim, either as to the workplace culture, the full scope of Plaintiff's damages sustained at the Defendants' hands and/or the cultural and religious context surrounding the images which Kahr refused to review or investigate as part of his investigation[1].

Defendants attempt to preclude evidence of Pacira's continuing impact of the Plaintiff's ability to work in the marketplace is particularly far-reaching in light of Defendant's motion *in limine* filed under ECF 134, wherein Defendants seek to preclude Plaintiff from arguing entitlement to front pay on the basis that the Plaintiff secured employment with a medical device company known as Flexion Therapeutics, Inc. ("Flexion"). The instant motion to preclude seeks to keep out is testimony and evidence concerning Pacira's acquisition of Flexion and the subsequent termination of Plaintiff's employment from Flexion, Pacira's refusal to provide Plaintiff with her severance due from Flexion without securing a release from this litigation and

[1] Here, Defendants seek to preclude a factual offering that the Kama Sutra is an ancient Hindu text originating from India. The notion that the jury cannot hear the undisputed fact that the allegedly "offensive" images come from an ancient Hindu text originating from India because no claim of national origin is asserted is unsupported by the prevailing caselaw, and borders on absurdity. The prong of Defendants' motion *in limine* seeking to preclude a factual offering as to the cultural and religious nature of the Kama Sutra must be denied out of hand.

the impact of the Flexion termination on Plaintiff's ability to procure further employment. All of these issues squarely speak to Plaintiff's efforts, attempts and ability to mitigate her damages, and are clearly admissible. None of the categories of evidence which the Defendants seek to preclude in this motion belong squarely to the claims that are dismissed and/or unasserted.

Defendants incorrectly argue that Plaintiff should not be permitted to over documents or testimony regarding Plaintiff's performance pursuant to Rules 410, 402 and 403, thus depriving the jury the opportunity of hearing about the conditions of important testimony which supports Plaintiff's existing claim and her damages. Entirely and blanketly precluding the Plaintiff from being able to speak about "claims dismissed" and/or unasserted as framed by Defendants not only strips away all context to the controversy before the Court, but also thwarts Plaintiff's ability to establish its damages and to explain the religious context surrounding the allegedly "offensive" images which were the purported basis for Plaintiff's termination, and as such, granting Defendants' instant motion *in limine* would be highly prejudicial to the Plaintiff.

## LEGAL ARGUMENT

### PLAINTIFF SHOULD BE PERMITTED TO OFFER ALL ADMISSIBLE EVIDENCE AS TO WORKPLACE CULTURE, PLAINTIFF'S DAMAGES AND THE RELIGIOUS CONTEXT EXISTING AROUND THE ALLEGEDLY "OFFENSIVE" IMAGE

As a general rule, all relevant evidence is admissible. F.R.E. 402. Evidence is "relevant" if its existence simply has "any tendency to make a fact more or less probable than it would be without the evidence" and the fact is of consequence in determining the action." F.R.E. 401(a) and (b). However, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." F.R.E. 403. Before a Rule 403 analysis can begin, however, evidence must meet the relevancy requirements of Rules 402 and 401. Evidence is irrelevant when it has "no tendency" to prove any consequential fact in the case. *Spain v. Gallegos*,

26 F.3d 439, 452 (3d Cir. 1994)(emphasis in original). Relevant evidence is broadly defined as evidence "[having] any tendency to make a fact more or less probable than it would be without the evidence, " with that fact being "of consequence in determining the action." F.R.E. 401.

Here, Defendants have sought to preclude evidence regarding Pacira's "toxic workplace culture" and "Kahr having a history of discriminating against women and especially against women above a certain age." Evidence to these points—regardless of whether or not they support the sexual discrimination and/or hostile work environment claims alleged in Plaintiff's initial Complaint--are not wholly irrelevant to the surviving retaliation count. Defendants incorrectly argue that the Court's decision on the Defendants' motion for summary judgment which narrowed the claims permitted at trial should also serve to narrow the evidence that the Plaintiff can submit at trial. Allowing Plaintiff to speak to specific work place occurrences and instances which occurred prior to the TopGolf Occurrence and Plaintiff's ensuing termination is not, as Defendants attempt to argue, re-litigation of claims that were dismissed at summary judgment.

The gravamen of Plaintiff's claim is that she was wrongfully terminated after Defendants, and specifically Kahr, engaged in a sham investigation to arrive at a pre-determined outcome which punished Plaintiff for speaking out and making complaints of gender-based discrimination. Evidence of Pacira's workplace culture and other known past instances of gender-based discrimination which informed Plaintiff's perspective and which help to demonstrate her and others states of mind at the time of the relevant occurrences are all relevant in that such testimony can undoubtedly have the "tendency to make a fact more or less probable than it would be without the evidence" under Rule 401(a). Evidence regarding Pacira's toxic workplace culture and Kahr's history of conduct clearly offer probative value that, we submit, a jury must be permitted to hear.

Similarly, Defendants seek to misappropriate an earlier ruling in this case regarding Plaintiff's efforts to amend its Complaint to argue that Judge Espinosa's ruling to deny Plaintiff's motion for leave to amend on timeliness grounds serves to preclude the Plaintiff's evidence. That is simply not the case and the earlier ruling in this case, cannot and should preclude Plaintiff from offering evidence establishing her damages. Plaintiff need be afforded the opportunity to present her damages, including her attempts to mitigate her damages and, to the extent that it is factually undisputable, Pacira's ongoing impact on Plaintiff's mitigation efforts, in full detail without the effect of preclusion to cover up Defendant's conduct. Even assuming *arguendo* that the Court deemed testimony regarding Pacira's impact on Plaintiff's loss mitigation, in any part, as confusing to the jury, such a harm could be cured by a far less harsh remedy than preclusion, as the jury verdict form can be crafted to account for this issues and/or the jury can be provided an instruction(s) as to how this specific evidence regarding Flexion should be considered. To simply preclude the Plaintiff for offering evidence regarding factually undisputed occurrences that transpired, including but not limited to the facts that: 1) Plaintiff's subsequent-employer Flexion was acquired by Pacira; 2) Flexion required a release of the instant litigation from Plaintiff to payout her severance; and 3) Plaintiff was terminated from Flexion without severance following Pacira's acquisition, is to shield the jury from important and uncontroverted facts that must be considered in the jury's shaping of any damages award in this case.

Respectfully, the appropriate remedy, if any remedy is required at all, in response to Defendants' request to preclude evidence about the Flexion acquisition is to employ a well-tailored cure in the form of a carefully crafted remedy jury verdict sheet or some other less harsh remedy than preclusion.

Lastly, the Defendants instant motion seeks to preclude any mention of religious context surrounding the allegedly offensive image which is the purported basis for Plaintiff's termination. This request follows Defendants' defame and tarnish tactic of casting a cartoon image depicting imagery from the Kama Sutra as "pornographic" and most be rejected out of hand. Plaintiff has not, and does not intend to argue that Kahr's incompetent investigation infringed upon any protected status arising from Plaintiff's religion. Rather, what Plaintiff has maintained since the moment she was confronted regarding the allegedly offensive image, and what Plaintiff must be permitted to speak to at trial is that the image itself contained cartoon depictions of figures in poses from the Kama Sutra. [2] Equally so, Plaintiff must be able to offer evidence that that the Kama Sutra itself is a religious and spiritual text. [3] To be permitted to offer evidence regarding what the Kama Sutra is and why it was not "offensive material" or "pornographic" content as Defendants have sought to argue as a pretextual reason for her termination, is far more than a "red herring" argument as suggested by Defendants, it is a central issue in the case and Defendants request is nothing more than a back handed attempt to keep out unfavorable evidence unfavorable to the defense out of the case. Plaintiff is not and has never argued that she was fired because she is of Indian descent or because of her religious views.

---

[2] When questioned about the Kama Sutra material by Kahr during his HR investigation, Plaintiff expressed multiple times that she in no way intended to offend anyone and she explained that, in fact, the content of the text she received was "part of her religious text and script." (Stewart Cert. Exhibit 1, Abell Dep., 14:12-15). Kahr chose not to verify the specifics of the allegations he had reportedly received, but rather concluded that termination was appropriate because "the behavior that [Plaintiff] exhibited at the NSM with opening up an inappropriate site that made others feel uncomfortable at the meeting was not something we could support in our culture and that it was an egregious violation of our values and our anti-harassment policy in our handbook." (Stewart Cert. Exhibit 2, Kahr Dep. 230:13- 231:2). Plaintiff was not able to submit any evidence or to rebut those allegations against her concerning her showing Kama Sutra imagery at the NSM. (Stewart Cert. Exhibit 1, Abell Dep. 197:13-200:15)

[3] The Kama Sutra is an ancient Indian Sanskrit text on sexuality, eroticism and emotional fulfillment in life. Attributed to Vatsyayana, the Kama Sutra is neither exclusively nor predominantly a sex manual on sex positions, but rather was written as a guide to the art of living well, the nature of love, finding a life partner, maintaining one's love life, and other aspects pertaining to pleasure-oriented faculties of human life. *See* https://en.wikipedia.org/wiki/Kama_Sutra

To the extent that the Court deems appropriate, an instruction at trial to that effect can cure any and all of the potential, and arguably non existing, prejudice expressed in Defendants motion by instructing the jury, tailoring the jury verdict sheet, instructing the jury, and if and as necessary, addressing objections to evidence at the time of trial.

Notwithstanding the foregoing, Plaintiff specifically reserves its right to discuss and further defend the admissibility of evidence concerning Pacira's toxic workplace culture, Pacira's interference with Plaintiff's effort to mitigate her damages and the religious and cultural context around the allegedly "offensive" image either at oral argument of this motion, if any, and/or at the time of trial.

## CONCLUSION

For all the foregoing reasons, Defendants' Motion *in limine* ECF 135 should be denied in its entirety along with such other and further relief as the Court deems just and proper.

Respectfully submitted,

THE LAW OFFICE OF NEAL BRICKMAN, P.C.

By: /s/ *Jason A. Stewart*
Jason A. Stewart
Neal Brickman

Dated: June 6, 2023