Jason A. Stewart, Esq. (BAR ID # 324322019)
Neal Brickman, Esq. (*Pro Hac Vice*)
The Law Offices of Neal Brickman, P.C.
420 Lexington Avenue, Suite 2811
New York, New York 10170
(212) 986-6840
Jason@Brickmanlaw.com
Neal@Brickmanlaw.com
*Attorneys for Plaintiff Reshma Abell*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

-----------------------------------------------------X

RESHMA ABELL,

Plaintiff,

-against-

Civ. Action No.
**2:18-cv-16509-MCA-AME**

PACIRA PHARMACEUTICALS, INC., DAVE STACK, individually and in his capacity as Chief Executive Officer of PACIRA PHARMACEUTICALS, INC., and RICH KAHR, PETER MURPHY, DENNIS McLOUGHLIN, PAUL CIAVOLELLA, GLENN REISER, JOYCE DAVIS, and MATT LEHMANN, in their capacities as employees of PACIRA PHARMACEUTICALS, INC.

Defendants.

-----------------------------------------------------X

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF PLAINTIFF'S MOTIONS IN LIMINE NOS. 1 THROUGH 5**

Of Counsel:
Jason A. Stewart, Esq.
Neal Brickman, Esq.

On the Brief:
Jason A. Stewart, Esq.
Neal Brickman, Esq.

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 3

1. Reply in Support of Motion *in Limine* No. 1 ..... 4
2. Reply in Support of Motion *in Limine* No. 2 ..... 6
3. Reply in Support of Motion *in Limine* No. 3 ..... 7
4. Reply in Support of Motion *in Limine* No. 4 ..... 8
5. Reply in Support of Motion *in Limine* No. 5 ..... 8

CONCLUSION ..... 9

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

Hydentra HLP Int. Ltd. v. Luchian,
2016 U.S. Dist. LEXIS 145573 (F.S.D.C. May 27, 2017)............................................ 6

Plaintiff Reshma Abel ("Abell" or "the Plaintiff"), by and through her attorneys, The Law Offices of Neal Brickman, P.C., respectfully submits this Reply in Support of Plaintiff's motions *in limine* Nos. 1 through 5.

**PRELIMINARY STATEMENT**

While there is a sharp dispute between the parties as to most of the issues raised by these motions, it appears that the differences primarily involve questions of law and legal and evidentiary standards that will have to be resolved at some point. Thus, the overriding question before the Court is: Whether the issues posed by the majority of these motions can and should be resolved in advance of taking evidence to sharpen and focus the trial. The response argues in the negative and these replies argue in the affirmative.

The Defendants' responses have taken an unduly narrow, and ultimately wrong, conception of what motions *in limine* are. Thus, the response apparently is of the view that motions *in limine* are confined to exclusion of evidence. However, the term "in limine," which comes from the French, does not mean "to limit"; it means: "On or at the threshold; at the very beginning; preliminarily." Black's Law Dictionary 896 (rev. 4th ed. 1968). In short, motions *in limine* are motions filed before the case begins to resolve any kind of issues that might impact the trial or the ultimate outcome. Hence, while they commonly are used to exclude evidence, they also can be used to have: evidence declared admissible; trial procedures determined; jury instructions or other rulings of law determined; and limitations put on the uses for particular evidence (e.g., declaring the purposes for which the evidence might be used). Motions *in limine* commonly are used to resolve legal questions and set evidentiary standards beforehand, or to determine the purpose for which certain evidence may or may not be used or inferences that may or may not be made from particular evidence, which usually makes for a more expeditious and informed trial.

Plaintiff's motions *in limine* No. 1, 3 and 4 seek to preclude and/or limit Defendants from offering irrelevant and/or hearsay evidence as substantive evidence in this case. Plaintiff's motion *in limine* No. 2 seeks to preclude Defendants' counsel from engaging in inappropriate and prejudicial conduct by mischaracterizing and/or allowing witnesses to mischaracterize the Kama Sutra as pornography and motion *in limine* No. 5 presents to the Court an anticipated challenge and a proposed solution relating to an out-of-state witness.

In opposition to these motions, Defendants offer various arguments and primarily attempt to link Plaintiff's motions *in limine* Nos. 1, 3 and 4 to their own overreaching motions *in limine* seeking broad and categorical preclusion on relevancy grounds by engaging in unfair and unwarranted coupling. In that regard, Defendants argue that the specific and narrow evidentiary requests made by Plaintiff (i.e. to preclude: 1) Defendant's Exhibits 8-17; 2) evidence regarding and/or from Lance Noble; and, 3) a witness Affidavit) are synonymous to the broad categoric requests made by Defendants (i.e. to preclude Plaintiff from offering evidence of: 1) emotional harm; 2) Plaintiff's work performance; 3) "dismissed and/or unasserted claims"; 4) acts of discrimination and/or retaliation against other Pacira employees.) Defendants, *in essence*, argue that their inadmissible evidence which Plaintiff seeks to preclude should be admitted (or at least not precluded at this time) because Plaintiff intends to offer evidence which Defendants finds to be harmful and inconsistent with their own theory of the case. Whereas the Defendants argue that at minimum the Court must withhold judgment on the admissibility of the exhibits and testimony challenged, Plaintiff submits that the three narrow evidentiary requests are ripe for decision at this time. As to the arguments concerning the use of the term pornography and permitting a remote witness, again the Court can solve today a problem that will otherwise need to be addressed at the trial.

It is respectfully submitted that Defendants arguments as to relevancy are misguided and that Defendants' categorical approach to seeking preclusion is inartful and not at all analogous to Plaintiff's motions. Thus Defendants' opposition are ineffective and unpersuasive. Accordingly, we ask the Court to grant, in part or in full, each of Plaintiff's motions *in limine* Nos. 1 through 5.

## BACKGROUND

Plaintiff adopts and incorporates the Background discussion contained in each of the Memorandums of Law filed in support of the respective motions, but must rebut the specious contention that Plaintiff is providing a "one-sided exaggerative 'history'" or that Plaintiff has offered inaccurate information concerning the background of this case. Contrary to the Defendants' assertion, Plaintiff has not offered changing "theories" and the notion that certain information only came to light at Plaintiff's deposition goes to very heart of the matter. Plaintiff alleges that Richard Kahr ("Kahr") conducted a sham investigation and did not gather all of the facts and information that he should have before he wrongfully terminated the Plaintiff in retaliation for her complaining of and reporting the TopGolf Occurrence. Kahr's "investigation" was incompetent and incomplete in all regards and because of that, the purported reason for terminating the Plaintiff, (i.e. "viewing and sharing an offensive website") was clearly nothing more than a pretext seized upon to retaliate against the Plaintiff. Had Kahr employed any measure of a fair and reasonable investigation, the information that Defendants bemoan learning "for the first-time during Plaintiff's deposition" would have been, and should have been, uncovered prior to the Plaintiff's termination and Plaintiff's employment, reputation and emotional well-being could have all been spared.

Rather though, Kahr seized on what has been characterized as Plaintiff's "admission" of "sharing an inappropriate website which made others uncomfortable" while affording Plaintiff no

measure of due process and then simply concluded that "was not something Pacira could support." Kahr terminated Plaintiff without even the semblance of an investigatory process relying on a conclusion "based upon what he was told," that the Plaintiff had engaged in inappropriate conduct warranting termination. Plaintiff was terminated only one day after she was told of allegations against her, without being told who made allegations against her and without being able to offer any evidence to dispel the false narrative that she had engaged in inappropriate workplace behavior.

Plaintiff has always denied that she viewed "offensive materials" and/or pornography and has repeatedly taken offense with Defendants' lack of cultural sensitivity surrounding the Kama Sutra. Defendants undeniably subjected Plaintiff to an adverse employment action, her termination, directly after she engaged in the protected activity of making complaints of and reporting gender-based harassment. Plaintiff's protected activity was clearly a motivating factor in Defendants' decision to terminate the Plaintiff and such conduct, beyond being illegal, was intentional, and willful. The Defendants must be held accountable for that wrongful conduct.

**Reply in Support of Motion *in Limine* No. 1**

Defendants argue that because Plaintiff intends to offer historical information about Plaintiff's workplace performance and Pacira Pharmaceutical Inc. ("Pacira)'s toxic workplace culture, that Defendants should be permitted to offer documents which have absolutely no bearing on the issues in question in this case. These exhibits appear to be included with an intention of defaming and tarnishing the Plaintiff's character. Permitting such a defense could pose practical problems by creating the risk of the trial's devolving into an extended examination of the "character" and "bona fides" of the Plaintiff. Exhibits 8 through 17, in no way aide the jury in determining whether any contested fact or issue in this case is more or less likely to be true.

To address the exhibits in further details, Exhibit 8 pertains to an interpersonal issue existing between Plaintiff and a co-worker from November of 2014, wherein the Plaintiff raised an issue about her colleague's professionalism. Exhibit 9 is an email from January of 2015 wherein Peter Murphy asks another Pacira employee to pull Plaintiff and another individual aside to tell them not to use their phones during meetings years before the incident in question. Exhibit 10 is a bantering email exchange from February of 2015 between Plaintiff and a Pacira customer. Exhibit 11 is a March 2015 email which again contains banter between co-workers wherein Plaintiff's name appears along with other co-workers. Exhibit 12 is a June 2015 email between Plaintiff and Peter Murphy regarding a regional meeting and the dress code which again contains obvious banter between colleagues.

Candidly, it is hard to understand why Defendants even included Exhibits 8 through 12 as the messages do not even negatively reflect on the Plaintiff and are nothing more than seemingly insignificant exchanges between co-workers. Equally confusing is the inclusion of Exhibits 13 through 17 which deal with equity grants and Exhibit 35 where Plaintiff exchanges an email with her then husband about financial affairs.[1] Each of these documents have no evidentiary value in this case and thus should be precluded.

Given the contents of the documents, it is certainly possible that Defendants do not even attempt to introduce these exhibits as trial, rendering this request premature and/or moot. However, given that the exhibits were identified within Defendant's proposed exhibit list, Plaintiff has made

[1] Defendants' opposition concede that proposed Exhibit 34, the Declaration of Seth Whaley, cannot and will not be offered for the truth of the matter as to do so would be inadmissible hearsay evidence. Therefore the Court should grant this branch of Plaintiff's motion and issue an Order stating that Exhibit 34 may only be offered for the limited purpose of showing the witnesses state of mind and/or refreshing his recollection as needed, and not as substantive evidence offered for the truth of the matter asserted therein. It is requested that the jury be instructed the same, if and when this is exhibit is offered at trial.

a preemptory challenge regarding the admissibility of these exhibits. To the extent that the Court wishes to reserve a decision on the admissibility of these exhibits until trial, Plaintiff simply reserves the right to renew her objection at that time.

**Reply in Support of Motion *in Limine* No. 2**

With respect to Plaintiff's motion *in limine* No. 2, it is respectfully submitted that Defendants' opposition totally misses the point. Plaintiff is not looking to restrict any witness from testifying to any matter to which they have personal knowledge. Nor is the Plaintiff attempting to gin up a race, national origin or religious discrimination claim. Plaintiff is simply asking this Court to provide the Defendants with an instruction to refrain from referring to the Kama Sutra as pornography and to preclude any witness that did not actually see the allegedly "offensive" images from characterizing them in any manner.

In support of their opposition argument, Defendants employ the very measure which Plaintiff seeks to preclude in their citing to Hydentra HLP Int. Ltd. v. Luchian, 2016 U.S. Dist. LEXIS 145573 (F.S.D.C. May 27, 2017) where Plaintiff's motion to exclude the works "pornographic" or similar terms to describe plaintiff's business was denied. In the *Hydentra HLP Int. Ltd.* case, the Plaintiff was undeniably in the pornography business with the dispute in that case dealing with copyright violations alleged by a company known as SexArt who made adult films alleging copyright violations by a company that hosted various adult websites (i.e. playvid.com, feedvid.com, peekvids.com, etc.) which sites existed solely for the purpose of hosting countless pornographic videos. That was a case about pornography and the Court rightly held that the term "pornography" could be used to describe the businesses which the parties were engaged in.

Here, Plaintiff's case is not even one bit about pornography and thus, Plaintiff has sought to keep the Defendants from unfairly throwing around a term that has, to some people, a negative connotation. It is undisputed that the Plaintiff received an image which contained characters in various positions of the Indian religious text, the Kama Sutra. Plaintiff merely asks the Court to prevent those individuals who never saw the images (i.e. Richard Kahr and counsel for the Defendants) from applying an inaccurate label of "pornography" to images they have never laid eyes on. It is respectfully submitted that Plaintiff's motion should be granted in this regard.[2]

**Reply in Support of Motion *in Limine* No. 3**

Defendant's opposition to motion *in limine* No. 3, similar to the opposition offered to motion *in limine* No. 1, attempts to tie Plaintiff's narrow and well-tailored request to preclude a hearsay statement captured in email about a comment that was allegedly made by Plaintiff to a Pacira employee, Lance Noble, to Defendants' over-reaching request to categorically preclude testimony regarding "dismissed claims." As addressed in opposition to Defendants motion *in limine*, the notion that certain evidence which supports a dismissed claim cannot be otherwise offered in support of Plaintiff's surviving claim defies logic. The evidence which Plaintiff intends to submit at trial concerning Pacira's toxic work culture is not mutually exclusively to any dismissed claim and such evidence can clearly support both a dismissed claim and the surviving claim.

[2] Defendants argue that Kahr has personal knowledge generally as to what is contained in the Kama Sutra (ECF 139 p. 3), however that is directly contradictory to Kahr's deposition testimony. *See* Ex. 1 to the Declaration of Jason A. Stewart dated June 15, 2023, Kahr Tr. 202-206. [he only knew what he was told about the Kama Sutra; that he did not perform due diligence research as to what the Kama Sutra is; he did not research the cultural relevance of the Kama Sutra; "that it was supposedly a site with figures in – in inappropriate sexual positions and what have you, but it was sexual in orientation and inappropriate"].

Notwithstanding the flawed logic applied by Defendants, Plaintiff's motion stands on its own. A single ad hoc commence which was allegedly made to Lance Noble (captured in an email from Rob Rock to Richard Kahr) bears no relevancy to the issues in this case and has absolutely no tendency to make any contested fact more or less true. For that reason, any evidence regarding Lance Noble or comments made to him should be precluded. The evidence being so remote and ineffective, it is probable that Defendants do not even introduce Lance Noble or the ad hoc comment, but similar to the Plaintiff's motion *in limine* No. 1, since Defendants identified this individual as a witness, Plaintiff's seek a ruling of inadmissibility at this time.

**Reply in Support of Motion *in Limine* No. 4**

Consistent with Plaintiff's request in motion *in limine* No. 4, Defendants' opposition to motion *in limine* No. 4 fully concedes that Defendants are barred from offering Kahr's "investigative notes" PACRIA000071-97 from being offered as substantive evidence offered for the truth of the matter asserted within. Accordingly, Plaintiff asks the Court to grant Plaintiff's motion *in limine* No. 4 to the extent of limiting the purposes of the evidence being offered as only for the purpose of showing the "decisionmaker's state of mind" and that an instruction to that effect be provided to the jury upon the admission of this evidence at trial.

**Reply in Support of Motion *in Limine* No. 5**

Plaintiff's motion *in limine* No. 5 brought to the Court's attention the potential challenges concerning an out-of-state witness, Steven Huddy and proposed a potential solution which might serve to remove some uncertainty and lessen the burden upon the witness and the Plaintiff through the use of virtual remote technology, all while conceding that the first and best option would be for Mr. Huddy to appear in person at the trial of this matter. Defendants' opposition does not frame

the request any differently than Plaintiff's initial request, and it is respectfully submitted that this is merely a trial procedure question which is wholly within the discretion of the Court. Plaintiff asks that the request set forth in motion *in limine* No. 5 be granted, or in the alternative that the parties be afforded the opportunity to take the deposition of Mr. Huddy to preserve and memorialize his testimony to be used at trial if the witness is unable to appear at the trial in this matter.[3]

## CONCLUSION

For all the foregoing reasons, Plaintiff's Motions *in limine* No. 1 through 5 should be granted either in part or in their entirety, along with such other and further relief as the Court deems just and proper.

Respectfully submitted,

THE LAW OFFICE OF NEAL BRICKMAN, P.C.

By: /s/ *Jason A. Stewart*
Jason A. Stewart
Neal Brickman

Dated: June 16, 2023

[3] In response to the Defendants' June 14, 2023 request for an adjournment of the July 10, 2023 trial which had been set since April 26, 2023, Plaintiff offered to consent to that requested adjournment, if the Defendant and the Court permit Mr. Huddy's deposition to be taken forthwith so as to mitigate against the prejudice of adjourning the trial made less than one month before the trial is set to commence and to preserve an out-of-state witnesses testimony.